# CASE NO. 24-1798

---

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

---

THOMAS A. MOURIER,

*Plaintiff - Appellant*,

v.

WILLIAM F. GALVIN, *Secretary of the Commonwealth, in his official capacity*; MASSACHUSETTS SECURITIES DIVISION; MASSACHUSETTS OFFICE OF CONSUMER AFFAIRS AND BUSINESS REGULATION,

*Defendants - Appellees.*

---

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MASSACHUSETTS, EASTERN DIVISION
NO. 1:23-CV-11280-IT
THE HONORABLE INDIRA TALWANI, JUDGE

# OPENING BRIEF OF APPELLANT

SUBMITTED BY:
Thomas Mourier
3 Indian Hill Rd.
Winchester, MA 01890
781/602-0385
thomas.mourier@yahoo.com

## DISCLOSURE STATEMENT

Thomas A. Mourier is a natural person with no parent corporations or stockholders.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iv

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES .........................................................................2

STATEMENT OF CASE ............................................................................4

SUMMARY OF ARGUMENT ...................................................................8

ARGUMENT ............................................................................................12

CONCLUSION .........................................................................................22

STATEMENT REGARDING ORAL ARGUMENT ............................................23

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) .................................................... 4
*Bennett v. Spear*, 520 U.S. 154, 168 (1997) ...................................................... 14
*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)................................. 13
*Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000).......... 10, 15
*Ex parte Young*, 209 U.S. 123 (1908) ............................................................ 16
*Granholm v. Heald*, 544 U.S. 460, 472 (2005) .................................... 12, 17, 22
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......................................... 4
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ....................... 9, 12
*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)......................... 10, 14, 21
*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998)....... 11, 16

**Statutes**

15 U.S.C. § 77a ............................................................................................ 1
15 U.S.C. § 77c(a)(11).................................................................................. 5
15 U.S.C. § 77d(a)(6)(A) ............................................................................ 20
15 U.S.C. §§ 77d(a)(6), 77d-1.............................................................. passim
21-001 Code Vt. R. 21-030-001-X V.S.R § 5-11 ........................................ 19
28 U.S.C. § 1291 .......................................................................................... 1
28 U.S.C. § 1294(1) ..................................................................................... 2
28 U.S.C. § 1331 .......................................................................................... 1
950 C.M.R. § 14.402(B)(13)(o)..................................................... 2, 4, 22, 23
U.S. Const. art. I, § 8, cl. 3 ............................................................. 21, 22, 23
U.S. Const. art. VI, cl. 2 ............................................................................ 23

# JURISDICTIONAL STATEMENT

This appeal arises from the dismissal of Plaintiff-Appellant Thomas A. Mourier's Amended Complaint by the United States District Court for the District of Massachusetts. The district court granted the Defendants-Appellees' Motion to Dismiss for Lack of Subject-Matter Jurisdiction and for Failure to State a Claim on August 1, 2024, pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The district court had jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the case involved questions of federal law, specifically issues arising under federal securities laws, including the Securities Act of 1933 as amended by the Jumpstart Our Business Startups (JOBS) Act, 15 U.S.C. § 77a et seq., and the regulatory framework established by the Securities and Exchange Commission (SEC) under Title 17 of the Code of Federal Regulations.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which grants the Courts of Appeals jurisdiction over appeals from final decisions of the district courts. The district court's dismissal of Plaintiff-Appellant's Amended Complaint is a final and appealable order that resolves all claims as to all parties.

The final judgment was entered by the district court on August 2, 2024. The Notice of Appeal was timely filed on August 27, 2024, within the 30-day period prescribed by Rule 4(a) of the Federal Rules of Appellate Procedure.

Venue is proper in this Court under 28 U.S.C. § 1294(1), as this appeal is taken from the United States District Court for the District of Massachusetts, which is within the territorial jurisdiction of this Circuit.

## STATEMENT OF ISSUES

The Massachusetts Crowdfunding Exemption ("MCE"), codified at 950 C.M.R. § 14.402(B)(13)(o), exempts certain securities offerings from state registration requirements, provided the issuer is a business entity formed under the laws of the Commonwealth and the offering is made exclusively to in-state residents. The MCE also imposes limits on the amount of capital that can be raised annually and disqualifies issuers with certain regulatory violations from the exemption.

 Plaintiff-Appellant, Thomas A. Mourier, operates SeedFunder, a crowdfunding intermediary business incorporated in Delaware and conducts interstate operations. The Plaintiff-Appellant filed suit challenging the MCE, alleging it indirectly harmed SeedFunder's business by restricting the fundraising capabilities of potential clients within Massachusetts, thus limiting SeedFunder's revenue opportunities.

The district court dismissed the Plaintiff-Appellant's Amended Complaint, concluding that neither Plaintiff-Appellant nor SeedFunder fell within the scope of entities regulated by the MCE and, therefore, had no standing to challenge the regulation. The court also determined that SeedFunder, being neither a

2

Massachusetts-based business entity nor an issuer of securities, was not subject to the MCE's requirements, and as such, Plaintiff-Appellant could not plausibly demonstrate injury under Article III of the U.S. Constitution.

The questions presented for review are:

1. **Whether the district court erred in dismissing the Complaint for lack of subject-matter jurisdiction**, specifically by determining that the Plaintiff-Appellant lacked standing under Article III of the U.S. Constitution, despite alleging that the MCE's regulatory framework indirectly harmed SeedFunder's business operations.

2. **Whether the district court erred in concluding that the MCE did not apply to SeedFunder, and in failing to recognize that the MCE's regulatory framework adversely affects SeedFunder's business operations.** The MCE's restrictive provisions limit the ability of potential clients within Massachusetts to raise capital through crowdfunding, thereby reducing SeedFunder's market for providing intermediary services. Despite being incorporated in Delaware, SeedFunder facilitates interstate crowdfunding transactions that are hindered by the MCE, which directly impacts its business operations and revenue potential.

3. **Whether the district court erred in failing to recognize that the indirect harm alleged by Plaintiff-Appellant**—including the MCE's impact on potential clients' fundraising activities—constituted a sufficient injury-in-fact

3

to confer standing, as contemplated by *Lujan v. Defenders of Wildlife*, 504
U.S. 555 (1992), and *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967).

4. **Whether the district court erred in dismissing the Complaint without
   addressing the merits of Counts Seven and Eight**, where the Defendants-
   Appellees claimed sovereign immunity under the Eleventh Amendment and
   argued that the Plaintiff-Appellant failed to state a claim under Rule 12(b)(6)
   of the Federal Rules of Civil Procedure.

## STATEMENT OF CASE

### I.    The Massachusetts Crowdfunding Exemption

The Massachusetts Crowdfunding Exemption ("MCE"), codified at 950
C.M.R. § 14.402(B)(13)(o), was established in 2014 by the Massachusetts
Secretary of the Commonwealth. The MCE exempts certain securities
offerings from state registration requirements if they meet specific criteria.
Among these criteria, the issuer must be a business entity formed under the
laws of Massachusetts, and the offering must be made exclusively to in-
state residents. The MCE also imposes limits on the amount of capital that
can be raised annually—$1,000,000 if the issuer has not undergone a
financial audit in the previous fiscal year, and $2,000,000 if a financial
audit has been conducted.

4

The MCE is intended to promote in-state crowdfunding initiatives by easing regulatory burdens for small businesses seeking to raise capital within Massachusetts. However, the exemption is limited to entities incorporated within the Commonwealth and does not apply to issuers who or whose officers, directors, or major shareholders have a history of securities law violations or fraud. The MCE is aligned with the federal Intrastate Offering Exemption, 15 U.S.C. § 77c(a)(11), which similarly exempts offerings made exclusively to residents of a single state.

## II.    The Impact of the MCE on Plaintiff-Appellant's Business

Plaintiff-Appellant Thomas A. Mourier is the founder and operator of SeedFunder, a Delaware-incorporated business that facilitates the raising of capital through crowdfunding for small and startup companies. SeedFunder operates on an interstate basis, connecting issuers with potential investors across state lines. Although SeedFunder is not a Massachusetts-based entity, the business seeks to engage with clients, including potential issuers, within Massachusetts who are interested in utilizing crowdfunding to raise capital.

SeedFunder's business model is heavily dependent on its ability to work with a broad range of clients, including those in Massachusetts. However, the MCE's restrictive provisions have had a direct impact on SeedFunder's operations. Because the MCE limits the amount of capital that Massachusetts-based issuers can raise, and restricts offerings to in-state investors only, it effectively reduces the pool of potential clients that SeedFunder can serve

within Massachusetts. This limitation has constrained SeedFunder's growth opportunities and has had a negative effect on its revenue.

The Plaintiff-Appellant alleges that the MCE indirectly but significantly harms SeedFunder's business by discouraging Massachusetts-based companies from engaging in crowdfunding that SeedFunder could facilitate. Furthermore, the inability to work with clients who are bound by the MCE has placed SeedFunder at a competitive disadvantage compared to crowdfunding intermediaries that are able to operate without such constraints in other states.

### III.    District Court Proceedings

On June 6, 2023, Plaintiff-Appellant filed a complaint in the United States District Court for the District of Massachusetts, challenging the MCE. The complaint argued that the MCE's restrictions on Massachusetts-based issuers harm SeedFunder by limiting its client base and reducing its market for providing intermediary services. The Plaintiff-Appellant sought declaratory and injunctive relief, asserting that the MCE's regulatory framework violated federal securities laws, as amended by the Jumpstart Our Business Startups ("JOBS") Act, 15 U.S.C. §§ 77d(a)(6), 77d-1, and interfered with SeedFunder's ability to operate its business effectively.

The Defendants-Appellees, including the Secretary of the Commonwealth of Massachusetts, responded by filing a motion to dismiss the complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil

Procedure. The Defendants-Appellees argued that neither the Plaintiff-Appellant nor SeedFunder were directly subject to the MCE, as SeedFunder is not incorporated in Massachusetts and is not an issuer of securities. As a result, the Defendants-Appellees contended that the Plaintiff-Appellant lacked standing to challenge the regulation.

## IV.    District Court's Decision

On August 1, 2024, the district court granted the Defendants-Appellees' motion to dismiss. The court concluded that the Plaintiff-Appellant had not demonstrated that SeedFunder was directly regulated by the MCE and, therefore, failed to establish an injury sufficient to confer standing under Article III of the U.S. Constitution. The court noted that SeedFunder, being a Delaware-incorporated entity operating interstate and not an issuer of securities as defined by federal law, was not within the class of entities regulated by the MCE.

The district court rejected Plaintiff-Appellant's argument that the MCE indirectly harmed SeedFunder's business by restricting the ability of potential clients in Massachusetts to raise capital. The court found that any alleged harm was too speculative and indirect to constitute a concrete and particularized injury necessary for standing. The court also declined to address the merits of Counts Seven and Eight of the complaint, which involved claims of sovereign immunity under the Eleventh Amendment and failure to state a claim,

7

reasoning that the lack of subject-matter jurisdiction precluded further analysis.

**V.    Plaintiff-Appellant's Appeal**

The Plaintiff-Appellant now appeals the district court's dismissal, arguing that the court erred in its standing analysis and in failing to recognize the MCE's adverse impact on SeedFunder's business operations. The Plaintiff-Appellant contends that the MCE's restrictive provisions directly affect SeedFunder's ability to engage with Massachusetts-based clients, thereby causing tangible and immediate harm to its business. Furthermore, the Plaintiff-Appellant asserts that the district court should have considered the broader implications of the MCE on interstate commerce and the federal regulatory framework established by the JOBS Act.

The Plaintiff-Appellant seeks reversal of the district court's decision and a remand for further proceedings on the merits of the claims, including the constitutional challenges raised in Counts Seven and Eight.

## SUMMARY OF ARGUMENT

1.    **The district court erred in dismissing Plaintiff-Appellant's complaint for lack of subject-matter jurisdiction, as the Massachusetts Crowdfunding Exemption ("MCE") directly harms SeedFunder's business operations and establishes standing under Article III.**

The district court incorrectly concluded that Plaintiff-Appellant lacked standing because SeedFunder, a Delaware-incorporated business, is not directly regulated by the MCE. However, the MCE's restrictive provisions, which limit the ability of Massachusetts-based issuers to raise capital and confine offerings to in-state residents, have a tangible and detrimental impact on SeedFunder's business model. This harm is sufficient to establish standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), which requires an injury that is concrete, particularized, and actual or imminent. The district court failed to recognize that SeedFunder's inability to engage with potential clients in Massachusetts due to the MCE's constraints constitutes a direct and immediate injury, satisfying the requirements for standing

**2.     The district court erred in finding that the MCE does not adversely affect SeedFunder's interstate business operations and failed to account for the conflict between the MCE and the federal securities regulatory framework.**

The MCE, by limiting the capital that can be raised by Massachusetts-based issuers and restricting offerings to in-state residents, reduces the pool of potential clients available to SeedFunder, thereby impacting its revenue and market share. This interference with SeedFunder's interstate operations creates an undue burden on interstate commerce, which the court failed to acknowledge. Under the *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142

(1970) balancing tests, even a statute that is not explicitly discriminatory may be invalidated if the burden it imposes on interstate commerce is clearly excessive in relation to the local benefits. The district court should have considered whether the MCE's burdens on SeedFunder's interstate activities are outweighed by the state's interest in regulating its securities markets.

3.    **The district court erred in its interpretation of the MCE's scope and its impact on SeedFunder's operations under the federal securities laws, as amended by the JOBS Act.**

The MCE's provisions conflict with the intent of the federal Jumpstart Our Business Startups ("JOBS") Act, which seeks to promote small business capital formation through crowdfunding exemptions under 15 U.S.C. §§ 77d(a)(6), 77d-1. The JOBS Act allows for the use of interstate crowdfunding platforms like SeedFunder, while the MCE's state-level constraints hinder SeedFunder's ability to operate effectively within Massachusetts. This conflict should have been evaluated under the doctrine of federal preemption, as articulated in *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000), where state laws that interfere with or are contrary to federal law must yield. The district court's failure to consider the preemptive effect of the federal regulatory framework on the MCE constitutes a legal error.

10

4.      **The district court erred in dismissing the complaint without addressing the merits of Plaintiff-Appellant's constitutional claims, particularly regarding sovereign immunity and the failure to state a claim.**

By dismissing the complaint solely on jurisdictional grounds, the district court avoided addressing the substantive constitutional issues raised in Counts Seven and Eight. These claims include whether the Eleventh Amendment's doctrine of sovereign immunity bars the suit and whether the Plaintiff-Appellant has sufficiently stated a claim for relief. In *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998), the Supreme Court emphasized that federal courts have a duty to adjudicate all claims within their jurisdiction, and dismissing on jurisdictional grounds without reaching substantive claims may be improper when the plaintiff has sufficiently pled a plausible cause of action. The district court's failure to evaluate these claims necessitates a reversal and remand for further consideration.

5.      **The district court's failure to address the merits of Plaintiff-Appellant's claims deprived SeedFunder of an opportunity to challenge the constitutionality of the MCE and seek appropriate relief.**

The district court's premature dismissal precluded a full exploration of whether the MCE's restrictions are consistent with the Commerce Clause of the U.S. Constitution, which prohibits state regulations that unduly

11

burden interstate commerce. *Granholm v. Heald*, 544 U.S. 460, 472 (2005),

reaffirms that state laws that discriminate against or unduly burden

interstate commerce are subject to heightened scrutiny. The MCE's impact

on SeedFunder's ability to conduct business across state lines raises

significant constitutional concerns that were not addressed due to the

district court's dismissal. The court should have allowed these claims to

proceed to a substantive review, given the potential constitutional

violations at stake.

# ARGUMENT

## I.    The District Court Erred in Concluding that Plaintiff-Appellant Lacked Standing to Challenge the Massachusetts Crowdfunding Exemption (MCE)

### a.  The Legal Standard for Standing Requires Concrete and Particularized Harm

To establish standing under Article III, a plaintiff must demonstrate: (1)

an injury-in-fact that is concrete and particularized, and actual or imminent;

(2) a causal connection between the injury and the conduct complained of; and

(3) that the injury is likely to be redressed by a favorable decision. *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The district court erred by

narrowly focusing on whether SeedFunder is directly regulated by the MCE,

rather than considering the broader impact of the MCE's restrictive provisions on SeedFunder's business operations.

### b. SeedFunder's Business Operations Are Directly Harmed by the MCE's Restrictive Provisions

The MCE limits the ability of Massachusetts-based issuers to raise capital by restricting offerings to in-state residents and capping the amount that can be raised annually. These provisions directly affect SeedFunder's ability to operate by reducing its potential client base and limiting revenue opportunities. The Supreme Court has recognized that economic harm, such as reduced business opportunities, constitutes an injury-in-fact sufficient to confer standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

SeedFunder operates as an interstate crowdfunding intermediary, connecting issuers with investors across state lines. The MCE's limitations prevent SeedFunder from fully engaging with potential clients within Massachusetts, creating a concrete and particularized harm. This harm is not speculative; it is a direct consequence of the MCE's regulatory framework, which imposes barriers that hinder SeedFunder's ability to conduct business effectively.

### c. The District Court's Focus on Direct Regulation Misinterprets the Scope of Standing

The district court's decision to dismiss the case for lack of standing relied on the fact that SeedFunder is not directly regulated by the MCE, but

this interpretation is too narrow. The Supreme Court has clarified that standing is not limited to those directly regulated by a statute, but also includes those who suffer economic harm because of its implementation. In *Bennett v. Spear*, 520 U.S. 154, 168 (1997), the Court held that a party suffering indirect economic injury from government action could still have standing.

Here, SeedFunder's injury is directly tied to the MCE's restrictive effects on its potential clients, which, in turn, impacts its business operations. The district court's failure to recognize this broader interpretation of standing was a legal error.

## II. The MCE Adversely Affects SeedFunder's Interstate Business Operations, and the District Court Failed to Recognize the Conflict Between the MCE and the Federal Regulatory Framework

### a. The MCE Imposes an Unconstitutional Burden on Interstate Commerce

The Commerce Clause of the U.S. Constitution prohibits state regulations that unduly burden interstate commerce. Under the *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) balancing tests, a statute that imposes burdens on interstate commerce must be evaluated against its local benefits. The MCE's restrictions, which limit capital raises and restrict offerings to in-state investors, create significant barriers for SeedFunder's interstate business activities.

The district court failed to consider how these restrictions place SeedFunder at a competitive disadvantage compared to crowdfunding platforms that are not subject to such stringent state-level constraints. This imbalance disrupts the interstate market for crowdfunding services and unduly burdens SeedFunder's ability to operate across state lines.

### b. The MCE Conflicts with the Federal Securities Regulatory Framework Established by the JOBS Act

The federal Jumpstart Our Business Startups ("JOBS") Act, 15 U.S.C. §§ 77d(a)(6), 77d-1, was designed to promote small business capital formation by creating exemptions for crowdfunding from federal securities registration requirements. The MCE's additional state-level constraints, which are more restrictive than federal law, conflict with the JOBS Act's intent to facilitate interstate crowdfunding.

Under the Supremacy Clause, federal law preempts state law when the two are in conflict. *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000). The MCE's restrictions on Massachusetts-based issuers create obstacles that are contrary to the objectives of the JOBS Act, effectively hindering SeedFunder's ability to participate in the interstate crowdfunding market. The district court's failure to address the potential preemption of the MCE by federal law was a significant oversight.

15

### III. The District Court Erred in Dismissing the Complaint Without Addressing the Merits of Plaintiff-Appellant's Constitutional Claims

#### a. Federal Courts Have a Duty to Adjudicate All Claims Within Their Jurisdiction

The district court dismissed Plaintiff-Appellant's complaint on jurisdictional grounds without addressing the substantive constitutional issues raised in Counts Seven and Eight. This approach was contrary to the principle established in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998), which emphasizes that courts should adjudicate all claims that are within their jurisdiction, particularly when they involve significant constitutional questions.

#### b. The Constitutional Claims Raised by Plaintiff-Appellant Warrant Judicial Review

Plaintiff-Appellant's constitutional claims, including challenges under the Eleventh Amendment and the Commerce Clause, raise important questions about the balance between state regulatory authority and federal preemption. The district court's failure to address these claims left significant legal questions unresolved. In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court held that plaintiffs could challenge the constitutionality of state actions in federal court, even when sovereign immunity is claimed. The district court

16

should have applied this principle to evaluate the constitutional merits of Plaintiff-Appellant's claims.

IV.  **The MCE's Restrictive Provisions Violate the Commerce Clause and Are Preempted by Federal Law**

a.  **The MCE's Impact on Interstate Commerce is Unconstitutional**

The MCE imposes restrictions that effectively isolate Massachusetts from the broader interstate crowdfunding market. This isolationist approach runs afoul of the Commerce Clause, which prohibits states from enacting legislation that unduly restricts interstate commerce. In *Granholm v. Heald*, 544 U.S. 460, 472 (2005), the Supreme Court struck down state laws that discriminated against out-of-state businesses and unduly burdened interstate commerce. The MCE's restrictions have a similar effect by limiting SeedFunder's ability to engage with potential clients outside Massachusetts.

b.  **The MCE is Preempted by the JOBS Act**

The MCE's restrictive provisions conflict with the objectives of the JOBS Act, which aims to foster a nationwide crowdfunding market. The Supremacy Clause dictates that when state law conflicts with federal law, the state law must yield. The district court's failure to recognize the preemption issue and its dismissal of the case on jurisdictional grounds deprived Plaintiff-Appellant of the opportunity to challenge the constitutionality of the MCE under federal law. This oversight necessitates a reversal and remand for further proceedings.

17

The district court's errors in standing analysis, failure to recognize the conflict between the MCE and federal law, and its dismissal of constitutional claims without substantive review require reversal. The MCE's restrictive provisions create an unconstitutional burden on interstate commerce and are preempted by federal law. Plaintiff-Appellant respectfully requests that this Court reverse the district court's dismissal and remand for further proceedings on the merits.

**V.    The Massachusetts Crowdfunding Exemption (MCE) is More Stringent than Federal Crowdfunding Regulations, Contrary to the Original Intent of State Crowdfunding Exemptions, and Consequently Harms SeedFunder and Violates the Commerce Clause**

**a.  State Crowdfunding Exemptions Were Intended to Be Less Stringent Than Federal Law to Foster Local Markets**

State crowdfunding exemptions, including the Massachusetts Crowdfunding Exemption ("MCE"), were initially enacted with the intent of creating a more accessible and less stringent regulatory environment for small businesses seeking to raise capital within their states. The goal was to build a robust local market for crowdfunding services, allowing smaller issuers to bypass the more cumbersome federal registration requirements under the Securities Act of 1933. By easing these restrictions, states aimed to stimulate

economic growth and innovation within their borders, thereby complementing, rather than conflicting with, federal regulations.

The JOBS Act, 15 U.S.C. §§ 77d(a)(6), 77d-1, which amended the federal securities laws, embodies this principle by creating exemptions that allow small businesses to raise capital through crowdfunding without the need for extensive SEC registration. State exemptions like the MCE were meant to operate alongside these federal provisions, providing an alternative path for businesses that were not prepared to navigate the complexities of federal securities law. However, instead of providing a simpler, more accessible alternative, the MCE imposes outdated and more stringent requirements than those set forth by the JOBS Act, thereby undermining its original purpose.

### b. The MCE is More Restrictive Than Other State Crowdfunding Exemptions, such as Vermont's, and Harms the Massachusetts Crowdfunding Market

While other states have updated their crowdfunding exemptions to remain competitive and aligned with the federal framework, the MCE has remained stagnant. For instance, Vermont's crowdfunding exemption, found in 21-001 Code Vt. R. 21-030-001-X V.S.R § 5-11, allows for a more flexible and business-friendly environment. Vermont's exemption permits higher fundraising limits and broader participation, fostering a more dynamic and growing market for crowdfunding services.

19

In contrast, the MCE caps annual fundraising at $1,000,000 for issuers that have not undergone a financial audit and $2,000,000 for those that have— limits that are far below the $5,000,000 ceiling established by the JOBS Act, 15 U.S.C. § 77d(a)(6)(A). Additionally, the MCE's in-state investor requirement and disqualification of issuers based on past regulatory infractions are more stringent than necessary to protect investors and serve as a significant deterrent to small businesses considering crowdfunding as a viable option. These restrictions reduce the attractiveness of Massachusetts as a market for crowdfunding, thereby decreasing the overall demand for crowdfunding services within the state.

### c. The MCE's Stringency Reduces SeedFunder's Ability to Convert Massachusetts-Based Companies to Federal Crowdfunding, Resulting in Clear Harm to the Business and a Violation of the Commerce Clause

The stringent requirements of the MCE have a direct and negative impact on SeedFunder's business. By creating an environment where fewer businesses are likely to engage in state-level crowdfunding due to these burdensome restrictions, the MCE reduces the pool of potential clients that SeedFunder could convert to federal crowdfunding platforms. This not only diminishes SeedFunder's client base but also limits its ability to grow its business in Massachusetts, directly affecting its revenue and market share.

Moreover, the MCE's excessive restrictions serve as a barrier to interstate commerce by discouraging Massachusetts-based companies from pursuing federal crowdfunding options once they outgrow the state-level exemption. This conflict between state and federal law creates a violation of the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, which prohibits states from enacting laws that unduly burden interstate commerce. As established in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), even nondiscriminatory laws could violate the Commerce Clause if the burden imposed on interstate commerce is clearly excessive in relation to the local benefits. Here, the outdated and overly restrictive MCE imposes such a burden, stifling the growth of interstate crowdfunding markets and harming businesses like SeedFunder.

> **d. The Outdated MCE Lowers Demand for Crowdfunding Services and Fails to Adapt to the Evolving Federal Framework, Further Exacerbating the Harm to SeedFunder**

The failure of the MCE to evolve alongside the federal regulatory framework and other state exemptions exacerbates its negative impact on the Massachusetts market for crowdfunding services. As a result, the demand for such services within the state is artificially lowered, which not only harms SeedFunder's business but also diminishes the overall potential for economic growth and innovation within Massachusetts.

In *Granholm v. Heald*, 544 U.S. 460, 472 (2005), the Supreme Court emphasized that state laws should not create protectionist barriers that undermine the efficiency of interstate markets. By imposing outdated and restrictive regulations, the MCE effectively shields Massachusetts from participating in the broader, more dynamic federal crowdfunding market, thus violating the principles laid out in *Granholm* and the Commerce Clause.

The MCE's stringency and outdated provisions conflict with the intended purpose of state crowdfunding exemptions and violate the Commerce Clause by placing an undue burden on interstate commerce. The harm to SeedFunder's business—through the reduced potential to convert Massachusetts-based companies to federal crowdfunding—demonstrates a clear violation of federal law, necessitating a reversal of the district court's dismissal and a remand for further proceedings.

## CONCLUSION

The district court erred in finding that Plaintiff-Appellant lacked standing to challenge the Massachusetts Crowdfunding Exemption ("MCE"), 950 C.M.R. § 14.402(B)(13)(o), and in dismissing the complaint without addressing the substantive constitutional claims. The MCE imposes an unconstitutional burden on interstate commerce in violation of the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, and is

preempted by federal law, including the Jumpstart Our Business Startups ("JOBS")

Act, 15 U.S.C. §§ 77d(a)(6), 77d-1.

The dismissal of the complaint should be reversed, and this case should be

remanded to the district court with instructions to proceed with a full adjudication of

the merits, including the consideration of Plaintiff-Appellant's constitutional

challenges under the Commerce Clause and the Supremacy Clause, U.S. Const. art.

VI, cl. 2.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant respectfully requests oral argument in this case. The appeal

raises significant issues regarding the intersection of state and federal law,

specifically the preemption of the Massachusetts Crowdfunding Exemption

("MCE"), 950 C.M.R. § 14.402(B)(13)(o), by the federal Jumpstart Our Business

Startups ("JOBS") Act, 15 U.S.C. §§ 77d(a)(6), 77d-1, as well as important

constitutional questions under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3,

and the Supremacy Clause, U.S. Const. art. VI, cl. 2.

Given the complexity of the legal issues involved and the significant impact of

the district court's decision on the regulation of interstate commerce and the

application of federal securities law, Plaintiff-Appellant believes that oral argument

will assist the Court in fully understanding the arguments presented and the broader

implications of this case. Therefore, oral argument is requested to clarify the issues

and to ensure that the Court can explore the nuances of the legal principles at stake.


SUBMITTED BY:
Thomas Mourier
3 Indian Hill Rd.
Winchester, MA 01890
781/602-0385
thomas.mourier@yahoo.com

**CERTIFICATE OF COMPLIANCE**

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,418 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Times New Roman.

Dated: October 5, 2024

s/ Thomas A. Mourier
Thomas A. Mourier

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

s/ Thomas A. Mourier
Thomas A. Mourier

*Appellant*

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

Order Granting Motion to Dismiss ……………………………………………... 29

Order of Dismissal ………………………………………………………........ 37

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THOMAS A. MOURIER,                          *
                                            *
        Plaintiff,                          *
                                            *
        v.                                  *        Civil Action No. 1:23-cv-11280-IT
                                            *
WILLIAM F. GALVIN, Secretary of the         *
Commonwealth, in his official capacity,     *
MASSACHUSETTS SECURITY                      *
DIVISION, and MASSACHUSETTS                 *
OFFICE OF CONSUMER AFFAIRS AND              *
BUSINESS REGULATION,                        *
                                            *
        Defendants.                         *

<u>MEMORANDUM & ORDER</u>

August 1, 2024

TALWANI, D.J.

Plaintiff Thomas Mourier, proceeding <u>pro se</u>, challenges the constitutionality of certain Massachusetts crowdfunding regulations that he alleges conflict with, and are preempted by, federal securities law. Defendants William F. Galvin, Secretary of the Commonwealth of Massachusetts, the Massachusetts Securities Division, and the Massachusetts Office of Consumer Affairs and Business Regulation moved to dismiss. Defendants' Mot. to Dismiss for Lack of Subject-Matter Jurisdiction and for Failure to State a Claim [Doc. No. 18]. Because Plaintiff lacks standing to challenge the regulations, Defendants' <u>Motion</u> is GRANTED.

# I.    Background

According to his <u>Amended Complaint</u> [Doc. No. 7], Mourier is an undergraduate student who is "starting a business in the crowdfunding industry." <u>Id.</u> ¶ 13. He "filed for and was approved for incorporating a C Corporation in Delaware" and is in the process of amending the C Corporation's name to SeedFunder, Inc. ("SeedFunder"). <u>Id.</u> Mourier started his company "to

organize large capital raises primarily in the Commonwealth of Massachusetts spanning multiple industries, including investment companies as permissible by federal law." Id. ¶ 30. His company's "original business plan revolved around connecting builders within Massachusetts seeking to build residential projects to Massachusetts investors seeking to capitalize on this boom in their home state's housing industry," id. ¶ 31, and "by design engages in interstate transactions." Id. ¶ 47.

Mourier contends that the Massachusetts Crowdfunding Exemption ("MCE"), 950 C.M.R. § 14.402(B)(13)(o), has subjected his business to a patchwork of inconsistent regulations which have hindered SeedFunder's operation and development. He asserts that he has been compelled to reassess and alter his business model, to diversify his plans, and to look to create a platform for use mainly in states with more favorable crowdfunding regulations. Id. ¶ 40. He contends that this strategic shift has necessitated a departure from the original mission of fostering economic growth within Massachusetts. Id. ¶ 41. He also alleges that the MCE has "dissuaded many local builders from participating in crowdfunding campaigns[.]" Id.

Mourier's suit alleges that Defendant Secretary of the Commonwealth Galvin's promulgation of the MCE has infringed Mourier's rights under the Commerce Clause (Count I), First Amendment (Count III), Fourteenth Amendment (Counts IV and V), and Fifth Amendment (Count VI) to the United States Constitution. Id. ¶¶ 50-60, 68-101. Mourier alleges violations of federal preemption principles for imposing regulations that conflict with other federal laws against Defendants Galvin (Count II) and Massachusetts Securities Division (Count VII). Finally, Mourier alleges Defendant Massachusetts Office of Consumer Affairs and Business Regulation ("OCABR") has acted ultra vires (Count VIII) by enforcing regulations on brokerage activities that fall outside of its statutory mandate.

Defendants have moved to dismiss the complaint, <u>Motion to Dismiss</u> [Doc. No. 18],
pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P.
12(b)(6) for failure to state a claim.

## II.  **Subject Matter Jurisdiction**

A. *Standard of Review*

A motion to dismiss for lack of constitutional standing is properly brought as a challenge
to the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).
<u>See Katz v. Pershing, LLC</u>, 672 F.3d 64, 70 (1st Cir. 2012). Federal courts are courts of limited
jurisdiction, so federal jurisdiction is never presumed. <u>Viqueira v. First Bank</u>, 140 F.3d 12, 16
(1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of
federal jurisdiction. <u>Id.</u>

The doctrine of standing is rooted in Article III of the Constitution, which confines
federal courts to the adjudication of actual "cases" and "controversies." <u>See</u> U.S. Const. Art. III,
§ 2, cl. 1; <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560–61 (1992). Standing consists of three
elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the
challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial
decision." <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016), <u>as revised</u> (May 24, 2016)
(quoting <u>Lujan</u>, 504 U.S. at 560-61). "The standing inquiry is claim-specific: a plaintiff must
have standing to bring each and every claim that she asserts." <u>Katz v. Pershing, LLC</u>, 672 F.3d
64, 71 (1st Cir. 2012) (citing <u>Pagán v. Calderón</u>, 448 F.3d 16, 26 (1st Cir. 2006)). And where the
question of standing is based on the pleadings, "the plaintiff bears the burden of establishing
sufficient factual matter to plausibly demonstrate his standing to bring the action." <u>Hochendoner
v. Genzyme Corp.</u>, 823 F.3d 724, 731 (1st Cir. 2016).

B. *Discussion*

All counts of Mourier's Amended Complaint are predicated on the allegation that the MCE has harmed SeedFunder's business. But as Defendants point out, Mourier has not plausibly demonstrated that he is subject to the MCE.

1.    Federal Securities Law Regarding Crowdfunding

In 2012, Congress passed the Jumpstart Our Business Startups ("JOBS") Act, which, inter alia, amended Section 4 of the Securities Act of 1933. See 15 U.S.C. §§ 77d(a)(6), 77d-1. The JOBS Act exempts from the Securities Act's registration requirements certain "transactions involving the offer or sale of securities by an issuer." 15 U.S.C. § 77d(a). These exempted transactions include crowdfunded transactions so long as the securities issuer is not otherwise excluded from the exemption. Id. § 77d(a)(6). The JOBS Act also imposed a $1,000,000 cap on the amount a particular issuer may raise annually under the crowdfunding exemption, 15 U.S.C. §§77d(a)(6)(A), though the Securities and Exchange Commission ("SEC") has raised that cap to $5,000,000. See 17 C.F.R. § 227.100.

The JOBS Act also establishes requirements for crowdfunding portals, including that, for any interstate crowdfunding offering, "the transaction is conducted through a broker or funding portal that complies with the requirements of section 77-d-1(a)," 15 U.S.C. §§ 77d(a)(6)(A), (C), which in turn requires that "[a] person acting as an intermediary in a transaction involving the offer or sale of securities for the account of others" within the ambit of the crowdfunding exemption must register with the SEC as a broker or funding portal. 15 U.S.C. §§ 77d-1(a)(1)(A).

Section 3(a)(11) of the Securities Act specifies that its provisions "shall not apply to . . . [a]ny security which is part of an issue offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory." 15 U.S.C. §77c(a)(11). In other words, the Securities Act is concerned with interstate offerings only; purely intrastate offerings are beyond its scope.

### 2.      Massachusetts Crowdfunding Exemption

In 2014, Defendant Secretary of the Commonwealth William Galvin promulgated the Massachusetts Crowdfunding Exemption ("MCE") to address in-state crowdfunding initiatives. 950 C.M.R. § 14.402(B)(13)(o). The MCE exempts crowdfunding of securities from state registration requirements where, among other things, "[t]he issuer is a business entity . . . [f]ormed under the laws of the Commonwealth," and where the offering is sold only to persons or entities within the Commonwealth, consistent with § 3(a)(11) of the Securities Act. 950 C.M.R. § 14.402(B)(13)(o).

The MCE limits annual aggregate crowdfunding to $1,000,000 where the issuer has not undergone a financial audit in the previous fiscal year, and $2,000,000 where a financial audit has been conducted. Though the federal cap on the annual amount an issuer may raise through crowdfunding initiatives has been increased to $5,000,000, the limits in the MCE have not changed since it was promulgated. The MCE also is not available to any issuer whose officers, directors, or major shareholders have been found to have violated securities laws or other financial regulations or have otherwise committed fraud. 940 C.M.R. § 14.402(B)(13)(o)(10). Generally, the MCE is concerned only with the status and conduct of "issuers" of securities, not broker-dealers or intermediary entities or platforms.

3.    Neither Plaintiff nor His Business is Subject to MCE

The MCE regulates a certain class of parties, namely business entities incorporated within the Commonwealth and operating wholly within the Commonwealth that issue securities. 950 C.M.R. § 14.402(B)(13)(o). Mourier is an individual, not a business entity, and his business, SeedFunder, is, per Mourier's <u>Amended Complaint</u> [Doc. No. 7], incorporated in Delaware, not Massachusetts. SeedFunder reportedly operates interstate, not solely in state, and is also not alleged to be an issuer of securities. Accepting Mourier's allegations as true for purposes of this motion, neither Mourier nor SeedFunder is within the class of parties regulated by the MCE and neither is subject to its requirements.

Mourier concedes that SeedFunder is not an issuer of securities, and thus not subject to the MCE. Mem. of Law in Opp. to Def.'s Mot. to Dismiss the Compl. 8 ("Pl.'s Opp.") 8 [Doc. No. 22]. He nonetheless contends that he "does not need to be an issuer to suffer a direct injury" because "[t]he regulation's impact on SeedFunder, as a crowdfunding intermediary, is substantial and satisfies the requirement of a real and immediate injury." <u>Id.</u> at 9. Relying on <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 154 (1967), Mourier argues that standing is conferred when a regulation compels a business to change its everyday practices, and the MCE has hindered SeedFunder's ability to operate with securities issuers in the Commonwealth and has limited SeedFunder's potential clients. <u>Id.</u> at 8. Mourier contends that, though SeedFunder is not itself an issuer, "any hindrance to issuers' ability to raise capital affects SeedFunder's revenue, thus demonstrating a direct and immediate injury" sufficient to establish standing. <u>Id.</u> at 9.

The court need not wade through Mourier's standing analysis, which is based on a misunderstanding of the MCE. The MCE does not apply to offers of securities that are exempt from registration requirements of federal crowdfunding law. 950 C.M.R. § 14.402(B)(13)(p).

34

One way that a securities offer can become federally exempt is where "the transaction is conducted through a broker or funding portal that complies with the requirements of section 77d–1(a)" of the Securities Act. 15 U.S.C. § 77d(a)(6)(c). Thus, a transaction as described here, through SeedFunder as an alleged facilitator of interstate crowdfunding of securities transactions, is eligible for the federal crowdfunding exemption and thus is outside of the scope of the MCE.

Given that Mourier has not alleged facts under which SeedFunder or its clients would be subject to the MCE, the court finds that Mourier has not demonstrated that he has standing to challenge the regulation. See Lujan, 504 U.S. 555, 562 ("[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish."). Though Abbott Labs contemplated the possibility of standing where a regulation requires a plaintiff to "make significant changes in their everyday business practices," there was no dispute in that case that petitioners had standing or that the regulation at issue was directed at them. 386 U.S. at 154. Here, Mourier has not demonstrated that he, his business, or its clients are affected by the MCE; to the contrary, the MCE's language makes clear that Mourier and his business are not subject to the MCE at all. Accordingly, where Mourier has not sufficiently alleged that he is subject to the MCE's requirements, his allegations of harm cannot be attributed to the regulation, and he does not have standing to challenge it.[1]

---

[1] Where the court does not have subject matter jurisdiction as to all counts, it does not address Defendants' further arguments that counts Seven and Eight of the Complaint are barred by sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution and that Plaintiff has failed to state a claim upon which relief may be granted.

### III.    Conclusion

For the foregoing reasons, <u>Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction and for Failure to State a Claim</u> [Doc. No. 18] is GRANTED.

IT IS SO ORDERED

August 1, 2024                                         <u>/s/Indira Talwani          </u>

                                                United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THOMAS A. MOURIER,                          *
                                            *
          Plaintiff,                        *
                                            *
          v.                                *          Civil Action No. 1:23-cv-11280-IT
                                            *
WILLIAM F. GALVIN, Secretary of the         *
Commonwealth, in his official capacity,     *
MASSACHUSETTS SECURITY                      *
DIVISION, and MASSACHUSETTS                 *
OFFICE OF CONSUMER AFFAIRS AND              *
BUSINESS REGULATION,                        *
                                            *
          Defendants.                       *

ORDER OF DISMISSAL
August 2, 2024

TALWANI, D.J.

        Pursuant to the Memorandum and Order [Doc. No. 26] allowing Defendants' Motion to

Dismiss [Doc. No. 18] for lack of subject-matter jurisdiction, Plaintiff's Amended Complaint

[Doc. No. 7] is dismissed. This case is CLOSED.

        IT IS SO ORDERED.

                                                    /s/ Indira Talwani
                                                    United States District Judge