No. 24-1798

# United States Court of Appeals
## for the First Circuit

————————

THOMAS A. MOURIER,

*Plaintiff-Appellant*,

*v.*

WILLIAM F. GALVIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS; THE MASSACHUSETTS SECURITIES DIVISION; AND THE MASSACHUSETTS OFFICE OF CONSUMER AND BUSINESS REGULATION,

*Defendants-Appellees.*

————————

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS DISMISSING FOR LACK OF SUBJECT MATTER JURISDICTION

————————

**BRIEF OF APPELLEES**

————————

ANDREA JOY CAMPBELL
    *Attorney General of Massachusetts*
Arjun Kent Jaikumar, 1st Cir. No. 1182625
    *Assistant Attorney General*
Government Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2856
arjun.k.jaikumar@mass.gov

# TABLE

JURISDICTIONAL STATEMENT ................................................1

INTRODUCTION ...........................................................................1

STATEMENT OF THE ISSUES ................................................3

STATEMENT OF THE CASE ....................................................3

I.      BACKGROUND AND FACTUAL ALLEGATIONS........................3

      A.      Statutory and Regulatory Background.......................................3

            1.      Federal Law and Regulations ...........................................4

            2.      State Regulations ................................................................8

      B.      Plaintiff-Appellant'sAllegations ..............................................10

      C.      The District Court's Opinion ....................................................12

SUMMARY OF ARGUMENT .......................................................14

II.      ARGUMENT .............................................................................14

      A.      Standard of Review................................................................14

      B.      The District Court Correctly Dismissed the Complaint. ..........15

            1.      Plaintiff Lacks Standing To Bring A Claim
                 Challenging The MCE. ...................................................15

            2.      The District Court Did Not Err In Declining To
                 Reach The Merits Of Plaintiff's Claims.. .......................20

CONCLUSION..............................................................................22

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS
      .................................................................................................23

CERTIFICATE OF SERVICE .....................................................23

ADDENDUM ........................................................................................Add. 1

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abbott Laboratories v. Gardner,*
    387 U.S. 136 (1967)...............................................................................15, 17

*Califano v. Sanders,*
    430 U.S. 99 (1977) .........................................................................................15

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983).........................................................................................14

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013).......................................................................................15

*Doe v. Anrig,*
    728 F.2d 30 (1st Cir. 1984) ..........................................................................22

*Elk Grove Unified Sch. Dist. v. Newdow,*
    542 U.S. 1 (2004) ..........................................................................................19

*Gianfrancesco v. Town of Wrentham,*
    712 F.3d 634 (1st Cir. 2013) .........................................................................17

*Hogar Agua y Vida en el Desierto, Inc. v. Suarez-Medina,*
    36 F.3d 177 (1st Cir. 1994) ..........................................................................14

*Katz v. Pershing, LLC,*
    672 F.3d 64 (1st Cir. 2012) ..........................................................................20

*MainStreet Org. of Realtors v. Calumet City, Ill.,*
    505 F.3d 742 (7th Cir. 2007) .......................................................................19

*Massachusetts v. Mellon,*
    262 U.S. 447 (1923).......................................................................................14

*Steel Co. v. Citizens for a Better Env't,*

*523 U.S. 83 (1998)* ...............................................................................20

*United States v. AVX Corp.*,
    962 F.2d 108  (1st Cir. 1992)..............................................................16

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................19

## Statutes and Regulations

950 CMR § 12.206 .............................................................................4, 10

950 C.M.R. § 14.402(B)(13)(o) .......................................................*passim*

950 C.M.R. § 14.402(B)(13)(p) ..........................................................4, 7

15 U.S.C. § 77d(a)(6)...........................................................4, 5, 9, 13, 19

15 U.S.C. § 77c(a)(11) .......................................................................6, 17

15 U.S.C. § 77d-1  ...............................................................4, 5, 7, 16, 19

15 U.S.C. § 78m(q) .............................................................................4, 5

17 C.F.R. § 227.100 ................................................................................5

17 C.F.R. § 230.147…............................................................................6, 8, 17

17 C.F.R. § 230.147A ......................................................................6, 8, 17

17 C.F.R. § 230.152….........................................................................18

## JURISDICTIONAL STATEMENT

Plaintiff Thomas Mourier, proceeding *pro se*, asserted federal jurisdiction before the district court under 28 U.S.C. 1331 and 28 U.S.C. 1367(a). The district court dismissed this matter for lack of subject-matter jurisdiction based on Mr. Mourier's lack of Article III standing.

## INTRODUCTION

This appeal raises a single, simple question: whether an individual natural person has standing to sue (on behalf of a separate entity, a business he purports to own) to enjoin the enforcement of a state securities regulation that, on its face: (1) does not apply to him; (2) does not apply to his business; and (3) does not apply to or affect transactions involving his business?

Mr. Mourier alleges that he operates a business, SeedFunder, Inc. ("SeedFunder), as an interstate "crowdfunding portal" which facilitates the offer and sale of securities across state lines. He challenges the Massachusetts Crowdfunding Exemption ("MCE"), a regulation promulgated by the Securities Division of the Commonwealth of Massachusetts and codified at 950 C.M.R. § 14.402(B)(13)(o), on several statutory and constitutional grounds. However, Mr. Mourier misconstrues the scope and application of the MCE. He confuses the MCE, a regulation governing *intrastate* economic activity only, as one applying to the *interstate* crowdfunding in which his business purportedly operates.

The plain language of the MCE limits its scope to intrastate offerings conducted by an entity formed under the laws of Massachusetts. The federal Securities Act expressly exempts such intrastate offerings from its purview, enabling parallel state and federal regimes of securities regulation. There is no conflict between the two. A crowdfunded offer of securities may be subject either to federal or state crowdfunding exemptions, but not both.

Mr. Mourier's business is, as Mr. Mourier acknowledges, interstate in nature, and therefore beyond the reach of the MCE. Br. at 2, 5, 9, 10, 13, 14, 15.[1] Moreover, and critically, any clients and potential clients of SeedFunder are also outside the scope of the MCE to the extent that they wish to conduct interstate crowdfunding via SeedFunder. As the district court observed, any transactions conducted via SeedFunder would be subject to federal, not state, regulation, and the MCE has no application to them. Add. 6-7.

Therefore, as the district court correctly held, Mr. Mourier has not been – and cannot be – injured by the operation of the MCE and lacks standing to challenge it. Defendants-Appellees William F. Galvin, Secretary of the Commonwealth of

---

[1] Mr. Mourier's brief is cited herein as "Br. at [page number]." The Addendum to this brief, including citations to the decision below and to Mr. Mourier's Complaint, is cited as "Add. [page number]." References to Mr. Mourier's Amended Complaint, which is included in excerpted form at pages 91-115 of the Addendum, are cited as "Add. [page number] (Compl. [paragraph number]."

Massachusetts, the Massachusetts Securities Division, and the Massachusetts Office of Consumer Affairs and Business Regulation ("OCABR") (collectively, "Appellees") respectfully request that this Court affirm the district court.

## STATEMENT OF THE ISSUES

1. Did the district court correctly hold that Mr. Mourier, an individual natural person whose business allegedly provides a "portal" facilitating the *interstate* offer and sale of securities, lacks standing to challenge an intrastate Massachusetts regulation which does not affect Mr. Mourier, his company SeedFunder, or SeedFunder's clients?

2. If Mr. Mourier lacks standing to sue, did the district court err by declining to reach the merits of his claims?

## STATEMENT OF THE CASE

## I.    BACKGROUND AND FACTUAL ALLEGATIONS

### A.    Statutory and Regulatory Background

"Crowdfunding," in the business context, "allows businesses, particularly those in their nascent stages, to secure funding from a broad base of investors, often through online platforms." Add. 101 (Compl. ¶¶ 32-33). Crowdfunding allows small businesses to raise capital through relatively small-dollar investments. Crowdfunding platforms, including investment portals, function as an intermediary similar to a broker-dealer, connecting potential investors or purchasers of securities with offerings. *Id.* There are thus essentially three sides to every crowdfunded

offering: (1) the issuer who issues, offers, and sells securities, (2) the intermediary or portal through which individuals can purchase securities, and (3) the investors who purchase securities.

Both federal and state statutes and regulations govern the crowdfunding of securities. **Federal** law regulates crowdfunding offerings across state lines under the Jumpstart Our Business Startups Act ("JOBS Act") of 2012. Three separate **state** regulations govern (1) intrastate crowdfunding offerings, under the MCE; (2) filing requirements for issuers of securities related to notice and service of process for interstate offerings, 950 C.M.R. § 14.402(B)(13)(p), and (3) notice-filing requirements for federal crowdfunding *portals* based in Massachusetts, 950 CMR § 12.206.

### 1.    Federal Law and Regulations

The crowdfunding-related provisions of the JOBS Act amend Section 4 of the Securities Act of 1933 and are codified at 15 U.S.C. § 77d(a)(6) and 15 U.S.C. § 77d-1. They exempt crowdfunded transactions involving the offer or sale of securities from the Securities Act's registration requirements for issuers of securities, subject to certain requirements and limitations.

The JOBS Act excluded certain issuers from eligibility for the federal crowdfunding exemption, among them "an investment company, as defined in section 80a–3 of this title" and any issuer "subject to the requirement to file reports

pursuant to section 78m of this title," which in turn includes issuers engaged in resource extraction such as the commercial development of oil, gas, or minerals. 15 U.S.C. §§ 77d-1(f)(2),(3), 15 U.S.C. § 78m(q).[2] Although the Securities Act itself imposes a $1 million cap on the amount a particular issuer may raise annually under the crowdfunding exemption, 15 U.S.C. §§ 77d(a)(6)(A), the SEC has promulgated regulations raising the maximum amount of capital an issuer is permitted to raise annually via crowdfunding to $5,000,000. *See* 17 C.F.R. § 227.100.[3]

The Securities Act is concerned with interstate commerce and securities transactions substantially affecting interstate commerce and it expressly excludes purely *intrastate* offerings from its purview; the Act leaves regulation of purely intrastate securities offerings to state governments, consistent with the principle of federalism. Section 3(a)(11) of the Securities Act, codified at 15 U.S.C. § 77c(a)(11), states that:

---

[2] The Securities and Exchange Commission ("SEC") has promulgated rules declaring the same classes of issuers ineligible, under express statutory authorization. 17 C.F.R. §§ 227.100(b)(2), (3); *see* 15 U.S.C. § 77d-1(f)(2).

[3] The JOBS Act establishes several requirements for crowdfunding portals such as Plaintiff's business, mandating that for any interstate crowdfunding offering, "the transaction is conducted through a broker or funding portal that complies with the requirements of section 77d–1(a) of this title." 15 U.S.C. §§ 77d(a)(6)(A), (C). Securities Act Section 77d-1(a) requires, among other things, that "[a] person acting as an intermediary in a transaction involving the offer or sale of securities for the account of others" under the crowdfunding exemption must register with the SEC as a broker or a funding portal. 15 U.S.C. §§ 77d-1(a)(1)(A).

the provisions of this subchapter shall not apply to . . .
[a]ny security which is a part of an issue offered and sold only to
persons resident within a single State or Territory, where the issuer of
such security is a person resident and doing business within or, if a
corporation, incorporated by and doing business within, such State
or Territory.[4]

SEC Rules 147 and 147A provide the regulatory framework for offers and sales

within the exemption provided by Securities Act Section 3(a)(11).  17 C.F.R. §§

230.147, 230.147A.  They do not purport to preempt state regulations regarding

intrastate offers or sales of securities.  In other words, as the district court held, "the

Securities Act is concerned with interstate offerings only; purely intrastate offerings

are beyond its scope."  Add. 5.[5]

Of note, the Securities Act's crowdfunding exemption and implementing

regulations not only govern offers actually made across state lines, but *any*

crowdfunding offer made through a federally registered broker or funding portal.  15

---

[4] The referenced "subchapter" is Subchapter I of Chapter 15 of the United States
Code governing domestic securities; its provisions are numbered 15 U.S.C. §§ 77a
through 77aa.  Section 4(a)(6) of the Securities Act, codified at 15 U.S.C. §
77d(a)(6), is included in that subchapter.

[5] Federal law does permit states to require certain filings from issuers for the
purposes of notice, service of process, and the assessment of fees for interstate
offerings.  *See* 15 U.S.C. § 77r(c)(2)(A) ("Nothing in this section prohibits the
securities commission . . . of any State from requiring the filing of any document
filed with the Commission pursuant to this subchapter, together with annual or
periodic reports of the value of securities sold or offered to be sold to persons located
in the State . . . solely for notice purposes and the assessment of any fee, together
with a consent to service of process and any required fee.").

U.S.C. § 77d(a)(6)(C).  Any offer made through an interstate funding portal "that complies with the requirements of section 77d–1(a)" of the Securities Act will be eligible for the *federal* crowdfunding exemption rather than a state exemption.  *See id.*; 17 C.F.R. § 227.100(a)(3) (an issuer "may offer or sell securities in reliance on section 4(a)(6) of the Securities Act of 1933" provided, *inter alia*, that "transaction is conducted through an intermediary that complies with the requirements in section 4A(a) of the Securities Act"); 950 C.M.R. § 14.402(B)(13)(p) (establishing limited notice requirements for "offerings made under federal Regulation Crowdfunding 17 CFR § 227.").  If a particular issuer wishes to conduct an offer via an interstate crowdfunding portal registered with the SEC, that offer will be governed by federal crowdfunding regulations irrespective of whether the offer is actually conducted across state lines.

Additionally, a person or entity may *not* act as an intermediary in interstate crowdfunded offerings without registering with both the SEC and with any applicable self-regulatory organizations (of which the Financial Industry Regulatory Authority ("FINRA") is the only applicable one).  15 U.S.C. §§ 77d-1(a)(1)(B), (a)(2).  Although Mr. Mourier's Complaint is devoid of any allegations as to

7

SeedFunder's registration status, neither the SEC nor FINRA appears to have any record of SeedFunder having registered as an interstate fundraising portal.[6]

### 2. State Regulations

Pursuant to the Securities Act's exemption for intrastate offerings, in 2014, Massachusetts promulgated a parallel regulation governing analogous *intrastate* crowdfunding initiatives, the MCE.[7]   The MCE, codified at 950 C.M.R. § 14.402(B)(13)(o), exempts crowdfunding of securities from state registration requirements where, among other requirements, "[t]he issuer is a business entity . . . [f]ormed under the laws of the Commonwealth," and where the offering is sold only to residents of the Commonwealth in compliance with the requirements of § 3(a)(11)

---

[6] *See* Financial Industry Regulatory Authority, *Funding Portals We Regulate*, available at https://www.finra.org/about/firms-we-regulate/funding-portals-we-regulate (last visited November 14, 2024) ("A crowdfunding intermediary must register with the Securities and Exchange Commission (SEC) as a broker or as a funding portal and become a member of a national securities association (FINRA). The following crowdfunding intermediaries are registered with the SEC as funding portals and are funding portal members of FINRA.").

[7] At least 34 states and the District of Columbia have enacted similar statutes or regulations.  *See, e.g.*, Ala. Code § 8-6-11 (Alabama); Alaska Stat. § 45.56.130 (Alaska); Ariz. Rev. Stat. § 44-1844(D) (Arizona); Colo. Rev. Stat. Ann. § 11-51-308.5(3) (Colorado); Del. Code tit. 6, § 73-207 (b)(15) (Delaware); Fla. Stat. § 517.0611 (Florida).  Many of these jurisdictions, including Massachusetts, have worked with the North American Securities Administrators Association ("NASAA"), a coalition of state and provincial securities regulators across the United States and Canada, to promulgate consistent and near-uniform rules for intrastate crowdfunding.

of the Securities Act of 1933 . . . or SEC Rule 147 or 147A (17 C.F.R. 230.147 or

230.147A)."

The MCE mirrors similar federal regulations in almost every respect, with one

notable exception relevant here.  The MCE limits annual aggregate crowdfunding to

$1 million per issuer, if the issuer has not undergone a financial audit concerning the

previous fiscal year and made the results available to investors and to the

Commonwealth; and $2 million per issuer, if the issuer has done so.  At the time the

MCE was promulgated, it matched the federal exemption in this regard.  *See* 15

U.S.C. 77d(a)(6)(A).[8]  With one exception, all the MCE's provisions concern the

status and conduct of *issuers* rather than broker-dealers or other intermediaries.  *See*

950 C.M.R. § 14.402(B)(13)(o)(1), (2), (3), (4), (5), (6), (8), (10), (11), (12), (14),

(15).[9]

---

[8] Like the federal exemption, the state exemption is not available to issuers who are
investment companies or operating in extractive industries.    950 C.M.R.
14.402(B)(13)(o)(6)(e).  It is also not available to any issuer whose officers,
directors, or major shareholders (defined as individuals with control over 20% of the
issuer's voting equity securities, determined by voting power) have been found to
have violated securities laws or other financial regulations, or have committed other
types of misconduct or fraud.  950 C.M.R. § 14.402(B)(13)(o)(10).

[9]  The  lone  exception,  950  C.M.R.  §  14.402(B)(13)(o)(7),  states  that  "[n]o
commission, fee, or other remuneration shall be paid or given, directly or indirectly,
to any person for soliciting any prospective purchaser for a transaction in reliance
upon the exemption provided by 950 CMR § 14.402(B)(13)(o) unless such person
is registered as a broker-dealer or agent under the Securities Exchange Act of 1934."
Mr. Mourier's Complaint does not cite or challenge this provision.

In view of federal preemption of state regulation of several kinds of interstate offerings, including crowdfunding, Massachusetts promulgated a far more limited regulation governing *interstate* crowdfunding. This regulation, entitled "Notice Filing Requirement for Federal Crowdfunding Offerings" and codified at 950 C.M.R. § 14.402(B)(13)(p), expressly applies "to offerings made under federal Regulation Crowdfunding 17 CFR § 227 and Sections 4(a)(6) and 18(b)(4)(C) of the Securities Act of 1933." It states that "[a]n issuer that offers and sells securities in the Commonwealth in an offering exempt under federal Regulation Crowdfunding" shall file with the Director of the Securities Division "[a] Uniform Notice of Federal Crowdfunding Offering (Form U-CF)" and a consent to service of process, as permitted under NSMIA. 950 C.M.R. §14.402(B)(13)(p)(1). It imposes no other requirements on issuers related to offerings exempt under federal Regulation Crowdfunding, and imposes no requirements on intermediaries or funding portals.[10]

## B.    Plaintiff-Appellant's Allegations

Mr. Mourier is an undergraduate student residing in the Commonwealth of Massachusetts. Add. 96 (Compl. ¶ 13). He alleges that he is "starting a business in the crowdfunding industry" via a "C Corporation [incorporated] in Delaware with assigned filing number 6950848," which he refers to as SeedFunder, Inc. *Id*.

---

[10] 950 CMR § 12.206 does require that a crowdfunding portal make a notice filing with the Securities Division.

Mr. Mourier freely acknowledges throughout his brief that SeedFunder's business is interstate in nature. He describes SeedFunder as "crowdfunding intermediary business incorporated in Delaware [that] conducts interstate operations." Br. at 2; *see also id*. at 5 ("SeedFunder operates on an interstate basis, connecting issuers with potential investors across state lines"); id. at 9 (referring to SeedFunder's "interstate operations"); *id*. at 10 (alleging that the MCE "burdens [] SeedFunder's interstate activities"); *id*. at 12 (alleging that the MCE impacts "SeedFunder's ability to conduct business across state lines"); *id*. at 13 ("SeedFunder operates as an interstate crowdfunding intermediary, connecting issuers with investors across state lines.").

Mr. Mourier alleges in the Complaint that the MCE has discouraged him from facilitating offerings within the Commonwealth of Massachusetts, has forced him to "diversify" his business model, and has cost him unspecified business opportunities. Add. 92-93, 95, 101, 106 (Compl. ¶¶ 3, 4, 5, 12, 39-42, 53).[11] On appeal, Mr. Mourier asserts a slightly different theory of injury: he contends that "the MCE

---

[11] Mr. Mourier does not allege that he "issues or proposes to issue any security," such that he would qualify as an issuer under the Securities Act or state law. 15 U.S.C. § 77(b)(a)(4). Rather, he alleges that his company is intended to be a "funding portal" or "crowdfunding intermediary business" rather than an issuer, although he does not allege that he has registered with the SEC as a broker or funding portal and Defendants-Appellees have found no record of his having done so. Add. 110 (Compl. ¶¶ 78-79); 15 U.S.C. § 77d-1(a); *see* Br. at 2.

limits the amount of capital that Massachusetts-based issuers can raise, and restricts offerings to in-state investors only," and therefore "effectively reduces the pool of potential clients that SeedFunder can serve within Massachusetts," resulting in an "inability to work with clients who are bound by the MCE."  Br. at 5-6.

## C.    The District Court's Opinion

In October of 2023, Defendant-Appellees moved to dismiss Mr. Mourier's Complaint for lack of subject matter jurisdiction and for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

With respect to the Court's subject-matter jurisdiction, Defendants argued that Mr. Mourier, a natural person operating (across state lines) a Delaware business that does not issue securities, was not subject to the MCE and lacked standing to challenge it.  Mr. Mourier conceded, as he does on appeal, that neither he nor SeedFunder is an issuer of securities "and thus not subject to the MCE."  Add. 6. He nevertheless maintained that he had suffered an indirect harm because the MCE "hindered SeedFunder's ability to operate with securities issuers in the Commonwealth and has limited SeedFunder's potential clients." *Id*.  at 6.

The district court granted Defendants-Appellees' motion and dismissed the Complaint for lack of standing and therefore lack of subject-matter jurisdiction. *Id*. at 7-8.  Because the district court concluded that it did not have jurisdiction over the case, it declined to address Defendants- argument that the Complaint failed to state

12

a claim upon which relief could be granted or that two counts of the Complaint were barred by sovereign immunity. *Id.* at 7 & n.1.

The district court first noted that, as Mr. Mourier conceded, he and his business were not directly subject to the MCE, and further that Mr. Mourier's arguments as to standing were "based on a misunderstanding of the MCE." *Id.* at 6. Critically, the district court observed that even if Mr. Mourier could assert some kind of harm to SeedFunder's business, it would not be traceable to the MCE. The court noted that the MCE does not apply to offers that qualify for the federal crowdfunding exemption, and that:

> One way that a securities offer can become federally exempt is where "the transaction is conducted through a broker or funding portal that complies with the requirements of section 77d–1(a)" of the Securities Act. 15 U.S.C. § 77d(a)(6)(c).

*Id.* at 7. Therefore, a transaction involving SeedFunder, "as an alleged facilitator of interstate crowdfunding of securities transactions, is eligible for the federal crowdfunding exemption and thus is outside of the scope of the MCE." *Id.* Thus, the district court concluded, Mr. Mourier could not even demonstrate any injury to his business's clients or prospective clients, as any transaction or putative transaction with SeedFunder would be outside the MCE's purview. Consequently, Mr. Mourier's allegations of harm "cannot be attributed to the regulation." *Id.*

This appeal followed. On appeal, Mr. Mourier makes two central arguments. First, he reasserts the same arguments as to standing, opining that the MCE somehow

inhibits potential clients from engaging in interstate transactions with SeedFunder and therefore indirectly harms his business.  Br. at 9, 12-14.  Second, he argues that, irrespective of the existence of subject-matter jurisdiction, the district court should nevertheless have considered "the merits" of his claims in ruling on Defendants-Appellees' Motion to Dismiss.  Br. at 10.

## SUMMARY OF ARGUMENT

The Court should affirm the judgment of the district court because Mr. Mourier has not established Article III standing to challenge the MCE.  Neither Mr. Mourier, nor his company SeedFunder, are subject to the MCE, and the MCE does not restrict any of SeedFunder's clients from participating in interstate offerings via SeedFunder, as such offerings are outside the MCE's purview.  Mr. Mourier therefore cannot demonstrate any injury either traceable to the MCE or redressable by a change in the regulation.

## II.     ARGUMENT

### A.     Standard of Review

Where, as here, the jurisdictional facts are not disputed, this Court reviews a district court's dismissal for lack of subject-matter jurisdiction *de novo.  Hogar Agua y Vida en el Desierto, Inc. v. Suarez-Medina*, 36 F.3d 177, 181 (1st Cir. 1994).  The burden to establish Article III standing lies with the party asserting jurisdiction: a plaintiff "must show that he has sustained or is immediately in danger of sustaining some direct injury . . . and the injury or threat of injury must be both real and

immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983).  "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

A party asserting unconstitutional state action "must be able to show, not only that the [action] is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement." *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923).  A plaintiff will have standing where they can show, for example, "the regulation is directed at them in particular; it requires them to make significant changes in their everyday business practices; if they fail to observe the [government]'s rule they are quite clearly exposed to the imposition of strong sanctions." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 154 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

**B.     The District Court Correctly Dismissed the Complaint.**

      **1.     Plaintiff Lacks Standing To Bring A Claim Challenging The MCE.**

Mr. Mourier's Complaint rises and falls on a single premise: that he, the operator of a business that is purportedly engaged or proposes to engage in interstate crowdfunding, has been directly or indirectly injured by the operation of the MCE, and particularly by its alleged inconsistencies with the federal scheme of securities

regulation.  But that premise is mistaken.  The MCE regulates the conduct of (1) issuers of securities (2) who are business entities (3) incorporated under the laws of the Commonwealth, and (4) conducting offerings wholly within the Commonwealth. As the district court observed, Mr. Mourier is none of these; he is a natural person whose company is not alleged to be an issuer of securities, is incorporated in Delaware, and facilitates interstate offerings.  Add. 6.  Neither SeedFunder nor Mr. Mourier, the individual actually bringing suit, are subject to enforcement of the regulation he challenges, and, therefore, he lacks standing to sue.  *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992).

Even if it were proper for Mr. Mourier to pursue claims on behalf of his business, which it is not, Mr. Mourier's business is interstate in nature.  As a result, the MCE, which is available only for offerings "sold only to residents of the Commonwealth" does not apply to his business at all.   950 CMR 14.402(B)(13)(o)(2).  Moreover, the MCE also applies only to offerings conducted by issuers "[f]ormed under the laws of the Commonwealth."   950 C.M.R. § 14.402(B)(13)(o)(a)(1).   Plaintiff alleges that his company is a Delaware corporation, and not an issuer, but an intermediary.  Add. 96 (Compl. ¶ 13).  He is therefore free to conduct his interstate business as an intermediary consistently with

federal law.[12]  *See* 15 U.S.C. § 77d(a)(6) (requiring that transactions under the federal crowdfunding exemption be "conducted through a broker or funding portal"), 15 U.S.C. § 77d-1(a) (establishing various requirements for intermediaries and funding portals, including registration with the Securities and Exchange Commission).[13]  Mr. Mourier does not and cannot show that the MCE is "directed at [him]," that it compels changes in his everyday business practices, or that he is imposed to any sanction at all absent compliance, and he lacks standing to challenge it.  *Abbott Labs*, 387 U.S. 154.

On appeal, Mr. Mourier barely addresses the district court's holding as to standing.  Instead, he argues in conclusory fashion that the MCE "limit[s] the ability of Massachusetts-based issuers to raise capital and confine[s] offerings to in-state residents," therefore causing him injury.  Br. at 9; *see also id*. at 13, 14.  However, the MCE does nothing of the sort.   The MCE has no application whatsoever to

---

[12] The MCE is largely inapplicable to the actions of interstate intermediaries such as SeedFunder, aside from requiring that those who accept remuneration in connection with the offering be registered as broker-dealers under the federal Exchange Act, and that those intermediaries have not been convicted of securities violations or subject to other similar enforcement actions.  950 C.M.R. § 14.402(B)(13)(o)(7), (10).

[13] The MCE further applies to business entities rather than natural persons such as Mr. Mourier.  Generally, "a corporate shareholder (even a sole shareholder) may not sue in his own name to redress injuries suffered solely by the corporation." *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 637 (1st Cir. 2013).

offerings of securities conducted across state lines; it no more "limits" or "confines" such offerings than it encourages them.   If an issuer of securities wishes to crowdfund an offer across state lines, it may do so unaffected by the MCE in any respect.   950 C.M.R. § 14.402(B)(13)(o)(2) (MCE applies solely to offerings "sold *only to residents of the Commonwealth*") (emphasis added); *see* 15 U.S.C. § 77c(a)(11)), 17 C.F.R. §§ 230.147, 230.147A.[14]

Moreover, because the MCE applies to *offers* rather than to entities themselves, nothing in the MCE would preclude an issuer of securities from conducting separate intrastate and interstate offerings up to the respective annual state and federal limits.[15]   In other words, even if a Massachusetts issuer reached the MCE's $2 million intrastate limit in a given year, the MCE would have no effect on that issuer's ability to work with Mr. Mourier's company to raise up to $5 million of *additional* capital up to the federal limit; a transaction via SeedFunder, as the district court observed, would necessarily be subject to federal regulations.

---

[14] Moreover, contrary to Mr. Mourier's suggestion, neither the MCE nor the federal exemption *limit* the amount of capital that can be raised through an offer of securities.  They are merely exemptions from the ordinary registration requirements for issuers of securities.  A properly registered issuer may raise all the capital it likes without limitation by either the MCE or federal Regulation Crowdfunding.

[15] Defendants make no representation as to whether *federal* law or SEC regulations would preclude or limit such offerings.  *Cf.* 17 C.F.R. § 230.152.

For the same reasons, Mr. Mourier's conclusory statement that the MCE "imposes barriers that hinder SeedFunder's ability to conduct business effectively" is without merit. Br. at 13. Mr. Mourier has not, and cannot, identify any provision of the MCE that blocks or restricts issuers from engaging in interstate crowdfunding with a federally registered intermediary – because it does not.

Therefore, Mr. Mourier's assertion that "the inability to work with clients who are bound by the MCE has placed SeedFunder at a competitive disadvantage compared to crowdfunding intermediaries that are able to operate without such constraints in other states," Br. at 6, is wholly misplaced. There is nothing in the MCE stopping either Mr. Mourier or Seedfunder's clients from conducting business with each other exactly as they would if the MCE did not exist. Therefore, as the district court held, any injury Mr. Mourier has experienced is not attributable nor traceable to the MCE.[16]

---

[16] Even if SeedFunder's clients had suffered some type of injury attributable to the MCE, which they have not, Mr. Mourier lacks standing to seek relief on their behalf. The Seventh Circuit considered an analogous case involving a suit brought by real estate brokers – intermediaries linking sellers and buyers, like Plaintiff – challenging a city ordinance precluding homeowners from selling houses until an inspection confirmed compliance to city codes. *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 745 (7th Cir. 2007). The Seventh Circuit (Posner, J.), held the suit barred under the doctrine of prudential standing – "the principle that, subject to certain exceptions, one cannot sue in a federal court to enforce someone else's legal rights." *Id.* at 746 (citing *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 17 (2004); *Warth v. Seldin*, 422 U.S. 490, 509 (1975)).

To be sure, if SeedFunder is in fact *not* registered as an intermediary or crowdfunding portal with the SEC or FINRA, a transaction through SeedFunder would not be eligible for the federal crowdfunding exemption.   15 U.S.C. § 77d(a)(6)(C) (to qualify for the federal crowdfunding exemption, an offer must be conducted "through a broker or funding portal that complies with the requirements of section 77d–1(a) of this title.").  But if that is the case, SeedFunder cannot legally participate as an intermediary in interstate crowdfunding initiatives at all,  15 U.S.C. § 77d-1(a), and it would be federal law, rather than the MCE, that restrains Mr. Mourier.  Again, Mr. Mourier could not show any injury *traceable to the MCE* sufficient to confer standing.

### 2.    The District Court Did Not Err In Declining to Address The Merits Of Plaintiff's Claims.

Since all of Mr. Mourier's claims rest on the mistaken premise that he has suffered, or could suffer, an injury under the MCE and that he has standing to challenge it, the district court properly dismissed the Complaint for lack of standing. And because Article III standing is a jurisdictional issue, *Katz v. Pershing, LLC*, 672 F.3d 64, 70 (1st Cir. 2012), the district court did not consider Defendants-Appellees' arguments regarding dismissal of the Complaint for failure to state a claim upon which relief could be granted, nor Defendants' Eleventh Amendment and sovereign immunity defenses.  Add. 7 & n.1.

On appeal, Mr. Mourier contends that the district court somehow erred in declining to address the merits of his allegations, but asks only that this Court "remand for further consideration" rather than addressing the merits here.  Br. at 11. Mr. Mourier relies on *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) for the proposition that "dismissing on jurisdictional grounds without reaching substantive claims may be improper when the plaintiff has sufficiently pled a plausible cause of action."  Mr. Mourier misreads the Supreme Court's opinion in *Steel Co.*, which stands for the opposite proposition.  Rather, the Court held that:

> Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.

*Id.*  There was no error in declining to consider matters outside the district court's jurisdiction.

Nevertheless, the relief Mr. Mourier requests – remand to the district court for further consideration, Br. at 11, 17 – would nevertheless be appropriate should this Court determine that Mr. Mourier has standing to sue.  Although it is within this Court's discretion to consider matters not considered by the district court, "[i]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."  *Singleton v. Wulff*, 428 U.S. 106, 120 (1976).  As such, Defendants-Appellees agree with Mr. Mourier that, in the event this Court reverses

21

the decision of the district court with respect to standing, the Court should remand for full consideration of Defendants' Rule 12(b)(6) motion.[17]

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court affirm the judgment of the district court.

Respectfully submitted,

ANDREA JOY CAMPBELL, in her official capacity as Attorney General of the Commonwealth of Massachusetts

*/s/ Arjun K. Jaikumar*
Arjun K. Jaikumar, First Cir. No. 1182625
Assistant Attorney General
Government Bureau
Office of the Attorney General of Massachusetts
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2856
arjun.k.jaikumar@mass.gov

November 21, 2024

---

[17] Defendants-Appellees are aware that this Court may affirm "on any ground supported by the record even if the issue was not pleaded, tried, or otherwise referred to in the proceedings below." *Doe v. Anrig*, 728 F.2d 30, 32 (1st Cir. 1984) (citations omitted). Should the Court determine that full consideration of the merits of Defendants-Appellees' Rule 12(b)(6) motion is warranted here, Defendants-Appellees respectfully refer the Court to their briefing in the district court. *Mourier v. Galvin*, No. 23-CV-11280-IT (D. Mass.), Dkts. 19, 25. Defendants-Appellees are also prepared to submit supplemental briefing should the Court so desire.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I hereby certify that:

1. This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because the brief contains 5,292 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with 14-point, Times New Roman font.

*/s/ Arjun K. Jaikumar*

November 21, 2024

## CERTIFICATE OF SERVICE

I hereby certify that this brief, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on November 21, 2024.

*/s/ Arjun K. Jaikumar*
Counsel for the Defendant-Appellee

# **ADDENDUM**

In addition to the required inclusion of the order on appeal, this Addendum consists substantially of statutes and regulations submitted to the Court in accordance with Fed. R. App. P. 28(f), which are not subject to the 25-page limit set forth in First Circuit Local Rule 28.0(a)(2).  The only additional material included within this Addendum is an excerpted segment of Plaintiff-Appellant Thomas Mourier's Amended Complaint as filed in the district court, which segment is 25 pages in length, consistent with Local Rule 28.0(a)(2).

Memorandum and Order on Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction and for Failure to State a Claim, *Thomas A. Mourier v. Massachusetts Securities Division, et al.,* United States District Court for the District of Massachusetts, Civil Action No. 23-11280-IT, Docket No. 26, dated August 1, 2024 ........................................................................ Add:1

15 U.S.C. § 77c ................................................................ Add:9

15 U.S.C. § 77d .................................................................. Add:15

15 U.S.C. § 77d-1 ................................................................ Add:22

17 C.F.R. § 227 ................................................................ Add:29

950 C.M.R. § 14.402 ............................................................ Add:62

Plaintiff-Appellant's Amended Complaint (excerpted) .......................... Add:91

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THOMAS A. MOURIER,                              *
                                                *
        Plaintiff,                              *
                                                *
        v.                                      *       Civil Action No. 1:23-cv-11280-IT
                                                *
WILLIAM F. GALVIN, Secretary of the             *
Commonwealth, in his official capacity,         *
MASSACHUSETTS SECURITY                          *
DIVISION, and MASSACHUSETTS                     *
OFFICE OF CONSUMER AFFAIRS AND                  *
BUSINESS REGULATION,                            *
                                                *
        Defendants.                             *

<u>MEMORANDUM & ORDER</u>

August 1, 2024

TALWANI, D.J.

Plaintiff Thomas Mourier, proceeding <u>pro se</u>, challenges the constitutionality of certain

Massachusetts crowdfunding regulations that he alleges conflict with, and are preempted by,

federal securities law. Defendants William F. Galvin, Secretary of the Commonwealth of

Massachusetts, the Massachusetts Securities Division, and the Massachusetts Office of

Consumer Affairs and Business Regulation moved to dismiss. Defendants' Mot. to Dismiss for

Lack of Subject-Matter Jurisdiction and for Failure to State a Claim [Doc. No. 18]. Because

Plaintiff lacks standing to challenge the regulations, Defendants' <u>Motion</u> is GRANTED.

**I.      Background**

According to his <u>Amended Complaint</u> [Doc. No. 7], Mourier is an undergraduate student

who is "starting a business in the crowdfunding industry." <u>Id.</u> ¶ 13. He "filed for and was

approved for incorporating a C Corporation in Delaware" and is in the process of amending the

C Corporation's name to SeedFunder, Inc. ("SeedFunder"). <u>Id.</u> Mourier started his company "to

**Add. 001**

organize large capital raises primarily in the Commonwealth of Massachusetts spanning multiple industries, including investment companies as permissible by federal law." Id. ¶ 30. His company's "original business plan revolved around connecting builders within Massachusetts seeking to build residential projects to Massachusetts investors seeking to capitalize on this boom in their home state's housing industry," id. ¶ 31, and "by design engages in interstate transactions." Id. ¶ 47.

Mourier contends that the Massachusetts Crowdfunding Exemption ("MCE"), 950 C.M.R. § 14.402(B)(13)(o), has subjected his business to a patchwork of inconsistent regulations which have hindered SeedFunder's operation and development. He asserts that he has been compelled to reassess and alter his business model, to diversify his plans, and to look to create a platform for use mainly in states with more favorable crowdfunding regulations. Id. ¶ 40. He contends that this strategic shift has necessitated a departure from the original mission of fostering economic growth within Massachusetts. Id. ¶ 41. He also alleges that the MCE has "dissuaded many local builders from participating in crowdfunding campaigns[.]" Id.

Mourier's suit alleges that Defendant Secretary of the Commonwealth Galvin's promulgation of the MCE has infringed Mourier's rights under the Commerce Clause (Count I), First Amendment (Count III), Fourteenth Amendment (Counts IV and V), and Fifth Amendment (Count VI) to the United States Constitution. Id. ¶¶ 50-60, 68-101. Mourier alleges violations of federal preemption principles for imposing regulations that conflict with other federal laws against Defendants Galvin (Count II) and Massachusetts Securities Division (Count VII). Finally, Mourier alleges Defendant Massachusetts Office of Consumer Affairs and Business Regulation ("OCABR") has acted ultra vires (Count VIII) by enforcing regulations on brokerage activities that fall outside of its statutory mandate.

Defendants have moved to dismiss the complaint, <u>Motion to Dismiss</u> [Doc. No. 18], pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## II.    Subject Matter Jurisdiction

### A.  *Standard of Review*

A motion to dismiss for lack of constitutional standing is properly brought as a challenge to the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). <u>See</u> <u>Katz v. Pershing, LLC</u>, 672 F.3d 64, 70 (1st Cir. 2012). Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed. <u>Viqueira v. First Bank</u>, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. <u>Id.</u>

The doctrine of standing is rooted in Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies." <u>See</u> U.S. Const. Art. III, § 2, cl. 1; <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560–61 (1992). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016), <u>as revised</u> (May 24, 2016) (quoting <u>Lujan</u>, 504 U.S. at 560-61). "The standing inquiry is claim-specific: a plaintiff must have standing to bring each and every claim that she asserts." <u>Katz v. Pershing, LLC</u>, 672 F.3d 64, 71 (1st Cir. 2012) (citing <u>Pagán v. Calderón</u>, 448 F.3d 16, 26 (1st Cir. 2006)). And where the question of standing is based on the pleadings, "the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." <u>Hochendoner v. Genzyme Corp.</u>, 823 F.3d 724, 731 (1st Cir. 2016).

**Add. 003**

B. *Discussion*

All counts of Mourier's Amended Complaint are predicated on the allegation that the MCE has harmed SeedFunder's business. But as Defendants point out, Mourier has not plausibly demonstrated that he is subject to the MCE.

    1.      Federal Securities Law Regarding Crowdfunding

In 2012, Congress passed the Jumpstart Our Business Startups ("JOBS") Act, which, inter alia, amended Section 4 of the Securities Act of 1933. See 15 U.S.C. §§ 77d(a)(6), 77d-1. The JOBS Act exempts from the Securities Act's registration requirements certain "transactions involving the offer or sale of securities by an issuer." 15 U.S.C. § 77d(a). These exempted transactions include crowdfunded transactions so long as the securities issuer is not otherwise excluded from the exemption. Id. § 77d(a)(6). The JOBS Act also imposed a $1,000,000 cap on the amount a particular issuer may raise annually under the crowdfunding exemption, 15 U.S.C. §§77d(a)(6)(A), though the Securities and Exchange Commission ("SEC") has raised that cap to $5,000,000. See 17 C.F.R. § 227.100.

The JOBS Act also establishes requirements for crowdfunding portals, including that, for any interstate crowdfunding offering, "the transaction is conducted through a broker or funding portal that complies with the requirements of section 77-d-1(a)," 15 U.S.C. §§ 77d(a)(6)(A), (C), which in turn requires that "[a] person acting as an intermediary in a transaction involving the offer or sale of securities for the account of others" within the ambit of the crowdfunding exemption must register with the SEC as a broker or funding portal. 15 U.S.C. §§ 77d-1(a)(1)(A).

4

**Add. 004**

Section 3(a)(11) of the Securities Act specifies that its provisions "shall not apply to . . . [a]ny security which is part of an issue offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory." 15 U.S.C. §77c(a)(11). In other words, the Securities Act is concerned with interstate offerings only; purely intrastate offerings are beyond its scope.

2.    Massachusetts Crowdfunding Exemption

In 2014, Defendant Secretary of the Commonwealth William Galvin promulgated the Massachusetts Crowdfunding Exemption ("MCE") to address in-state crowdfunding initiatives. 950 C.M.R. § 14.402(B)(13)(o). The MCE exempts crowdfunding of securities from state registration requirements where, among other things, "[t]he issuer is a business entity . . . [f]ormed under the laws of the Commonwealth," and where the offering is sold only to persons or entities within the Commonwealth, consistent with § 3(a)(11) of the Securities Act. 950 C.M.R. § 14.402(B)(13)(o).

The MCE limits annual aggregate crowdfunding to $1,000,000 where the issuer has not undergone a financial audit in the previous fiscal year, and $2,000,000 where a financial audit has been conducted. Though the federal cap on the annual amount an issuer may raise through crowdfunding initiatives has been increased to $5,000,000, the limits in the MCE have not changed since it was promulgated. The MCE also is not available to any issuer whose officers, directors, or major shareholders have been found to have violated securities laws or other financial regulations or have otherwise committed fraud. 940 C.M.R. § 14.402(B)(13)(o)(10). Generally, the MCE is concerned only with the status and conduct of "issuers" of securities, not broker-dealers or intermediary entities or platforms.

**Add. 005**

3.    Neither Plaintiff nor His Business is Subject to MCE

The MCE regulates a certain class of parties, namely business entities incorporated

within the Commonwealth and operating wholly within the Commonwealth that issue securities.

950 C.M.R. § 14.402(B)(13)(o). Mourier is an individual, not a business entity, and his business,

SeedFunder, is, per Mourier's Amended Complaint [Doc. No. 7], incorporated in Delaware, not

Massachusetts. SeedFunder reportedly operates interstate, not solely in state, and is also not

alleged to be an issuer of securities. Accepting Mourier's allegations as true for purposes of this

motion, neither Mourier nor SeedFunder is within the class of parties regulated by the MCE and

neither is subject to its requirements.

Mourier concedes that SeedFunder is not an issuer of securities, and thus not subject to

the MCE. Mem. of Law in Opp. to Def.'s Mot. to Dismiss the Compl. 8 ("Pl.'s Opp.") 8 [Doc.

No. 22]. He nonetheless contends that he "does not need to be an issuer to suffer a direct injury"

because "[t]he regulation's impact on SeedFunder, as a crowdfunding intermediary, is substantial

and satisfies the requirement of a real and immediate injury." Id. at 9. Relying on Abbott Labs. v.

Gardner, 387 U.S. 136, 154 (1967), Mourier argues that standing is conferred when a regulation

compels a business to change its everyday practices, and the MCE has hindered SeedFunder's

ability to operate with securities issuers in the Commonwealth and has limited SeedFunder's

potential clients. Id. at 8. Mourier contends that, though SeedFunder is not itself an issuer, "any

hindrance to issuers' ability to raise capital affects SeedFunder's revenue, thus demonstrating a

direct and immediate injury" sufficient to establish standing. Id. at 9.

The court need not wade through Mourier's standing analysis, which is based on a

misunderstanding of the MCE. The MCE does not apply to offers of securities that are exempt

from registration requirements of federal crowdfunding law. 950 C.M.R. § 14.402(B)(13)(p).

6

**Add. 006**

One way that a securities offer can become federally exempt is where "the transaction is conducted through a broker or funding portal that complies with the requirements of section 77d–1(a)" of the Securities Act. 15 U.S.C. § 77d(a)(6)(c). Thus, a transaction as described here, through SeedFunder as an alleged facilitator of interstate crowdfunding of securities transactions, is eligible for the federal crowdfunding exemption and thus is outside of the scope of the MCE.

Given that Mourier has not alleged facts under which SeedFunder or its clients would be subject to the MCE, the court finds that Mourier has not demonstrated that he has standing to challenge the regulation. See Lujan, 504 U.S. 555, 562 ("[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish."). Though Abbott Labs contemplated the possibility of standing where a regulation requires a plaintiff to "make significant changes in their everyday business practices," there was no dispute in that case that petitioners had standing or that the regulation at issue was directed at them. 386 U.S. at 154. Here, Mourier has not demonstrated that he, his business, or its clients are affected by the MCE; to the contrary, the MCE's language makes clear that Mourier and his business are not subject to the MCE at all. Accordingly, where Mourier has not sufficiently alleged that he is subject to the MCE's requirements, his allegations of harm cannot be attributed to the regulation, and he does not have standing to challenge it.[1]

---

[1] Where the court does not have subject matter jurisdiction as to all counts, it does not address Defendants' further arguments that counts Seven and Eight of the Complaint are barred by sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution and that Plaintiff has failed to state a claim upon which relief may be granted.

7

**Add. 007**

**III.    Conclusion**

For the foregoing reasons, <u>Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction and for Failure to State a Claim</u> [Doc. No. 18] is GRANTED.

IT IS SO ORDERED

August 1, 2024                                    /s/Indira Talwani

United States District Judge

**Add. 008**

United States Code Annotated
  Title 15. Commerce and Trade
    Chapter 2A. Securities and Trust Indentures (Refs & Annos)
      Subchapter I. Domestic Securities (Refs & Annos)

15 U.S.C.A. § 77c

Alternatively cites as Securities Act § 3

§ 77c. Classes of securities under this subchapter

Effective: July 9, 2012

Currentness

**(a)Exempted securities**

Except as hereinafter expressly provided, the provisions of this subchapter shall not apply to any of the following classes of securities:

**(1)** Reserved.

**(2)** Any security issued or guaranteed by the United States or any territory thereof, or by the District of Columbia, or by any State of the United States, or by any political subdivision of a State or territory, or by any public instrumentality of one or more States or territories, or by any person controlled or supervised by and acting as an instrumentality of the Government of the United States pursuant to authority granted by the Congress of the United States; or any certificate of deposit for any of the foregoing; or any security issued or guaranteed by any bank; or any security issued by or representing an interest in or a direct obligation of a Federal Reserve bank; or any interest or participation in any common trust fund or similar fund that is excluded from the definition of the term "investment company" under section 3(c)(3) of the Investment Company Act of 1940; or any security which is an industrial development bond (as defined in section 103(c)(2) of Title 26) the interest on which is excludable from gross income under section 103(a)(1) of Title 26 if, by reason of the application of paragraph (4) or (6) of section 103(c) of Title 26 (determined as if paragraphs (4)(A), (5), and (7) were not included in such section 103(c)), paragraph (1) of such section 103(c) does not apply to such security; or any interest or participation in a single trust fund, or in a collective trust fund maintained by a bank, or any security arising out of a contract issued by an insurance company, which interest, participation, or security is issued in connection with (A) a stock bonus, pension, or profit-sharing plan which meets the requirements for qualification under section 401 of Title 26, (B) an annuity plan which meets the requirements for the deduction of the employer's contributions under section 404(a)(2) of Title 26, (C) a governmental plan as defined in section 414(d) of Title 26 which has been established by an employer for the exclusive benefit of its employees or their beneficiaries for the purpose of distributing to such employees or their beneficiaries the corpus and income of the funds accumulated under such plan, if under such plan it is impossible, prior to the satisfaction of all liabilities with respect to such employees and their beneficiaries, for any part of the corpus or income to be used for, or diverted to, purposes other than the exclusive benefit of such employees or their beneficiaries, or (D) a church plan, company, or account that is excluded from the definition of an investment company under section 3(c)(14) of the Investment Company Act of 1940, other than any plan described in subparagraph (A), (B), (C), or (D) of this paragraph (i) the contributions under which are held in a single trust fund or in a separate account maintained by an insurance company for a single employer and under which an amount in excess of the employer's contribution is allocated to the purchase of securities (other than interests or participations in the trust or separate account itself) issued by the employer or any company directly or indirectly controlling, controlled by, or under common control with the employer, (ii) which covers employees some or all of whom are employees within the meaning of section

401(c)(1) of Title 26 (other than a person participating in a church plan who is described in section 414(e)(3)(B) of Title 26), or (iii) which is a plan funded by an annuity contract described in section 403(b) of Title 26 (other than a retirement income account described in section 403(b)(9) of Title 26, to the extent that the interest or participation in such single trust fund or collective trust fund is issued to a church, a convention or association of churches, or an organization described in section 414(e)(3)(A) of Title 26 establishing or maintaining the retirement income account or to a trust established by any such entity in connection with the retirement income account). The Commission, by rules and regulations or order, shall exempt from the provisions of section 77e of this title any interest or participation issued in connection with a stock bonus, pension, profit-sharing, or annuity plan which covers employees some or all of whom are employees within the meaning of section 401(c)(1) of Title 26, if and to the extent that the Commission determines this to be necessary or appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended by the policy and provisions of this subchapter. For purposes of this paragraph, a security issued or guaranteed by a bank shall not include any interest or participation in any collective trust fund maintained by a bank; and the term "bank" means any national bank, or banking institution organized under the laws of any State, territory, or the District of Columbia, the business of which is substantially confined to banking and is supervised by the State or territorial banking commission or similar official; except that in the case of a common trust fund or similar fund, or a collective trust fund, the term "bank" has the same meaning as in the Investment Company Act of 1940;

(3) Any note, draft, bill of exchange, or banker's acceptance which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited;

(4) Any security issued by a person organized and operated exclusively for religious, educational, benevolent, fraternal, charitable, or reformatory purposes and not for pecuniary profit, and no part of the net earnings of which inures to the benefit of any person, private stockholder, or individual, or any security of a fund that is excluded from the definition of an investment company under section 3(c)(10)(B) of the Investment Company Act of 1940;

(5) Any security issued (A) by a savings and loan association, building and loan association, cooperative bank, homestead association, or similar institution, which is supervised and examined by State or Federal authority having supervision over any such institution; or (B) by (i) a farmer's cooperative organization exempt from tax under section 521 of Title 26, (ii) a corporation described in section 501(c)(16) of Title 26 and exempt from tax under section 501(a) of Title 26, or (iii) a corporation described in section 501(c)(2) of Title 26 which is exempt from tax under section 501(a) of Title 26 and is organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization or corporation described in clause (i) or (ii);

(6) Any interest in a railroad equipment trust. For purposes of this paragraph "interest in a railroad equipment trust" means any interest in an equipment trust, lease, conditional sales contract, or other similar arrangement entered into, issued, assumed, guaranteed by, or for the benefit of, a common carrier to finance the acquisition of rolling stock, including motive power;

(7) Certificates issued by a receiver or by a trustee or debtor in possession in a case under Title 11, with the approval of the court;

(8) Any insurance or endowment policy or annuity contract or optional annuity contract, issued by a corporation subject to the supervision of the insurance commissioner, bank commissioner, or any agency or officer performing like functions, of any State or Territory of the United States or the District of Columbia;

**Add. 010**

**(9)** Except with respect to a security exchanged in a case under Title 11, any security exchanged by the issuer with its existing security holders exclusively where no commission or other remuneration is paid or given directly or indirectly for soliciting such exchange;

**(10)** Except with respect to a security exchanged in a case under Title 11, any security which is issued in exchange for one or more bona fide outstanding securities, claims or property interests, or partly in such exchange and partly for cash, where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court, or by any official or agency of the United States, or by any State or Territorial banking or insurance commission or other governmental authority expressly authorized by law to grant such approval;

**(11)** Any security which is a part of an issue offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory.

**(12)** Any equity security issued in connection with the acquisition by a holding company of a bank under section 1842(a) of Title 12 or a savings association under section 1467a(e) of Title 12, if--

**(A)** the acquisition occurs solely as part of a reorganization in which security holders exchange their shares of a bank or savings association for shares of a newly formed holding company with no significant assets other than securities of the bank or savings association and the existing subsidiaries of the bank or savings association;

**(B)** the security holders receive, after that reorganization, substantially the same proportional share interests in the holding company as they held in the bank or savings association, except for nominal changes in shareholders' interests resulting from lawful elimination of fractional interests and the exercise of dissenting shareholders' rights under State or Federal law;

**(C)** the rights and interests of security holders in the holding company are substantially the same as those in the bank or savings association prior to the transaction, other than as may be required by law; and

**(D)** the holding company has substantially the same assets and liabilities, on a consolidated basis, as the bank or savings association had prior to the transaction.

For purposes of this paragraph, the term "savings association" means a savings association (as defined in section 1813(b) of Title 12) the deposits of which are insured by the Federal Deposit Insurance Corporation.

**(13)** Any security issued by or any interest or participation in any church plan, company or account that is excluded from the definition of an investment company under section 3(c)(14) of the Investment Company Act of 1940.

**(14)** Any security futures product that is--

**Add. 011**

**(A)** cleared by a clearing agency registered under section 78q-1 of this title or exempt from registration under subsection (b)(7) of such section 78q-1; and

**(B)** traded on a national securities exchange or a national securities association registered pursuant to section 78*o*-3(a) of this title.

**(b)Additional exemptions**

**(1)Small issues exemptive authority**

The Commission may from time to time by its rules and regulations, and subject to such terms and conditions as may be prescribed therein, add any class of securities to the securities exempted as provided in this section, if it finds that the enforcement of this subchapter with respect to such securities is not necessary in the public interest and for the protection of investors by reason of the small amount involved or the limited character of the public offering; but no issue of securities shall be exempted under this subsection where the aggregate amount at which such issue is offered to the public exceeds $5,000,000.

**(2)Additional issues**

The Commission shall by rule or regulation add a class of securities to the securities exempted pursuant to this section in accordance with the following terms and conditions:

**(A)** The aggregate offering amount of all securities offered and sold within the prior 12-month period in reliance on the exemption added in accordance with this paragraph shall not exceed $50,000,000.

**(B)** The securities may be offered and sold publicly.

**(C)** The securities shall not be restricted securities within the meaning of the Federal securities laws and the regulations promulgated thereunder.

**(D)** The civil liability provision in section 77*l* (a)(2) of this title shall apply to any person offering or selling such securities.

**(E)** The issuer may solicit interest in the offering prior to filing any offering statement, on such terms and conditions as the Commission may prescribe in the public interest or for the protection of investors.

**(F)** The Commission shall require the issuer to file audited financial statements with the Commission annually.

**(G)** Such other terms, conditions, or requirements as the Commission may determine necessary in the public interest and for the protection of investors, which may include--

Add. 012

**(i)** a requirement that the issuer prepare and electronically file with the Commission and distribute to prospective investors an offering statement, and any related documents, in such form and with such content as prescribed by the Commission, including audited financial statements, a description of the issuer's business operations, its financial condition, its corporate governance principles, its use of investor funds, and other appropriate matters; and

**(ii)** disqualification provisions under which the exemption shall not be available to the issuer or its predecessors, affiliates, officers, directors, underwriters, or other related persons, which shall be substantially similar to the disqualification provisions contained in the regulations adopted in accordance with section 926 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (15 U.S.C. 77d note).

**(3)Limitation**

Only the following types of securities may be exempted under a rule or regulation adopted pursuant to paragraph (2): equity securities, debt securities, and debt securities convertible or exchangeable to equity interests, including any guarantees of such securities.

**(4)Periodic disclosures**

Upon such terms and conditions as the Commission determines necessary in the public interest and for the protection of investors, the Commission by rule or regulation may require an issuer of a class of securities exempted under paragraph (2) to make available to investors and file with the Commission periodic disclosures regarding the issuer, its business operations, its financial condition, its corporate governance principles, its use of investor funds, and other appropriate matters, and also may provide for the suspension and termination of such a requirement with respect to that issuer.

**(5)Adjustment**

Not later than 2 years after April 5, 2012, and every 2 years thereafter, the Commission shall review the offering amount limitation described in paragraph (2)(A) and shall increase such amount as the Commission determines appropriate. If the Commission determines not to increase such amount, it shall report to the Committee on Financial Services of the House of Representatives and the Committee on Banking, Housing, and Urban Affairs of the Senate on its reasons for not increasing the amount.

**(c)Securities issued by small investment company**

The Commission may from time to time by its rules and regulations and subject to such terms and conditions as may be prescribed therein, add to the securities exempted as provided in this section any class of securities issued by a small business investment company under the Small Business Investment Act of 1958 if it finds, having regard to the purposes of that Act, that the enforcement of this subchapter with respect to such securities is not necessary in the public interest and for the protection of investors.

## CREDIT(S)

(May 27, 1933, c. 38, Title I, § 3, 48 Stat. 75; June 6, 1934, c. 404, Title II, § 202, 48 Stat. 906; Feb. 4, 1887, c. 104, Title II, § 214, as added Aug. 9, 1935, c. 498, 49 Stat. 557; amended June 29, 1938, c. 811, § 15, 52 Stat. 1240; May 15, 1945, c.

122, 59 Stat. 167; Aug. 10, 1954, c. 667, Title I, § 5, 68 Stat. 684; Pub.L. 85-699, Title III, § 307(a), Aug. 21, 1958, 72 Stat. 694; Pub.L. 91-373, Title IV, § 401(a), Aug. 10, 1970, 84 Stat. 718; Pub.L. 91-547, § 27(b), (c), Dec. 14, 1970, 84 Stat. 1434; Pub.L. 91-565, Dec. 19, 1970, 84 Stat. 1480; Pub.L. 91-567, § 6(a), Dec. 22, 1970, 84 Stat. 1498; Pub.L. 94-210, Title III, § 308(a)(1), (3), Feb. 5, 1976, 90 Stat. 56, 57; Pub.L. 95-283, § 18, May 21, 1978, 92 Stat. 275; Pub.L. 95-425, § 2, Oct. 6, 1978, 92 Stat. 962; Pub.L. 95-598, Title III, § 306, Nov. 6, 1978, 92 Stat. 2674; Pub.L. 96-477, Title III, § 301, Title VII, § 701, Oct. 21, 1980, 94 Stat. 2291, 2294; Pub.L. 97-261, § 19(d), Sept. 20, 1982, 96 Stat. 1121; Pub.L. 99-514, § 2, Oct. 22, 1986, 100 Stat. 2095; Pub.L. 100-181, Title II, §§ 203, 204, Dec. 4, 1987, 101 Stat. 1252; Pub.L. 103-325, Title III, § 320, Sept. 23, 1994, 108 Stat. 2225; Pub.L. 104-62, § 3, Dec. 8, 1995, 109 Stat. 684; Pub.L. 104-290, Title V, § 508(b), Oct. 11, 1996, 110 Stat. 3447; Pub.L. 106-102, Title II, § 221(a), Nov. 12, 1999, 113 Stat. 1401; Pub.L. 106-554, § 1(a)(5) [Title II, § 208(a)(2)], Dec. 21, 2000, 114 Stat. 2763, 2763A-435; Pub.L. 108-359, § 1(b), Oct. 25, 2004, 118 Stat. 1666; Pub.L. 111-203, Title IX, § 985(a)(1), July 21, 2010, 124 Stat. 1933; Pub.L. 112-106, Title IV, § 401(a), Apr. 5, 2012, 126 Stat. 323; Pub.L. 112-142, § 2, July 9, 2012, 126 Stat. 989.)


15 U.S.C.A. § 77c, 15 USCA § 77c

Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

---

End of Document                                           © 2024 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 15. Commerce and Trade
    Chapter 2A. Securities and Trust Indentures (Refs & Annos)
      Subchapter I. Domestic Securities (Refs & Annos)

15 U.S.C.A. § 77d
Alternatively cites as Securities Act § 4

§ 77d. Exempted transactions

Effective: December 4, 2015
Currentness

**(a) In general**

The provisions of section 77e of this title shall not apply to--

**(1)** transactions by any person other than an issuer, underwriter, or dealer.

**(2)** transactions by an issuer not involving any public offering.

**(3)** transactions by a dealer (including an underwriter no longer acting as an underwriter in respect of the security involved in such transaction), except--

**(A)** transactions taking place prior to the expiration of forty days after the first date upon which the security was bona fide offered to the public by the issuer or by or through an underwriter,

**(B)** transactions in a security as to which a registration statement has been filed taking place prior to the expiration of forty days after the effective date of such registration statement or prior to the expiration of forty days after the first date upon which the security was bona fide offered to the public by the issuer or by or through an underwriter after such effective date, whichever is later (excluding in the computation of such forty days any time during which a stop order issued under section 77h of this title is in effect as to the security), or such shorter period as the Commission may specify by rules and regulations or order, and

**(C)** transactions as to securities constituting the whole or a part of an unsold allotment to or subscription by such dealer as a participant in the distribution of such securities by the issuer or by or through an underwriter.

With respect to transactions referred to in clause (B), if securities of the issuer have not previously been sold pursuant to an earlier effective registration statement the applicable period, instead of forty days, shall be ninety days, or such shorter period as the Commission may specify by rules and regulations or order.

**(4)** brokers' transactions executed upon customers' orders on any exchange or in the over-the-counter market but not the solicitation of such orders.

**(5)** transactions involving offers or sales by an issuer solely to one or more accredited investors, if the aggregate offering price of an issue of securities offered in reliance on this paragraph does not exceed the amount allowed under section 77c(b)(1) of this title, if there is no advertising or public solicitation in connection with the transaction by the issuer or anyone acting on the issuer's behalf, and if the issuer files such notice with the Commission as the Commission shall prescribe.

**(6)** transactions involving the offer or sale of securities by an issuer (including all entities controlled by or under common control with the issuer), provided that--

**(A)** the aggregate amount sold to all investors by the issuer, including any amount sold in reliance on the exemption provided under this paragraph during the 12-month period preceding the date of such transaction, is not more than $1,000,000;

**(B)** the aggregate amount sold to any investor by an issuer, including any amount sold in reliance on the exemption provided under this paragraph during the 12-month period preceding the date of such transaction, does not exceed--

**(i)** the greater of $2,000 or 5 percent of the annual income or net worth of such investor, as applicable, if either the annual income or the net worth of the investor is less than $100,000; and

**(ii)** 10 percent of the annual income or net worth of such investor, as applicable, not to exceed a maximum aggregate amount sold of $100,000, if either the annual income or the net worth of the investor is equal to or more than $100,000;

**(C)** the transaction is conducted through a broker or funding portal that complies with the requirements of section 77d-1(a) of this title; and

**(D)** the issuer complies with the requirements of section 77d-1(b) of this title.

**(7)** transactions meeting the requirements of subsection (d).

**(b) Offers and sales exempt under 17 CFR 230.506**

Offers and sales exempt under section 230.506 of title 17, Code of Federal Regulations (as revised pursuant to section 201 of the Jumpstart Our Business Startups Act) shall not be deemed public offerings under the Federal securities laws as a result of general advertising or general solicitation.

**(c) Securities offered and sold in compliance with Rule 506 of Regulation D**

Add. 016

**(1)** With respect to securities offered and sold in compliance with Rule 506 of Regulation D under this subchapter, no person who meets the conditions set forth in paragraph (2) shall be subject to registration as a broker or dealer pursuant to section 78*o*(a)(1) of this title, [1] solely because--

    **(A)** that person maintains a platform or mechanism that permits the offer, sale, purchase, or negotiation of or with respect to securities, or permits general solicitations, general advertisements, or similar or related activities by issuers of such securities, whether online, in person, or through any other means;

    **(B)** that person or any person associated with that person co-invests in such securities; or

    **(C)** that person or any person associated with that person provides ancillary services with respect to such securities.

**(2)** The exemption provided in paragraph (1) shall apply to any person described in such paragraph if--

    **(A)** such person and each person associated with that person receives no compensation in connection with the purchase or sale of such security;

    **(B)** such person and each person associated with that person does not have possession of customer funds or securities in connection with the purchase or sale of such security; and

    **(C)** such person is not subject to a statutory disqualification as defined in section 78c(a)(39) of this title [1] and does not have any person associated with that person subject to such a statutory disqualification.

**(3)** For the purposes of this subsection, the term "ancillary services" means--

    **(A)** the provision of due diligence services, in connection with the offer, sale, purchase, or negotiation of such security, so long as such services do not include, for separate compensation, investment advice or recommendations to issuers or investors; and

    **(B)** the provision of standardized documents to the issuers and investors, so long as such person or entity does not negotiate the terms of the issuance for and on behalf of third parties and issuers are not required to use the standardized documents as a condition of using the service.

**(d) Certain accredited investor transactions**

The transactions referred to in subsection (a)(7) are transactions meeting the following requirements:

    **(1) Accredited investor requirement**

Add. 017

Each purchaser is an accredited investor, as that term is defined in section 230.501(a) of title 17, Code of Federal Regulations (or any successor regulation).

**(2) Prohibition on general solicitation or advertising**

Neither the seller, nor any person acting on the seller's behalf, offers or sells securities by any form of general solicitation or general advertising.

**(3) Information requirement**

In the case of a transaction involving the securities of an issuer that is neither subject to section 78m or 78*o*(d) of this title, nor exempt from reporting pursuant to section 240.12g3-2(b) of title 17, Code of Federal Regulations, nor a foreign government (as defined in section 230.405 of title 17, Code of Federal Regulations) eligible to register securities under Schedule B, the seller and a prospective purchaser designated by the seller obtain from the issuer, upon request of the seller, and the seller in all cases makes available to a prospective purchaser, the following information (which shall be reasonably current in relation to the date of resale under this section):

**(A)** The exact name of the issuer and the issuer's predecessor (if any).

**(B)** The address of the issuer's principal executive offices.

**(C)** The exact title and class of the security.

**(D)** The par or stated value of the security.

**(E)** The number of shares or total amount of the securities outstanding as of the end of the issuer's most recent fiscal year.

**(F)** The name and address of the transfer agent, corporate secretary, or other person responsible for transferring shares and stock certificates.

**(G)** A statement of the nature of the business of the issuer and the products and services it offers, which shall be presumed reasonably current if the statement is as of 12 months before the transaction date.

**(H)** The names of the officers and directors of the issuer.

**(I)** The names of any persons registered as a broker, dealer, or agent that shall be paid or given, directly or indirectly, any commission or remuneration for such person's participation in the offer or sale of the securities.

**(J)** The issuer's most recent balance sheet and profit and loss statement and similar financial statements, which shall--

Add. 018

**(i)** be for such part of the 2 preceding fiscal years as the issuer has been in operation;

**(ii)** be prepared in accordance with generally accepted accounting principles or, in the case of a foreign private issuer, be prepared in accordance with generally accepted accounting principles or the International Financial Reporting Standards issued by the International Accounting Standards Board;

**(iii)** be presumed reasonably current if--

**(I)** with respect to the balance sheet, the balance sheet is as of a date less than 16 months before the transaction date; and

**(II)** with respect to the profit and loss statement, such statement is for the 12 months preceding the date of the issuer's balance sheet; and

**(iv)** if the balance sheet is not as of a date less than 6 months before the transaction date, be accompanied by additional statements of profit and loss for the period from the date of such balance sheet to a date less than 6 months before the transaction date.

**(K)** To the extent that the seller is a control person with respect to the issuer, a brief statement regarding the nature of the affiliation, and a statement certified by such seller that they have no reasonable grounds to believe that the issuer is in violation of the securities laws or regulations.

**(4) Issuers disqualified**

The transaction is not for the sale of a security where the seller is an issuer or a subsidiary, either directly or indirectly, of the issuer.

**(5) Bad actor prohibition**

Neither the seller, nor any person that has been or will be paid (directly or indirectly) remuneration or a commission for their participation in the offer or sale of the securities, including solicitation of purchasers for the seller is subject to an event that would disqualify an issuer or other covered person under Rule 506(d)(1) of Regulation D (17 CFR 230.506(d)(1)) or is subject to a statutory disqualification described under section 78c(a)(39) of this title.

**(6) Business requirement**

The issuer is engaged in business, is not in the organizational stage or in bankruptcy or receivership, and is not a blank check, blind pool, or shell company that has no specific business plan or purpose or has indicated that the issuer's primary business plan is to engage in a merger or combination of the business with, or an acquisition of, an unidentified person.

**(7) Underwriter prohibition**

Add. 019

The transaction is not with respect to a security that constitutes the whole or part of an unsold allotment to, or a subscription or participation by, a broker or dealer as an underwriter of the security or a redistribution.

**(8) Outstanding class requirement**

The transaction is with respect to a security of a class that has been authorized and outstanding for at least 90 days prior to the date of the transaction.

**(e) Additional requirements**

**(1) In general**

With respect to an exempted transaction described under subsection (a)(7):

**(A)** Securities acquired in such transaction shall be deemed to have been acquired in a transaction not involving any public offering.

**(B)** Such transaction shall be deemed not to be a distribution for purposes of section 77b(a)(11) of this title.

**(C)** Securities involved in such transaction shall be deemed to be restricted securities within the meaning of Rule 144 (17 CFR 230.144).

**(2) Rule of construction**

The exemption provided by subsection (a)(7) shall not be the exclusive means for establishing an exemption from the registration requirements of section 77e of this title.

<b>CREDIT(S)</b>

(May 27, 1933, c. 38, Title I, § 4, 48 Stat. 77; June 6, 1934, c. 404, Title II, § 203, 48 Stat. 906; Aug. 10, 1954, c. 667, Title I, § 6, 68 Stat. 684; Pub.L. 88-467, § 12, Aug. 20, 1964, 78 Stat. 580; Pub.L. 94-29, § 30, June 4, 1975, 89 Stat. 169; Pub.L. 96-477, Title VI, § 602, Oct. 21, 1980, 94 Stat. 2294; Pub.L. 111-203, Title IX, § 944(a), July 21, 2010, 124 Stat. 1897; Pub.L. 112-106, Title II, § 201(b), (c), Title III, § 302(a), Title IV, § 401(c), Apr. 5, 2012, 126 Stat. 314, 315, 325; Pub.L. 114-94, Div. G, Title LXXVI, § 76001(a), Dec. 4, 2015, 129 Stat. 1787.)

---

<b>Footnotes</b>

1     See References in Text note set out under this section.

15 U.S.C.A. § 77d, 15 USCA § 77d

§ 77d. Exempted transactions, 15 USCA § 77d

Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Add. 021

United States Code Annotated
  Title 15. Commerce and Trade
    Chapter 2A. Securities and Trust Indentures (Refs & Annos)
      Subchapter I. Domestic Securities (Refs & Annos)

15 U.S.C.A. § 77d-1

Alternatively cites as Securities Act § 4A

§ 77d-1. Requirements with respect to certain small transactions

Effective: April 5, 2012

Currentness

**(a) Requirements on intermediaries**

A person acting as an intermediary in a transaction involving the offer or sale of securities for the account of others pursuant to section 77d(6) of this title shall--

   **(1)** register with the Commission as--

      **(A)** a broker; or

      **(B)** a funding portal (as defined in section 78c(a)(80) [1] of this title);

   **(2)** register with any applicable self-regulatory organization (as defined in section 78c(a)(26) of this title);

   **(3)** provide such disclosures, including disclosures related to risks and other investor education materials, as the Commission shall, by rule, determine appropriate;

   **(4)** ensure that each investor--

      **(A)** reviews investor-education information, in accordance with standards established by the Commission, by rule;

      **(B)** positively affirms that the investor understands that the investor is risking the loss of the entire investment, and that the investor could bear such a loss; and

      **(C)** answers questions demonstrating--

         **(i)** an understanding of the level of risk generally applicable to investments in startups, emerging businesses, and small issuers;

Add. 022

**(ii)** an understanding of the risk of illiquidity; and

**(iii)** an understanding of such other matters as the Commission determines appropriate, by rule;

**(5)** take such measures to reduce the risk of fraud with respect to such transactions, as established by the Commission, by rule, including obtaining a background and securities enforcement regulatory history check on each officer, director, and person holding more than 20 percent of the outstanding equity of every issuer whose securities are offered by such person;

**(6)** not later than 21 days prior to the first day on which securities are sold to any investor (or such other period as the Commission may establish), make available to the Commission and to potential investors any information provided by the issuer pursuant to subsection (b);

**(7)** ensure that all offering proceeds are only provided to the issuer when the aggregate capital raised from all investors is equal to or greater than a target offering amount, and allow all investors to cancel their commitments to invest, as the Commission shall, by rule, determine appropriate;

**(8)** make such efforts as the Commission determines appropriate, by rule, to ensure that no investor in a 12-month period has purchased securities offered pursuant to section 77d(6) of this title that, in the aggregate, from all issuers, exceed the investment limits set forth in section 77d(6)(B) of this title;

**(9)** take such steps to protect the privacy of information collected from investors as the Commission shall, by rule, determine appropriate;

**(10)** not compensate promoters, finders, or lead generators for providing the broker or funding portal with the personal identifying information of any potential investor;

**(11)** prohibit its directors, officers, or partners (or any person occupying a similar status or performing a similar function) from having any financial interest in an issuer using its services; and

**(12)** meet such other requirements as the Commission may, by rule, prescribe, for the protection of investors and in the public interest.

**(b) Requirements for issuers**

For purposes of section 77d(6) of this title, an issuer who offers or sells securities shall--

**(1)** file with the Commission and provide to investors and the relevant broker or funding portal, and make available to potential investors--

Add. 023

**(A)** the name, legal status, physical address, and website address of the issuer;

**(B)** the names of the directors and officers (and any persons occupying a similar status or performing a similar function), and each person holding more than 20 percent of the shares of the issuer;

**(C)** a description of the business of the issuer and the anticipated business plan of the issuer;

**(D)** a description of the financial condition of the issuer, including, for offerings that, together with all other offerings of the issuer under section 77d(6) of this title within the preceding 12-month period, have, in the aggregate, target offering amounts of--

**(i)** $100,000 or less--

**(I)** the income tax returns filed by the issuer for the most recently completed year (if any); and

**(II)** financial statements of the issuer, which shall be certified by the principal executive officer of the issuer to be true and complete in all material respects;

**(ii)** more than $100,000, but not more than $500,000, financial statements reviewed by a public accountant who is independent of the issuer, using professional standards and procedures for such review or standards and procedures established by the Commission, by rule, for such purpose; and

**(iii)** more than $500,000 (or such other amount as the Commission may establish, by rule), audited financial statements;

**(E)** a description of the stated purpose and intended use of the proceeds of the offering sought by the issuer with respect to the target offering amount;

**(F)** the target offering amount, the deadline to reach the target offering amount, and regular updates regarding the progress of the issuer in meeting the target offering amount;

**(G)** the price to the public of the securities or the method for determining the price, provided that, prior to sale, each investor shall be provided in writing the final price and all required disclosures, with a reasonable opportunity to rescind the commitment to purchase the securities;

**(H)** a description of the ownership and capital structure of the issuer, including--

**(i)** terms of the securities of the issuer being offered and each other class of security of the issuer, including how such terms may be modified, and a summary of the differences between such securities, including how the rights of the

securities being offered may be materially limited, diluted, or qualified by the rights of any other class of security of the issuer;

**(ii)** a description of how the exercise of the rights held by the principal shareholders of the issuer could negatively impact the purchasers of the securities being offered;

**(iii)** the name and ownership level of each existing shareholder who owns more than 20 percent of any class of the securities of the issuer;

**(iv)** how the securities being offered are being valued, and examples of methods for how such securities may be valued by the issuer in the future, including during subsequent corporate actions; and

**(v)** the risks to purchasers of the securities relating to minority ownership in the issuer, the risks associated with corporate actions, including additional issuances of shares, a sale of the issuer or of assets of the issuer, or transactions with related parties; and

**(I)** such other information as the Commission may, by rule, prescribe, for the protection of investors and in the public interest;

**(2)** not advertise the terms of the offering, except for notices which direct investors to the funding portal or broker;

**(3)** not compensate or commit to compensate, directly or indirectly, any person to promote its offerings through communication channels provided by a broker or funding portal, without taking such steps as the Commission shall, by rule, require to ensure that such person clearly discloses the receipt, past or prospective, of such compensation, upon each instance of such promotional communication;

**(4)** not less than annually, file with the Commission and provide to investors reports of the results of operations and financial statements of the issuer, as the Commission shall, by rule, determine appropriate, subject to such exceptions and termination dates as the Commission may establish, by rule; and

**(5)** comply with such other requirements as the Commission may, by rule, prescribe, for the protection of investors and in the public interest.

**(c) Liability for material misstatements and omissions**

**(1) Actions authorized**

**(A) In general**

Subject to paragraph (2), a person who purchases a security in a transaction exempted by the provisions of section 77d(6) of this title may bring an action against an issuer described in paragraph (2), either at law or in equity in any court of

competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if such person no longer owns the security.

**(B) Liability**

An action brought under this paragraph shall be subject to the provisions of section 77*l* (b) of this title and section 77m of this title, as if the liability were created under section 77*l* (a)(2) of this title.

**(2) Applicability**

An issuer shall be liable in an action under paragraph (1), if the issuer--

**(A)** by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by any means of any written or oral communication, in the offering or sale of a security in a transaction exempted by the provisions of section 77d(6) of this title, makes an untrue statement of a material fact or omits to state a material fact required to be stated or necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading, provided that the purchaser did not know of such untruth or omission; and

**(B)** does not sustain the burden of proof that such issuer did not know, and in the exercise of reasonable care could not have known, of such untruth or omission.

**(3) Definition**

As used in this subsection, the term "issuer" includes any person who is a director or partner of the issuer, and the principal executive officer or officers, principal financial officer, and controller or principal accounting officer of the issuer (and any person occupying a similar status or performing a similar function) that offers or sells a security in a transaction exempted by the provisions of section 77d(6) of this title, and any person who offers or sells the security in such offering.

**(d) Information available to States**

The Commission shall make, or shall cause to be made by the relevant broker or funding portal, the information described in subsection (b) and such other information as the Commission, by rule, determines appropriate, available to the securities commission (or any agency or office performing like functions) of each State and territory of the United States and the District of Columbia.

**(e) Restrictions on sales**

Securities issued pursuant to a transaction described in section 77d(6) of this title--

**(1)** may not be transferred by the purchaser of such securities during the 1-year period beginning on the date of purchase, unless such securities are transferred--

**(A)** to the issuer of the securities;

Add. 026

**(B)** to an accredited investor;

**(C)** as part of an offering registered with the Commission; or

**(D)** to a member of the family of the purchaser or the equivalent, or in connection with the death or divorce of the purchaser or other similar circumstance, in the discretion of the Commission; and

**(2)** shall be subject to such other limitations as the Commission shall, by rule, establish.

**(f) Applicability**

Section 77d(6) of this title shall not apply to transactions involving the offer or sale of securities by any issuer that--

**(1)** is not organized under and subject to the laws of a State or territory of the United States or the District of Columbia;

**(2)** is subject to the requirement to file reports pursuant to section 78m of this title or section 78o(d) of this title;

**(3)** is an investment company, as defined in section 80a-3 of this title, or is excluded from the definition of investment company by section 80a-3(b) of this title or section 80a-3(c) of this title; or

**(4)** the Commission, by rule or regulation, determines appropriate.

**(g) Rule of construction**

Nothing in this section or section 77d(6) of this title shall be construed as preventing an issuer from raising capital through methods not described under section 77d(6) of this title.

**(h) Certain calculations**

**(1) Dollar amounts**

Dollar amounts in section 77d(6) of this title and subsection (b) of this section shall be adjusted by the Commission not less frequently than once every 5 years, by notice published in the Federal Register to reflect any change in the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics.

**(2) Income and net worth**

**Add. 027**

The income and net worth of a natural person under section 77d(6)(B) of this title shall be calculated in accordance with any rules of the Commission under this subchapter regarding the calculation of the income and net worth, respectively, of an accredited investor.

## CREDIT(S)

(May 27, 1933, c. 38, Title I, § 4A, as added Pub.L. 112-106, Title III, § 302(b), Apr. 5, 2012, 126 Stat. 316.)

## Footnotes

1       So in original. Two pars. (a)(80) of section 78c have been enacted.

15 U.S.C.A. § 77d-1, 15 USCA § 77d-1
Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

This content is from the eCFR and is authoritative but unofficial.

# Title 17 —Commodity and Securities Exchanges
# Chapter II —Securities and Exchange Commission

**Part 227**  Regulation Crowdfunding, General Rules and Regulations

**Subpart A**  General

§ 227.100  Crowdfunding exemption and requirements.

**Subpart B**  Requirements for Issuers

§ 227.201  Disclosure requirements.

§ 227.202  Ongoing reporting requirements.

§ 227.203  Filing requirements and form.

§ 227.204  Advertising.

§ 227.205  Promoter compensation.

§ 227.206  Solicitations of interest and other communications.

**Subpart C**  Requirements for Intermediaries

§ 227.300  Intermediaries.

§ 227.301  Measures to reduce risk of fraud.

§ 227.302  Account opening.

§ 227.303  Requirements with respect to transactions.

§ 227.304  Completion of offerings, cancellations and reconfirmations.

§ 227.305  Payments to third parties.

**Subpart D**  Funding Portal Regulation

§ 227.400  Registration of funding portals.

§ 227.401  Exemption.

§ 227.402  Conditional safe harbor.

§ 227.403  Compliance.

§ 227.404  Records to be made and kept by funding portals.

**Subpart E**  Miscellaneous Provisions

§ 227.501  Restrictions on resales.

§ 227.502  Insignificant deviations from a term, condition or requirement of this part (Regulation Crowdfunding).

§ 227.503  Disqualification provisions.

§ 227.504  Definition of "qualified purchaser".

# PART 227—REGULATION CROWDFUNDING, GENERAL RULES AND REGULATIONS

**Authority:** 15 U.S.C. 77d, 77d-1, 77s, 77z-3, 78c, 78o, 78q, 78w, 78mm, and Pub. L. 112-106, secs. 301-305, 126 Stat. 306 (2012).

**Source:** 80 FR 71537, Nov. 16, 2015, unless otherwise noted.

## Subpart A—General

### § 227.100 Crowdfunding exemption and requirements.

(a) *Exemption.* An issuer may offer or sell securities in reliance on section 4(a)(6) of the Securities Act of 1933 (the "Securities Act") (15 U.S.C. 77d(a)(6)), provided that:

(1) The aggregate amount of securities sold to all investors by the issuer in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) during the 12-month period preceding the date of such offer or sale, including the securities offered in such transaction, shall not exceed $5,000,000;

(2) Where the purchaser is not an accredited investor (as defined in Rule 501 (§ 230.501 of this chapter)), the aggregate amount of securities sold to such an investor across all issuers in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) during the 12-month period preceding the date of such transaction, including the securities sold to such investor in such transaction, shall not exceed:

(i) The greater of $2,500, or 5 percent of the greater of the investor's annual income or net worth, if either the investor's annual income or net worth is less than $124,000; or

(ii) Ten percent of the greater of the investor's annual income or net worth, not to exceed an amount sold of $124,000, if both the investor's annual income and net worth are equal to or more than $124,000;

*Instruction 1 to paragraph (a)(2).* To determine the investment limit for a natural person, the person's annual income and net worth shall be calculated as those values are calculated for purposes of determining accredited investor status in accordance with § 230.501 of this chapter.

*Instruction 2 to paragraph (a)(2).* A person's annual income and net worth may be calculated jointly with that person's spouse; however, when such a joint calculation is used, the aggregate investment of the investor spouses may not exceed the limit that would apply to an individual investor at that income or net worth level.

*Instruction 3 to paragraph (a)(2).* An issuer offering and selling securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) may rely on the efforts of an intermediary required by § 227.303(b) to ensure that the aggregate amount of securities purchased by an investor in offerings pursuant to section 4(a)(6) of the Securities Act will not cause the investor to exceed the limit set forth in section 4(a)(6) of the Securities Act and § 227.100(a)(2), *provided that* the issuer does not know that the investor has exceeded the investor limits or would exceed the investor limits as a result of purchasing securities in the issuer's offering.

(3) The transaction is conducted through an intermediary that complies with the requirements in section 4A(a) of the Securities Act (15 U.S.C. 77d-1(a)) and the related requirements in this part, and the transaction is conducted exclusively through the intermediary's platform; and

*Instruction to paragraph (a)(3).* An issuer shall not conduct an offering or concurrent offerings in reliance on section 4(a)(6) of the Securities Act of 1933 (15 U.S.C. 77d(a)(6)) using more than one intermediary.

(4) The issuer complies with the requirements in section 4A(b) of the Securities Act (15 U.S.C. 77d-1(b)) and the related requirements in this part; *provided, however,* that the failure to comply with §§ 227.202, 227.203(a)(3) and 227.203(b) shall not prevent an issuer from relying on the exemption provided by section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)).

(b) *Applicability.* The crowdfunding exemption shall not apply to transactions involving the offer or sale of securities by any issuer that:

(1) Is not organized under, and subject to, the laws of a State or territory of the United States or the District of Columbia;

(2) Is subject to the requirement to file reports pursuant to section 13 or section 15(d) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. 78m or 78o(d));

(3) Is an investment company, as defined in section 3 of the Investment Company Act of 1940 (15 U.S.C. 80a-3), or is excluded from the definition of investment company by section 3(b) or section 3(c) of that Act (15 U.S.C. 80a-3(b) or 80a-3(c));

(4) Is not eligible to offer or sell securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) as a result of a disqualification as specified in § 227.503(a);

(5) Has sold securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) and has not filed with the Commission and provided to investors, to the extent required, the ongoing annual reports required by this part during the two years immediately preceding the filing of the required offering statement; or

*Instruction to paragraph (b)(5).* An issuer delinquent in its ongoing reports can again rely on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) once it has filed with the Commission and provided to investors both of the annual reports required during the two years immediately preceding the filing of the required offering statement.

(6) Has no specific business plan or has indicated that its business plan is to engage in a merger or acquisition with an unidentified company or companies.

(7) [Reserved]

(c) *Issuer.* For purposes of § 227.201(r), calculating aggregate amounts offered and sold in § 227.100(a) and § 227.201(t), and determining whether an issuer has previously sold securities in § 227.201(t)(3), *issuer* includes all entities controlled by or under common control with the issuer and any predecessors of the issuer.

*Instruction to paragraph (c).* The term *control* means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of the entity, whether through the ownership of voting securities, by contract or otherwise.

(d) *Investor.* For purposes of this part, investor means any investor or any potential investor, as the context requires. A crowdfunding vehicle (as defined in § 270.3a-9 of this chapter) is not considered an investor for the purposes of this part.

(e) *Integration with other offerings.* To determine whether offers and sales should be integrated, see § 230.152 of this chapter.

*[80 FR 71537, Nov. 16, 2015, as amended at 82 FR 17552, Apr. 12, 2017; 85 FR 27131, May 7, 2020; 85 FR 54490, Sept. 2, 2020; 86 FR 3590, Jan. 14, 2021; 87 FR 57398, Sept. 20, 2022]*

## Subpart B—Requirements for Issuers

## § 227.201 Disclosure requirements.

An issuer offering or selling securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) and in accordance with section 4A of the Securities Act (15 U.S.C. 77d-1) and this part, and any co-issuer jointly offering or selling securities with such an issuer in reliance on the same, must file with the Commission and provide to investors and the relevant intermediary the following information:

(a) The name, legal status (including its form of organization, jurisdiction in which it is organized and date of organization), physical address and Web site of the issuer;

(b) The names of the directors and officers (and any persons occupying a similar status or performing a similar function) of the issuer, all positions and offices with the issuer held by such persons, the period of time in which such persons served in the position or office and their business experience during the past three years, including:

    (1) Each person's principal occupation and employment, including whether any officer is employed by another employer; and

    (2) The name and principal business of any corporation or other organization in which such occupation and employment took place.

    *Instruction to paragraph (b).* For purposes of this paragraph (b), the term *officer* means a president, vice president, secretary, treasurer or principal financial officer, comptroller or principal accounting officer, and any person routinely performing similar functions.

(c) The name of each person, as of the most recent practicable date but no earlier than 120 days prior to the date the offering statement or report is filed, who is a beneficial owner of 20 percent or more of the issuer's outstanding voting equity securities, calculated on the basis of voting power;

(d) A description of the business of the issuer and the anticipated business plan of the issuer;

(e) The current number of employees of the issuer;

(f) A discussion of the material factors that make an investment in the issuer speculative or risky;

(g) The target offering amount and the deadline to reach the target offering amount, including a statement that if the sum of the investment commitments does not equal or exceed the target offering amount at the offering deadline, no securities will be sold in the offering, investment commitments will be cancelled and committed funds will be returned;

(h) Whether the issuer will accept investments in excess of the target offering amount and, if so, the maximum amount that the issuer will accept and how oversubscriptions will be allocated, such as on a pro-rata, first come-first served, or other basis;

(i) A description of the purpose and intended use of the offering proceeds;

*Instruction to paragraph (i).* An issuer must provide a reasonably detailed description of any intended use of proceeds, such that investors are provided with enough information to understand how the offering proceeds will be used. If an issuer has identified a range of possible uses, the issuer should identify and describe each probable use and the factors the issuer may consider in allocating proceeds among the potential uses. If the issuer will accept proceeds in excess of the target offering amount, the issuer must describe the purpose, method for allocating oversubscriptions, and intended use of the excess proceeds with similar specificity.

(j) A description of the process to complete the transaction or cancel an investment commitment, including a statement that:

(1) Investors may cancel an investment commitment until 48 hours prior to the deadline identified in the issuer's offering materials;

(2) The intermediary will notify investors when the target offering amount has been met;

(3) If an issuer reaches the target offering amount prior to the deadline identified in its offering materials, it may close the offering early if it provides notice about the new offering deadline at least five business days prior to such new offering deadline (absent a material change that would require an extension of the offering and reconfirmation of the investment commitment); and

(4) If an investor does not cancel an investment commitment before the 48-hour period prior to the offering deadline, the funds will be released to the issuer upon closing of the offering and the investor will receive securities in exchange for his or her investment;

(k) A statement that if an investor does not reconfirm his or her investment commitment after a material change is made to the offering, the investor's investment commitment will be cancelled and the committed funds will be returned;

(l) The price to the public of the securities or the method for determining the price, provided that, prior to any sale of securities, each investor shall be provided in writing the final price and all required disclosures;

(m) A description of the ownership and capital structure of the issuer, including:

(1) The terms of the securities being offered and each other class of security of the issuer, including the number of securities being offered and/or outstanding, whether or not such securities have voting rights, any limitations on such voting rights, how the terms of the securities being offered may be modified and a summary of the differences between such securities and each other class of security of the issuer, and how the rights of the securities being offered may be materially limited, diluted or qualified by the rights of any other class of security of the issuer;

(2) A description of how the exercise of rights held by the principal shareholders of the issuer could affect the purchasers of the securities being offered;

(3) The name and ownership level of each person, as of the most recent practicable date but no earlier than 120 days prior to the date the offering statement or report is filed, who is the beneficial owner of 20 percent or more of the issuer's outstanding voting equity securities, calculated on the basis of voting power;

Add. 033

    (4)    How the securities being offered are being valued, and examples of methods for how such securities may be valued by the issuer in the future, including during subsequent corporate actions;

    (5)    The risks to purchasers of the securities relating to minority ownership in the issuer and the risks associated with corporate actions including additional issuances of securities, issuer repurchases of securities, a sale of the issuer or of assets of the issuer or transactions with related parties; and

    (6)    A description of the restrictions on transfer of the securities, as set forth in § 227.501;

(n)    The name, SEC file number and Central Registration Depository (CRD) number (as applicable) of the intermediary through which the offering is being conducted;

(o)    A description of the intermediary's financial interests in the issuer's transaction and in the issuer, including:

    (1)    The amount of compensation to be paid to the intermediary, whether as a dollar amount or a percentage of the offering amount, or a good faith estimate if the exact amount is not available at the time of the filing, for conducting the offering, including the amount of referral and any other fees associated with the offering, and

    (2)    Any other direct or indirect interest in the issuer held by the intermediary, or any arrangement for the intermediary to acquire such an interest;

(p)    A description of the material terms of any indebtedness of the issuer, including the amount, interest rate, maturity date and any other material terms;

(q)    A description of exempt offerings conducted within the past three years;

*Instruction to paragraph (q).* In providing a description of any prior exempt offerings, disclose:

    (1)    The date of the offering;

    (2)    The offering exemption relied upon;

    (3)    The type of securities offered; and

    (4)    The amount of securities sold and the use of proceeds;

(r)    A description of any transaction since the beginning of the issuer's last fiscal year, or any currently proposed transaction, to which the issuer was or is to be a party and the amount involved exceeds five percent of the aggregate amount of capital raised by the issuer in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) during the preceding 12-month period, inclusive of the amount the issuer seeks to raise in the current offering under section 4(a)(6) of the Securities Act, in which any of the following persons had or is to have a direct or indirect material interest:

    (1)    Any director or officer of the issuer;

    (2)    Any person who is, as of the most recent practicable date but no earlier than 120 days prior to the date the offering statement or report is filed, the beneficial owner of 20 percent or more of the issuer's outstanding voting equity securities, calculated on the basis of voting power;

    (3)    If the issuer was incorporated or organized within the past three years, any promoter of the issuer; or

(4) Any member of the family of any of the foregoing persons, which includes a child, stepchild, grandchild, parent, stepparent, grandparent, spouse or spousal equivalent, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, and shall include adoptive relationships. The term *spousal equivalent* means a cohabitant occupying a relationship generally equivalent to that of a spouse.

*Instruction 1 to paragraph (r).* For each transaction identified, disclose the name of the specified person and state his or her relationship to the issuer, and the nature and, where practicable, the approximate amount of his or her interest in the transaction. The amount of such interest shall be computed without regard to the amount of the profit or loss involved in the transaction. Where it is not practicable to state the approximate amount of the interest, the approximate amount involved in the transaction shall be disclosed.

*Instruction 2 to paragraph (r).* For purposes of paragraph (r), a transaction includes, but is not limited to, any financial transaction, arrangement or relationship (including any indebtedness or guarantee of indebtedness) or any series of similar transactions, arrangements or relationships.

(s) A discussion of the issuer's financial condition, including, to the extent material, liquidity, capital resources and historical results of operations;

*Instruction 1 to paragraph (s).* The discussion must cover each period for which financial statements of the issuer are provided. An issuer also must include a discussion of any material changes or trends known to management in the financial condition and results of operations of the issuer subsequent to the period for which financial statements are provided.

*Instruction 2 to paragraph (s).* For issuers with no prior operating history, the discussion should focus on financial milestones and operational, liquidity and other challenges. For issuers with an operating history, the discussion should focus on whether historical results and cash flows are representative of what investors should expect in the future. Issuers should take into account the proceeds of the offering and any other known or pending sources of capital. Issuers also should discuss how the proceeds from the offering will affect the issuer's liquidity, whether receiving these funds and any other additional funds is necessary to the viability of the business, and how quickly the issuer anticipates using its available cash. In addition, issuers should describe the other available sources of capital to the business, such as lines of credit or required contributions by shareholders.

*Instruction 3 to paragraph (s).* References to the issuer in this paragraph and its instructions refer to the issuer and its predecessors, if any.

(t) For offerings that, together with all other amounts sold under section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) within the preceding 12-month period, have, in the aggregate, the following target offering amounts:

(1) $124,000 or less, the amount of total income, taxable income and total tax, or the equivalent line items, as reported on the federal income tax returns filed by the issuer for the most recently completed year (if any), which shall be certified by the principal executive officer of the issuer to reflect accurately the information reported on the issuer's federal income tax returns, and financial statements of the issuer, which shall be certified by the principal executive officer of the issuer to be true and complete in all material respects. If financial statements of the issuer are available that have either been reviewed or audited by a public accountant that is independent of the issuer, the issuer must provide those financial statements instead and need not include the information reported on the federal income tax returns or the certifications of the principal executive officer;

Add. 035

(2) More than $124,000, but not more than $618,000, financial statements of the issuer reviewed by a public accountant that is independent of the issuer. If financial statements of the issuer are available that have been audited by a public accountant that is independent of the issuer, the issuer must provide those financial statements instead and need not include the reviewed financial statements; and

(3) More than $618,000, financial statements of the issuer audited by a public accountant that is independent of the issuer; *provided, however,* that for issuers that have not previously sold securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)), offerings that have a target offering amount of more than $618,000, but not more than $1,235,000, financial statements of the issuer reviewed by a public accountant that is independent of the issuer. If financial statements of the issuer are available that have been audited by a public accountant that is independent of the issuer, the issuer must provide those financial statements instead and need not include the reviewed financial statements.

*Instruction 1 to paragraph (t).* To determine the financial statements required under this paragraph (t), an issuer must aggregate amounts sold in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) within the preceding 12-month period and the offering amount in the offering for which disclosure is being provided. If the issuer will accept proceeds in excess of the target offering amount, the issuer must include the maximum offering amount that the issuer will accept in the calculation to determine the financial statements required under this paragraph (t).

*Instruction 2 to paragraph (t).* An issuer may voluntarily meet the requirements of this paragraph (t) for a higher aggregate target offering amount.

*Instruction 3 to paragraph (t).* The financial statements must be prepared in accordance with U.S. generally accepted accounting principles and include balance sheets, statements of comprehensive income, statements of cash flows, statements of changes in stockholders' equity and notes to the financial statements. If the financial statements are not audited, they must be labeled as "unaudited." The financial statements must cover the two most recently completed fiscal years or the period(s) since inception, if shorter.

*Instruction 4 to paragraph (t).* For an offering conducted in the first 120 days of a fiscal year, the financial statements provided may be for the two fiscal years prior to the issuer's most recently completed fiscal year; however, financial statements for the two most recently completed fiscal years must be provided if they are otherwise available. If more than 120 days have passed since the end of the issuer's most recently completed fiscal year, the financial statements provided must be for the issuer's two most recently completed fiscal years. If the 120th day falls on a Saturday, Sunday, or holiday, the next business day shall be considered the 120th day for purposes of determining the age of the financial statements.

*Instruction 5 to paragraph (t).* An issuer may elect to delay complying with any new or revised financial accounting standard that applies to companies that are not issuers (as defined under section 2(a) of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201(a)) until the date that such companies are required to comply with such new or revised accounting standard. Issuers electing this accommodation must disclose it at the time the issuer files its offering statement and apply the election to all standards. Issuers electing not to use this accommodation must forgo this accommodation for all financial accounting standards and may not elect to rely on this accommodation in any future filings.

*Instruction 6 to paragraph (t).* An issuer required to provide information from a tax return under paragraph (t)(1) of this section before filing a tax return with the U.S. Internal Revenue Service for the most recently completed fiscal year may provide information from its tax return for the prior year (if any), provided that the issuer provides information from the tax return for the most recently completed fiscal year when it is filed with the U.S. Internal Revenue Service (if the tax return is filed during the offering period). An issuer that requested an extension from the U.S. Internal Revenue Service would not be required to provide information from the tax return until the date the return is filed, if filed during the offering period. If an issuer has not yet filed a tax return and is not required to file a tax return before the end of the offering period, then the tax return information does not need to be provided.

*Instruction 7 to paragraph (t).* An issuer providing financial statements that are not audited or reviewed and tax information as specified under paragraph (t)(1) of this section must have its principal executive officer provide the following certification:

I, [identify the certifying individual], certify that:

(1)  the financial statements of [identify the issuer] included in this Form are true and complete in all material respects; and

(2)  the tax return information of [identify the issuer] included in this Form reflects accurately the information reported on the tax return for [identify the issuer] filed for the fiscal year ended [date of most recent tax return].

[Signature and title].

*Instruction 8 to paragraph (t).* Financial statement reviews shall be conducted in accordance with the Statements on Standards for Accounting and Review Services issued by the Accounting and Review Services Committee of the American Institute of Certified Public Accountants. A signed review report must accompany the reviewed financial statements, and an issuer must notify the public accountant of the issuer's intended use of the review report in the offering. An issuer will not be in compliance with the requirement to provide reviewed financial statements if the review report includes modifications.

*Instruction 9 to paragraph (t).* Financial statement audits shall be conducted in accordance with either auditing standards issued by the American Institute of Certified Public Accountants (referred to as U.S. Generally Accepted Auditing Standards) or the standards of the Public Company Accounting Oversight Board. A signed audit report must accompany audited financial statements, and an issuer must notify the public accountant of the issuer's intended use of the audit report in the offering. An issuer will not be in compliance with the requirement to provide audited financial statements if the audit report includes a qualified opinion, an adverse opinion, or a disclaimer of opinion.

*Instruction 10 to paragraph (t).* To qualify as a public accountant that is independent of the issuer for purposes of this part, the accountant must satisfy the independence standards of either:

(i)  17 CFR 210.2-01 of this chapter, or

(ii)  The American Institute of Certified Public Accountants. The public accountant that audits or reviews the financial statements provided by an issuer must be:

**Add. 037**

(A) Duly registered and in good standing as a certified public accountant under the laws of the place of his or her residence or principal office; or

(B) In good standing and entitled to practice as a public accountant under the laws of his or her place of residence or principal office.

*Instruction 11 to paragraph (t).* Except as set forth in § 227.100(c), references to the issuer in this paragraph (t) and its instructions (2) through (10) refer to the issuer and its predecessors, if any.

(u) Any matters that would have triggered disqualification under § 227.503(a) but occurred before May 16, 2016. The failure to provide such disclosure shall not prevent an issuer from continuing to rely on the exemption provided by section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) if the issuer establishes that it did not know and, in the exercise of reasonable care, could not have known of the existence of the undisclosed matter or matters;

*Instruction to paragraph (u).* An issuer will not be able to establish that it could not have known of a disqualification unless it has made factual inquiry into whether any disqualifications exist. The nature and scope of the factual inquiry will vary based on the facts and circumstances concerning, among other things, the issuer and the other offering participants.

(v) Updates regarding the progress of the issuer in meeting the target offering amount, to be provided in accordance with § 227.203;

(w) Where on the issuer's Web site investors will be able to find the issuer's annual report, and the date by which such report will be available on the issuer's Web site;

(x) Whether the issuer or any of its predecessors previously failed to comply with the ongoing reporting requirements of § 227.202;

(y) Any material information necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(z) Any written communication or broadcast script provided in accordance with § 227.206 or, if within 30 days of the initial filing of the offering statement, § 230.241 of this chapter.

(aa) [Reserved]

*Instruction to § 227.201.* If disclosure provided pursuant to any paragraph of this section also satisfies the requirements of one or more other paragraphs of this section, it is not necessary to repeat the disclosure. Instead of repeating information, an issuer may include a cross-reference to disclosure contained elsewhere in the offering statement or report, including to information in the financial statements.

*[80 FR 71537, Nov. 16, 2015, as amended at 82 FR 17552, Apr. 12, 2017; 85 FR 27131, May 7, 2020; 85 FR 54490, Sept. 2, 2020; 86 FR 3590, 3591, Jan. 14, 2021; 87 FR 57398, Sept. 20, 2022]*

## § 227.202 Ongoing reporting requirements.

(a) An issuer that has offered and sold securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) and in accordance with section 4A of the Securities Act (15 U.S.C. 77d-1) and this part must file with the Commission and post on the issuer's Web site an annual report along with the financial

Add. 038

statements of the issuer certified by the principal executive officer of the issuer to be true and complete in all material respects and a description of the financial condition of the issuer as described in § 227.201(s). If, however, an issuer has available financial statements that have either been reviewed or audited by a public accountant that is independent of the issuer, those financial statements must be provided and the certification by the principal executive officer will not be required. The annual report also must include the disclosure required by paragraphs (a), (b), (c), (d), (e), (f), (m), (p), (q), (r), and (x) of § 227.201. The report must be filed in accordance with the requirements of § 227.203 and Form C (§ 239.900 of this chapter) and no later than 120 days after the end of the fiscal year covered by the report.

*Instruction 1 to paragraph (a).* Instructions (3), (8), (9), (10), and (11) to paragraph (t) of § 227.201 shall apply for purposes of this section.

*Instruction 2 to paragraph (a).* An issuer providing financial statements that are not audited or reviewed must have its principal executive officer provide the following certification:

I, [identify the certifying individual], certify that the financial statements of [identify the issuer] included in this Form are true and complete in all material respects.

[Signature and title].

(b) An issuer must continue to comply with the ongoing reporting requirements until one of the following occurs:

    (1) The issuer is required to file reports under section 13(a) or section 15(d) of the Exchange Act (15 U.S.C. 78m(a) or 78o(d));

    (2) The issuer has filed, since its most recent sale of securities pursuant to this part, at least one annual report pursuant to this section and has fewer than 300 holders of record;

    (3) The issuer has filed, since its most recent sale of securities pursuant to this part, the annual reports required pursuant to this section for at least the three most recent years and has total assets that do not exceed $10,000,000;

    (4) The issuer or another party repurchases all of the securities issued in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)), including any payment in full of debt securities or any complete redemption of redeemable securities; or

    (5) The issuer liquidates or dissolves its business in accordance with state law.

*[80 FR 71537, Nov. 16, 2015, as amended at 82 FR 45725, Oct. 2, 2017; 83 FR 47836, Sept. 21, 2018; 83 FR 52964, Oct. 19, 2018; 85 FR 17751, Mar. 31, 2020]*

## § 227.203 Filing requirements and form.

(a) *Form C—Offering statement and amendments* (§ 239.900 of this chapter).

    (1) *Offering statement.* Except as allowed by § 227.206, an issuer offering or selling securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) and in accordance with section 4A of the Securities Act (15 U.S.C. 77d-1) and this part, and any co-issuer jointly offering or selling securities with such an issuer in reliance on the same, must file with the Commission and provide to investors and the relevant intermediary a Form C: Offering Statement (Form C) (§ 239.900 of this chapter) prior to the commencement of the offering of securities. An issuer that is both offering or

selling securities with a co-issuer and separately offering or selling securities on its own must file with the Commission and provide to investors and the relevant intermediary a separate Form C for such offering. Every Form C must include the information required by § 227.201.

(2) *Amendments to offering statement.* An issuer must file with the Commission and provide to investors and the relevant intermediary an amendment to the offering statement filed on Form C (§ 239.900 of this chapter) to disclose any material changes, additions or updates to information that it provides to investors through the intermediary's platform, for any offering that has not yet been completed or terminated. The amendment must be filed on Form C: Amendment (Form C/A) (§ 239.900 of this chapter), and if the amendment reflects material changes, additions or updates, the issuer shall check the box indicating that investors must reconfirm an investment commitment within five business days or the investor's commitment will be considered cancelled.

(3) *Progress updates.*

(i) An issuer must file with the Commission and provide to investors and the relevant intermediary a Form C: Progress Update (Form C-U) (§ 239.900 of this chapter) to disclose its progress in meeting the target offering amount no later than five business days after each of the dates when the issuer reaches 50 percent and 100 percent of the target offering amount.

(ii) If the issuer will accept proceeds in excess of the target offering amount, the issuer must file with the Commission and provide to investors and the relevant intermediary, no later than five business days after the offering deadline, a final Form C-U (§ 239.900 of this chapter) to disclose the total amount of securities sold in the offering.

(iii) The requirements of paragraphs (a)(3)(i) and (ii) of this section shall not apply to an issuer if the relevant intermediary makes publicly available on the intermediary's platform frequent updates regarding the progress of the issuer in meeting the target offering amount; however, the issuer must still file a Form C-U (§ 239.900 of this chapter) to disclose the total amount of securities sold in the offering no later than five business days after the offering deadline.

*Instruction to paragraph (a)(3).* If multiple Forms C-U (§ 239.900 of this chapter) are triggered within the same five business day period, the issuer may consolidate such progress updates into one Form C-U, so long as the Form C-U discloses the most recent threshold that was met and the Form C-U is filed with the Commission and provided to investors and the relevant intermediary by the day on which the first progress update is due.

*Instruction 1 to paragraph (a).* An issuer would satisfy the requirement to provide to the relevant intermediary the information required by this paragraph (a) if it provides to the relevant intermediary a copy of the disclosures filed with the Commission.

*Instruction 2 to paragraph (a).* An issuer would satisfy the requirement to provide to investors the information required by this paragraph (a) if the issuer refers investors to the information on the intermediary's platform by means of a posting on the issuer's Web site or by email.

(b) *Form C: Annual report and termination of reporting* (§ 239.900 of this chapter).

(1) *Annual reports.* An issuer that has sold securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) and in accordance with section 4A of the Securities Act (15 U.S.C. 77d-1) and this part must file an annual report on Form C: Annual Report (Form C-AR) (§ 239.900 of this chapter) with the Commission no later than 120 days after the end of the fiscal year covered by the report. The annual report shall include the information required by § 227.202(a).

(2) *Amendments to annual report.* An issuer must file with the Commission an amendment to the annual report filed on Form C: Annual Report (Form C-AR) (§ 239.900 of this chapter) to make a material change to the previously filed annual report as soon as practicable after discovery of the need for the material change. The amendment must be filed on Form C: Amendment to Annual Report (Form C-AR/A) (§ 239.900 of this chapter).

(3) *Termination of reporting.* An issuer eligible to terminate its obligation to file annual reports with the Commission pursuant to § 227.202(b) must file with the Commission, within five business days from the date on which the issuer becomes eligible to terminate its reporting obligation, Form C: Termination of Reporting (Form C-TR) (§ 239.900 of this chapter) to advise investors that the issuer will cease reporting pursuant to this part.

*[80 FR 71537, Nov. 16, 2015, as amended at 86 FR 3591, Jan. 14, 2021]*

## § 227.204 Advertising.

(a)

(1) An issuer may not, directly or indirectly, advertise the terms of an offering made in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)), except for oral or written communications that meet the requirements of paragraph (b) of this section or of § 227.206.

(2) *Instruction to paragraph (a).* For purposes of this paragraph (a), issuer includes persons acting on behalf of the issuer.

(b) A notice may advertise any of the terms of an issuer's offering made in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) if it directs investors to the intermediary's platform and includes no more than the following information:

(1) A statement that the issuer is conducting an offering pursuant to section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)), the name of the intermediary through which the offering is being conducted, and information (including a link in any written communications) directing the potential investor to the intermediary's platform;

(2) The terms of the offering; and

(3) Factual information about the legal identity and business location of the issuer, limited to the name of the issuer of the security, the address, phone number and Web site of the issuer, the email address of a representative of the issuer and a brief description of the business of the issuer.

(c) Notwithstanding the prohibition on advertising any of the terms of the offering, an issuer, and persons acting on behalf of the issuer, may communicate with investors and potential investors about the terms of the offering through communication channels provided by the intermediary on the intermediary's platform, provided that an issuer identifies itself as the issuer in all communications. Persons acting on behalf of the issuer must identify their affiliation with the issuer in all communications on the intermediary's platform.

(d) Notwithstanding the requirement that a notice advertising any of the terms of an issuer's offering made in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) include no more than the information specified in paragraph (b) of this section, an issuer conducting an offering in reliance on Regulation Crowdfunding concurrently with another offering that discloses the terms of the Regulation Crowdfunding offering in the disclosure document for the other offering will not be deemed to have

exceeded these disclosure limitations if the disclosure document for the other offering satisfies all the other requirements of this section. If the disclosure document for the other offering is filed on the Commission's Electronic Data Gathering and Retrieval System (EDGAR), the link required by paragraph (b)(1) may not be a live hyperlink.

(e)  *Instruction to § 227.204.* For purposes of this section, terms of the offering means the amount of securities offered, the nature of the securities, the price of the securities, the closing date of the offering period, the planned use of proceeds and the issuer's progress toward meeting its funding target.

*[80 FR 71537, Nov. 16, 2015, as amended at 86 FR 3592, Jan. 14, 2021]*

## § 227.205 Promoter compensation.

(a)  An issuer, or person acting on behalf of the issuer, shall be permitted to compensate or commit to compensate, directly or indirectly, any person to promote the issuer's offerings made in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) through communication channels provided by an intermediary on the intermediary's platform, but only if the issuer or person acting on behalf of the issuer, takes reasonable steps to ensure that the person promoting the offering clearly discloses the receipt, past or prospective, of such compensation with any such communication.

*Instruction to paragraph (a).* The disclosure required by this paragraph is required, with each communication, for persons engaging in promotional activities on behalf of the issuer through the communication channels provided by the intermediary, regardless of whether or not the compensation they receive is specifically for the promotional activities. This includes persons hired specifically to promote the offering as well as to persons who are otherwise employed by the issuer or who undertake promotional activities on behalf of the issuer.

(b)  Other than as set forth in paragraph (a) of this section, an issuer or person acting on behalf of the issuer shall not compensate or commit to compensate, directly or indirectly, any person to promote the issuer's offerings made in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)), unless such promotion is limited to notices permitted by, and in compliance with, § 227.204.

## § 227.206 Solicitations of interest and other communications.

(a)  *Solicitation of interest.* At any time before the filing of an offering statement, an issuer may communicate orally or in writing to determine whether there is any interest in a contemplated securities offering. Such communications are deemed to be an offer of a security for sale for purposes of the antifraud provisions of the Federal securities laws. No solicitation or acceptance of money or other consideration, nor of any commitment, binding or otherwise, from any person is permitted until the offering statement is filed.

(b)  *Conditions.* The communications must:

(1)  State that no money or other consideration is being solicited, and if sent in response, will not be accepted;

(2)  State that no offer to buy the securities can be accepted and no part of the purchase price can be received until the offering statement is filed and only through an intermediary's platform; and

(3)  State that a person's indication of interest involves no obligation or commitment of any kind.

Add. 042

(c) *Indications of interest.* Any written communication under this section may include a means by which a person may indicate to the issuer that such person is interested in a potential offering. This issuer may require the name, address, telephone number, and/or email address in any response form included pursuant to this paragraph (c).

*[86 FR 3592, Jan. 14, 2021]*

## Subpart C—Requirements for Intermediaries

### § 227.300 Intermediaries.

(a) *Requirements.* A person acting as an intermediary in a transaction involving the offer or sale of securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) must:

    (1) Be registered with the Commission as a broker under section 15(b) of the Exchange Act (15 U.S.C. 78o(b)) or as a funding portal in accordance with the requirements of § 227.400; and

    (2) Be a member a national securities association registered under section 15A of the Exchange Act (15 U.S.C. 78o-3).

(b) *Financial interests.* Any director, officer or partner of an intermediary, or any person occupying a similar status or performing a similar function, may not have a financial interest in an issuer that is offering or selling securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) through the intermediary's platform, or receive a financial interest in an issuer as compensation for the services provided to or for the benefit of the issuer in connection with the offer or sale of such securities. An intermediary may not have a financial interest in an issuer that is offering or selling securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) through the intermediary's platform unless:

    (1) The intermediary receives the financial interest from the issuer as compensation for the services provided to, or for the benefit of, the issuer in connection with the offer or sale of the securities being offered or sold in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) through the intermediary's platform; and

    (2) the financial interest consists of securities of the same class and having the same terms, conditions and rights as the securities being offered or sold in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) through the intermediary's platform. For purposes of this paragraph, a *financial interest in an issuer* means a direct or indirect ownership of, or economic interest in, any class of the issuer's securities.

(c) *Definitions.* For purposes of this part:

    (1) *Associated person of a funding portal* or *person associated with a funding portal* means any partner, officer, director or manager of a funding portal (or any person occupying a similar status or performing similar functions), any person directly or indirectly controlling or controlled by such funding portal, or any employee of a funding portal, except that any person associated with a funding portal whose functions are solely clerical or ministerial shall not be included in the meaning of such term for purposes of section 15(b) of the Exchange Act (15 U.S.C. 78o(b)) (other than paragraphs (4) and (6) of section 15(b) of the Exchange Act).

    (2) *Funding portal* means a broker acting as an intermediary in a transaction involving the offer or sale of securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)), that does not:

        (i) Offer investment advice or recommendations;

    (ii) Solicit purchases, sales or offers to buy the securities displayed on its platform;

    (iii) Compensate employees, agents, or other persons for such solicitation or based on the sale of securities displayed or referenced on its platform; or

    (iv) Hold, manage, possess, or otherwise handle investor funds or securities.

(3) *Intermediary* means a broker registered under section 15(b) of the Exchange Act (15 U.S.C. 78*o*(b)) or a funding portal registered under § 227.400 and includes, where relevant, an associated person of the registered broker or registered funding portal.

(4) *Platform* means a program or application accessible via the Internet or other similar electronic communication medium through which a registered broker or a registered funding portal acts as an intermediary in a transaction involving the offer or sale of securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)).

*Instruction to paragraph (c)(4).* An intermediary through which a crowdfunding transaction is conducted may engage in back office or other administrative functions other than on the intermediary's platform.

## § 227.301 Measures to reduce risk of fraud.

An intermediary in a transaction involving the offer or sale of securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) must:

(a) Have a reasonable basis for believing that an issuer seeking to offer and sell securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) through the intermediary's platform complies with the requirements in section 4A(b) of the Act (15 U.S.C. 77d-1(b)) and the related requirements in this part. In satisfying this requirement, an intermediary may rely on the representations of the issuer concerning compliance with these requirements unless the intermediary has reason to question the reliability of those representations;

(b) Have a reasonable basis for believing that the issuer has established means to keep accurate records of the holders of the securities it would offer and sell through the intermediary's platform, provided that an intermediary may rely on the representations of the issuer concerning its means of recordkeeping unless the intermediary has reason to question the reliability of those representations. An intermediary will be deemed to have satisfied this requirement if the issuer has engaged the services of a transfer agent that is registered under Section 17A of the Exchange Act (15 U.S.C. 78q-1(c)).

(c) Deny access to its platform to an issuer if the intermediary:

    (1) Has a reasonable basis for believing that the issuer or any of its officers, directors (or any person occupying a similar status or performing a similar function) or beneficial owners of 20 percent or more of the issuer's outstanding voting equity securities, calculated on the basis of voting power, is subject to a disqualification under § 227.503. In satisfying this requirement, an intermediary must, at a minimum, conduct a background and securities enforcement regulatory history check on each issuer whose securities are to be offered by the intermediary and on each officer, director or beneficial owner of 20 percent or more of the issuer's outstanding voting equity securities, calculated on the basis of voting power.

    (2) Has a reasonable basis for believing that the issuer or the offering presents the potential for fraud or otherwise raises concerns about investor protection. In satisfying this requirement, an intermediary must deny access if it reasonably believes that it is unable to adequately or effectively assess the

risk of fraud of the issuer or its potential offering. In addition, if an intermediary becomes aware of information after it has granted access that causes it to reasonably believe that the issuer or the offering presents the potential for fraud or otherwise raises concerns about investor protection, the intermediary must promptly remove the offering from its platform, cancel the offering, and return (or, for funding portals, direct the return of) any funds that have been committed by investors in the offering.

*[80 FR 71537, Nov. 16, 2015, as amended at 85 FR 27132, May 7, 2020; 85 FR 54490, Sept. 2, 2020; 86 FR 3592, Jan. 14, 2021]*

## § 227.302 Account opening.

(a) *Accounts and electronic delivery.*

(1) No intermediary or associated person of an intermediary may accept an investment commitment in a transaction involving the offer or sale of securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) until the investor has opened an account with the intermediary and the intermediary has obtained from the investor consent to electronic delivery of materials.

(2) An intermediary must provide all information that is required to be provided by the intermediary under subpart C of this part (§§ 227.300 through 227.305), including, but not limited to, educational materials, notices and confirmations, through electronic means. Unless otherwise indicated in the relevant rule of subpart C of this part, in satisfying this requirement, an intermediary must provide the information through an electronic message that contains the information, through an electronic message that includes a specific link to the information as posted on intermediary's platform, or through an electronic message that provides notice of what the information is and that it is located on the intermediary's platform or on the issuer's Web site. Electronic messages include, but are not limited to, email, social media messages, instant messages or other electronic media messages.

(b) *Educational materials.*

(1) In connection with establishing an account for an investor, an intermediary must deliver educational materials to such investor that explain in plain language and are otherwise designed to communicate effectively and accurately:

(i) The process for the offer, purchase and issuance of securities through the intermediary and the risks associated with purchasing securities offered and sold in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6));

(ii) The types of securities offered and sold in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) available for purchase on the intermediary's platform and the risks associated with each type of security, including the risk of having limited voting power as a result of dilution;

(iii) The restrictions on the resale of a security offered and sold in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6));

(iv) The types of information that an issuer is required to provide under § 227.202, the frequency of the delivery of that information and the possibility that those obligations may terminate in the future;

(v) The limitations on the amounts an investor may invest pursuant to § 227.100(a)(2);

**Add. 045**

(vi) The limitations on an investor's right to cancel an investment commitment and the circumstances in which an investment commitment may be cancelled by the issuer;

(vii) The need for the investor to consider whether investing in a security offered and sold in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) is appropriate for that investor;

(viii) That following completion of an offering conducted through the intermediary, there may or may not be any ongoing relationship between the issuer and intermediary; and

(ix) That under certain circumstances an issuer may cease to publish annual reports and, therefore, an investor may not continually have current financial information about the issuer.

(2) An intermediary must make the most current version of its educational material available on its platform at all times and, if at any time, the intermediary makes a material revision to its educational materials, it must make the revised educational materials available to all investors before accepting any additional investment commitments or effecting any further transactions in securities offered and sold in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)).

(c) *Promoters.* In connection with establishing an account for an investor, an intermediary must inform the investor that any person who promotes an issuer's offering for compensation, whether past or prospective, or who is a founder or an employee of an issuer that engages in promotional activities on behalf of the issuer on the intermediary's platform, must clearly disclose in all communications on the intermediary's platform, respectively, the receipt of the compensation and that he or she is engaging in promotional activities on behalf of the issuer.

(d) *Compensation disclosure.* When establishing an account for an investor, an intermediary must clearly disclose the manner in which the intermediary is compensated in connection with offerings and sales of securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)).

## § 227.303 Requirements with respect to transactions.

(a) *Issuer information.* An intermediary in a transaction involving the offer or sale of securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) must make available to the Commission and to investors any information required to be provided by the issuer of the securities under §§ 227.201 and 227.203(a).

(1) This information must be made publicly available on the intermediary's platform, in a manner that reasonably permits a person accessing the platform to save, download, or otherwise store the information;

(2) This information must be made publicly available on the intermediary's platform for a minimum of 21 days before any securities are sold in the offering, during which time the intermediary may accept investment commitments;

(3) This information, including any additional information provided by the issuer, must remain publicly available on the intermediary's platform until the offer and sale of securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) is completed or cancelled; and

(4) An intermediary may not require any person to establish an account with the intermediary to access this information.

(b) *Investor qualification.* Each time before accepting any investment commitment (including any additional investment commitment from the same person), an intermediary must:

**Add. 046**

(1) Have a reasonable basis for believing that the investor satisfies the investment limitations established by section 4(a)(6)(B) of the Act (15 U.S.C. 77d(a)(6)(B)) and this part. An intermediary may rely on an investor's representations concerning compliance with the investment limitation requirements concerning the investor's annual income, net worth, and the amount of the investor's other investments made pursuant to section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) unless the intermediary has reason to question the reliability of the representation.

(2) Obtain from the investor:

(i) A representation that the investor has reviewed the intermediary's educational materials delivered pursuant to § 227.302(b), understands that the entire amount of his or her investment may be lost, and is in a financial condition to bear the loss of the investment; and

(ii) A questionnaire completed by the investor demonstrating the investor's understanding that:

(A) There are restrictions on the investor's ability to cancel an investment commitment and obtain a return of his or her investment;

(B) It may be difficult for the investor to resell securities acquired in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)); and

(C) Investing in securities offered and sold in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) involves risk, and the investor should not invest any funds in an offering made in reliance on section 4(a)(6) of the Securities Act unless he or she can afford to lose the entire amount of his or her investment.

(c) *Communication channels.* An intermediary must provide on its platform communication channels by which persons can communicate with one another and with representatives of the issuer about offerings made available on the intermediary's platform, provided:

(1) If the intermediary is a funding portal, it does not participate in these communications other than to establish guidelines for communication and remove abusive or potentially fraudulent communications;

(2) The intermediary permits public access to view the discussions made in the communication channels;

(3) The intermediary restricts posting of comments in the communication channels to those persons who have opened an account with the intermediary on its platform; and

(4) The intermediary requires that any person posting a comment in the communication channels clearly and prominently disclose with each posting whether he or she is a founder or an employee of an issuer engaging in promotional activities on behalf of the issuer, or is otherwise compensated, whether in the past or prospectively, to promote the issuer's offering.

(d) *Notice of investment commitment.* An intermediary must promptly, upon receipt of an investment commitment from an investor, give or send to the investor a notification disclosing:

(1) The dollar amount of the investment commitment;

(2) The price of the securities, if known;

(3) The name of the issuer; and

(4) The date and time by which the investor may cancel the investment commitment.

Add. 047

(e) *Maintenance and transmission of funds.*

(1) An intermediary that is a registered broker must comply with the requirements of 17 CFR 240.15c2-4.

(2) An intermediary that is a funding portal must direct investors to transmit the money or other consideration directly to a qualified third party that has agreed in writing to hold the funds for the benefit of, and to promptly transmit or return the funds to, the persons entitled thereto in accordance with paragraph (e)(3) of this section. For purposes of this subpart C (§§ 227.300 through 227.305), a qualified third party means a:

(i) Registered broker or dealer that carries customer or broker or dealer accounts and holds funds or securities for those persons; or

(ii) Bank or credit union (where such credit union is insured by National Credit Union Administration) that has agreed in writing either to hold the funds in escrow for the persons who have the beneficial interests therein and to transmit or return such funds directly to the persons entitled thereto when so directed by the funding portal as described in paragraph (e)(3) of this section, or to maintain a bank or credit union account (or accounts) for the exclusive benefit of investors and the issuer.

(3) A funding portal that is an intermediary in a transaction involving the offer or sale of securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) shall promptly direct the qualified third party to:

(i) Transmit funds from the qualified third party to the issuer when the aggregate amount of investment commitments from all investors is equal to or greater than the target amount of the offering and the cancellation period as set forth in § 227.304 has elapsed, *provided that* in no event may the funding portal direct this transmission of funds earlier than 21 days after the date on which the intermediary makes publicly available on its platform the information required to be provided by the issuer under §§ 227.201 and 227.203(a);

(ii) Return funds to an investor when an investment commitment has been cancelled in accordance with § 227.304 (including for failure to obtain effective reconfirmation as required under § 227.304(c)); and

(iii) Return funds to investors when an issuer does not complete the offering.

(f) *Confirmation of transaction.*

(1) An intermediary must, at or before the completion of a transaction in a security in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)), give or send to each investor a notification disclosing:

(i) The date of the transaction;

(ii) The type of security that the investor is purchasing;

(iii) The identity, price, and number of securities purchased by the investor, as well as the number of securities sold by the issuer in the transaction and the price(s) at which the securities were sold;

(iv) If a debt security, the interest rate and the yield to maturity calculated from the price paid and the maturity date;

(v) If a callable security, the first date that the security can be called by the issuer; and

    (vi) The source, form and amount of any remuneration received or to be received by the intermediary in connection with the transaction, including any remuneration received or to be received by the intermediary from persons other than the issuer.

  (2) An intermediary satisfying the requirements of paragraph (f)(1) of this section is exempt from the requirements of § 240.10b-10 of this chapter with respect to a transaction in a security offered and sold in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)).

*[80 FR 71537, Nov. 16, 2015, as amended at 85 FR 27132, May 7, 2020; 85 FR 54490, Sept. 2, 2020; 86 FR 3592, Jan. 14, 2021]*

## § 227.304 Completion of offerings, cancellations and reconfirmations.

  (a) *Generally.* An investor may cancel an investment commitment for any reason until 48 hours prior to the deadline identified in the issuer's offering materials. During the 48 hours prior to such deadline, an investment commitment may not be cancelled except as provided in paragraph (c) of this section.

  (b) *Early completion of offering.* If an issuer reaches the target offering amount prior to the deadline identified in its offering materials pursuant to § 227.201(g), the issuer may close the offering on a date earlier than the deadline identified in its offering materials pursuant to § 227.201(g), *provided that:*

    (1) The offering remains open for a minimum of 21 days pursuant to § 227.303(a);

    (2) The intermediary provides notice to any potential investors, and gives or sends notice to investors that have made investment commitments in the offering, of:

      (i) The new, anticipated deadline of the offering;

      (ii) The right of investors to cancel investment commitments for any reason until 48 hours prior to the new offering deadline; and

      (iii) Whether the issuer will continue to accept investment commitments during the 48-hour period prior to the new offering deadline.

    (3) The new offering deadline is scheduled for and occurs at least five business days after the notice required in paragraph (b)(2) of this section is provided; and

    (4) At the time of the new offering deadline, the issuer continues to meet or exceed the target offering amount.

  (c) *Cancellations and reconfirmations based on material changes.*

    (1) If there is a material change to the terms of an offering or to the information provided by the issuer, the intermediary must give or send to any investor who has made an investment commitment notice of the material change and that the investor's investment commitment will be cancelled unless the investor reconfirms his or her investment commitment within five business days of receipt of the notice. If the investor fails to reconfirm his or her investment within those five business days, the intermediary within five business days thereafter must:

      (i) Give or send the investor a notification disclosing that the commitment was cancelled, the reason for the cancellation and the refund amount that the investor is expected to receive; and

      (ii) Direct the refund of investor funds.

(2) If material changes to the offering or to the information provided by the issuer regarding the offering occur within five business days of the maximum number of days that an offering is to remain open, the offering must be extended to allow for a period of five business days for the investor to reconfirm his or her investment.

(d) *Return of funds if offering is not completed.* If an issuer does not complete an offering, an intermediary must within five business days:

(1) Give or send each investor a notification of the cancellation, disclosing the reason for the cancellation, and the refund amount that the investor is expected to receive;

(2) Direct the refund of investor funds; and

(3) Prevent investors from making investment commitments with respect to that offering on its platform.

*[80 FR 71537, Nov. 16, 2015, as amended at 85 FR 27132, May 7, 2020; 85 FR 54490, Sept. 2, 2020; 86 FR 3592, Jan. 14, 2021]*

## § 227.305 Payments to third parties.

(a) *Prohibition on payments for personally identifiable information.* An intermediary may not compensate any person for providing the intermediary with the personally identifiable information of any investor or potential investor in securities offered and sold in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)).

(b) For purposes of this rule, personally identifiable information means information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information that is linked or linkable to a specific individual.

## Subpart D—Funding Portal Regulation

## § 227.400 Registration of funding portals.

(a) *Registration.* A funding portal must register with the Commission, by filing a complete Form Funding Portal (§ 249.2000 of this chapter) in accordance with the instructions on the form, and become a member of a national securities association registered under section 15A of the Exchange Act (15 U.S.C. 78o-3). The registration will be effective the later of:

(1) Thirty calendar days after the date that the registration is received by the Commission; or

(2) The date the funding portal is approved for membership by a national securities association registered under section 15A of the Exchange Act (15 U.S.C. 78o-3).

(b) *Amendments to registration.* A funding portal must file an amendment to Form Funding Portal (§ 249.2000 of this chapter) within 30 days of any of the information previously submitted on Form Funding Portal becoming inaccurate for any reason.

(c) *Successor registration.*

(1) If a funding portal succeeds to and continues the business of a registered funding portal, the registration of the predecessor will remain effective as the registration of the successor if the successor, within 30 days after such succession, files a registration on Form Funding Portal (§

Case: 24-1798     Document: 00118217697     Page: 79     Date Filed: 11/21/2024     Entry ID: 6683150

17 CFR Part 227 (up to date as of 11/19/2024)           17 CFR 227.400(c)(2)
Regulation Crowdfunding, General Rules and Regulations

249.2000 of this chapter) and the predecessor files a withdrawal on Form Funding Portal; *provided, however,* that the registration of the predecessor funding portal will be deemed withdrawn 45 days after registration on Form Funding Portal is filed by the successor.

(2) Notwithstanding paragraph (c)(1) of this section, if a funding portal succeeds to and continues the business of a registered funding portal and the succession is based solely on a change of the predecessor's date or state of incorporation, form of organization, or composition of a partnership, the successor may, within 30 days after the succession, amend the registration of the predecessor on Form Funding Portal (§ 249.2000 of this chapter) to reflect these changes.

(d) *Withdrawal.* A funding portal must promptly file a withdrawal of registration on Form Funding Portal (§ 249.2000 of this chapter) in accordance with the instructions on the form upon ceasing to operate as a funding portal. Withdrawal will be effective on the later of 30 days after receipt by the Commission (after the funding portal is no longer operational), or within such longer period of time as to which the funding portal consents or which the Commission by order may determine as necessary or appropriate in the public interest or for the protection of investors.

(e) *Applications and reports.* The applications and reports provided for in this section shall be considered filed when a complete Form Funding Portal (§ 249.2000 of this chapter) is submitted with the Commission. Duplicate originals of the applications and reports provided for in this section must be filed with surveillance personnel designated by any registered national securities association of which the funding portal is a member.

(f) *Nonresident funding portals.* Registration pursuant to this section by a nonresident funding portal shall be conditioned upon there being an information sharing arrangement in place between the Commission and the competent regulator in the jurisdiction under the laws of which the nonresident funding portal is organized or where it has its principal place of business, that is applicable to the nonresident funding portal.

(1) *Definition.* For purposes of this section, the term *nonresident funding portal* shall mean a funding portal incorporated in or organized under the laws of a jurisdiction outside of the United States or its territories, or having its principal place of business in any place not in the United States or its territories.

(2) *Power of attorney.*

(i) Each nonresident funding portal registered or applying for registration pursuant to this section shall obtain a written consent and power of attorney appointing an agent in the United States, other than the Commission or a Commission member, official or employee, upon whom may be served any process, pleadings or other papers in any action under the federal securities laws. This consent and power of attorney must be signed by the nonresident funding portal and the named agent(s) for service of process.

(ii) Each nonresident funding portal registered or applying for registration pursuant to this section shall, at the time of filing its application on Form Funding Portal (§ 249.2000 of this chapter), furnish to the Commission the name and address of its United States agent for service of process on Schedule C to the Form.

(iii) Any change of a nonresident funding portal's agent for service of process and any change of name or address of a nonresident funding portal's existing agent for service of process shall be communicated promptly to the Commission through amendment of the Schedule C to Form Funding Portal (§ 249.2000 of this chapter).

Case: 24-1798    Document: 00118217697    Page: 80    Date Filed: 11/21/2024    Entry ID: 6683150

17 CFR Part 227 (up to date as of 11/19/2024)
Regulation Crowdfunding, General Rules and Regulations                    17 CFR 227.400(f)(2)(iv)

(iv) Each nonresident funding portal must promptly appoint a successor agent for service of process if the nonresident funding portal discharges its identified agent for service of process or if its agent for service of process is unwilling or unable to accept service on behalf of the nonresident funding portal.

(v) Each nonresident funding portal must maintain, as part of its books and records, the written consent and power of attorney identified in paragraph (f)(2)(i) of this section for at least three years after the agreement is terminated.

(3) *Access to books and records; inspections and examinations* —

(i) *Certification and opinion of counsel.* Any nonresident funding portal applying for registration pursuant to this section shall:

(A) Certify on Schedule C to Form Funding Portal (§ 249.2000 of this chapter) that the nonresident funding portal can, as a matter of law, and will provide the Commission and any registered national securities association of which it becomes a member with prompt access to the books and records of such nonresident funding portal and can, as a matter of law, and will submit to onsite inspection and examination by the Commission and any registered national securities association of which it becomes a member; and

(B) Provide an opinion of counsel that the nonresident funding portal can, as a matter of law, provide the Commission and any registered national securities association of which it becomes a member with prompt access to the books and records of such nonresident funding portal and can, as a matter of law, submit to onsite inspection and examination by the Commission and any registered national securities association of which it becomes a member.

(ii) *Amendments.* The nonresident funding portal shall re-certify, on Schedule C to Form Funding Portal (§ 249.2000 of this chapter), within 90 days after any changes in the legal or regulatory framework that would impact the nonresident funding portal's ability to provide, or the manner in which it provides, the Commission, or any registered national securities association of which it is a member, with prompt access to its books and records or that would impact the Commission's or such registered national securities association's ability to inspect and examine the nonresident funding portal. The re-certification shall be accompanied by a revised opinion of counsel describing how, as a matter of law, the nonresident funding portal can continue to meet its obligations under paragraphs (f)(3)(i)(A) and (B) of this section.

## § 227.401 Exemption.

A funding portal that is registered with the Commission pursuant to § 227.400 is exempt from the broker registration requirements of section 15(a)(1) of the Exchange Act (15 U.S.C. 78*o*(a)(1)) in connection with its activities as a funding portal.

## § 227.402 Conditional safe harbor.

(a) *General.* Under section 3(a)(80) of the Exchange Act (15 U.S.C. 78c(a)(80)), a funding portal acting as an intermediary in a transaction involving the offer or sale of securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) may not: offer investment advice or recommendations; solicit purchases, sales, or offers to buy the securities offered or displayed on its platform or portal; compensate employees, agents, or other persons for such solicitation or based on the sale of securities displayed or referenced on its platform or portal; hold, manage, possess, or otherwise handle investor funds or

securities; or engage in such other activities as the Commission, by rule, determines appropriate. This section is intended to provide clarity with respect to the ability of a funding portal to engage in certain activities, consistent with the prohibitions under section 3(a)(80) of the Exchange Act. No presumption shall arise that a funding portal has violated the prohibitions under section 3(a)(80) of the Exchange Act or this part by reason of the funding portal or its associated persons engaging in activities in connection with the offer or sale of securities in reliance on section 4(a)(6) of the Securities Act that do not meet the conditions specified in paragraph (b) of this section. The antifraud provisions and all other applicable provisions of the federal securities laws continue to apply to the activities described in paragraph (b) of this section.

(b) *Permitted activities.* A funding portal may, consistent with the prohibitions under section 3(a)(80) of the Exchange Act (15 U.S.C. 78c(a)(80)) and this part:

(1) Determine whether and under what terms to allow an issuer to offer and sell securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) through its platform; provided that a funding portal otherwise complies with this part;

(2) Apply objective criteria to highlight offerings on the funding portal's platform where:

(i) The criteria are reasonably designed to highlight a broad selection of issuers offering securities through the funding portal's platform, are applied consistently to all issuers and offerings and are clearly displayed on the funding portal's platform;

(ii) The criteria may include, among other things, the type of securities being offered (for example, common stock, preferred stock or debt securities); the geographic location of the issuer; the industry or business segment of the issuer; the number or amount of investment commitments made, progress in meeting the issuer's target offering amount or, if applicable, the maximum offering amount; and the minimum or maximum investment amount; provided that the funding portal may not highlight an issuer or offering based on the advisability of investing in the issuer or its offering; and

(iii) The funding portal does not receive special or additional compensations for highlighting one or more issuers or offerings on its platform;

(3) Provide search functions or other tools that investors can use to search, sort, or categorize the offerings available through the funding portal's platform according to objective criteria where;

(i) The criteria may include, among other things, the type of securities being offered (for example, common stock, preferred stock or debt securities); the geographic location of the issuer; the industry or business segment of the issuer; the number or amount of investment commitments made, progress in meeting the issuer's target offering amount or, if applicable, the maximum offering amount; and the minimum or maximum investment amount; and

(ii) The criteria may not include, among other things, the advisability of investing in the issuer or its offering, or an assessment of any characteristic of the issuer, its business plan, its key management or risks associated with an investment.

(4) Provide communication channels by which investors can communicate with one another and with representatives of the issuer through the funding portal's platform about offerings through the platform, so long as the funding portal (and its associated persons):

(i) Does not participate in these communications, other than to establish guidelines for communication and remove abusive or potentially fraudulent communications;

(ii) Permits public access to view the discussions made in the communication channels;

(iii) Restricts posting of comments in the communication channels to those persons who have opened an account on its platform; and

(iv) Requires that any person posting a comment in the communication channels clearly disclose with each posting whether he or she is a founder or an employee of an issuer engaging in promotional activities on behalf of the issuer, or is otherwise compensated, whether in the past or prospectively, to promote an issuer's offering;

(5) Advise an issuer about the structure or content of the issuer's offering, including assisting the issuer in preparing offering documentation;

(6) Compensate a third party for referring a person to the funding portal, so long as the third party does not provide the funding portal with personally identifiable information of any potential investor, and the compensation, other than that paid to a registered broker or dealer, is not based, directly or indirectly, on the purchase or sale of a security in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) offered on or through the funding portal's platform;

(7) Pay or offer to pay any compensation to a registered broker or dealer for services, including referrals pursuant to paragraph (b)(6) of this section, in connection with the offer or sale of securities by the funding portal in reliance on section 4(a)(6) of the Act (15 U.S.C. 77d(a)(6)), provided that:

(i) Such services are provided pursuant to a written agreement between the funding portal and the registered broker or dealer;

(ii) Such services and compensation are permitted under this part; and

(iii) Such services and compensation comply with the rules of any registered national securities association of which the funding portal is a member;

(8) Receive any compensation from a registered broker or dealer for services provided by the funding portal in connection with the offer or sale of securities by the funding portal in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)), provided that:

(i) Such services are provided pursuant to a written agreement between the funding portal and the registered broker or dealer;

(ii) Such compensation is permitted under this part; and

(iii) Such compensation complies with the rules of any registered national securities association of which the funding portal is a member;

(9) Advertise the existence of the funding portal and identify one or more issuers or offerings available on the portal on the basis of objective criteria, as long as:

(i) The criteria are reasonably designed to identify a broad selection of issuers offering securities through the funding portal's platform, and are applied consistently to all potential issuers and offerings;

(ii) The criteria may include, among other things, the type of securities being offered (for example, common stock, preferred stock or debt securities); the geographic location of the issuer; the industry or business segment of the issuer; the expressed interest by investors, as measured by

**Add. 054**

number or amount of investment commitments made, progress in meeting the issuer's target offering amount or, if applicable, the maximum offering amount; and the minimum or maximum investment amount; and

(iii) The funding portal does not receive special or additional compensation for identifying the issuer or offering in this manner;

(10) Deny access to its platform to, or cancel an offering of an issuer, pursuant to § 227.301(c)(2), if the funding portal has a reasonable basis for believing that the issuer or the offering presents the potential for fraud or otherwise raises concerns about investor protection;

(11) Accept, on behalf of an issuer, an investment commitment for securities offered in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) by that issuer on the funding portal's platform;

(12) Direct investors where to transmit funds or remit payment in connection with the purchase of securities offered and sold in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)); and

(13) Direct a qualified third party, as required by § 227.303(e), to release proceeds to an issuer upon completion of a crowdfunding offering or to return proceeds to investors in the event an investment commitment or an offering is cancelled.

## § 227.403 Compliance.

(a) *Policies and procedures.* A funding portal must implement written policies and procedures reasonably designed to achieve compliance with the federal securities laws and the rules and regulations thereunder relating to its business as a funding portal.

(b) *Privacy.* A funding portal must comply with the requirements of part 248 of this chapter as they apply to brokers.

(c) *Inspections and examinations.* A funding portal shall permit the examination and inspection of all of its business and business operations that relate to its activities as a funding portal, such as its premises, systems, platforms, and records by representatives of the Commission and of the registered national securities association of which it is a member.

## § 227.404 Records to be made and kept by funding portals.

(a) *Generally.* A funding portal shall make and preserve the following records for five years, the first two years in an easily accessible place:

(1) All records related to an investor who purchases or attempts to purchase securities through the funding portal;

(2) All records related to issuers who offer and sell or attempt to offer and sell securities through the funding portal and the control persons of such issuers;

(3) Records of all communications that occur on or through its platform;

(4) All records related to persons that use communication channels provided by a funding portal to promote an issuer's securities or communicate with potential investors;

(5) All records required to demonstrate compliance with the requirements of subparts C (§§ 227.300 through 227.305) and D (§§ 227.400 through 227.404) of this part;

Case: 24-1798     Document: 00118217697     Page: 84     Date Filed: 11/21/2024     Entry ID: 6683150

17 CFR Part 227 (up to date as of 11/19/2024)
Regulation Crowdfunding, General Rules and Regulations                                    17 CFR 227.404(a)(6)

(6) All notices provided by such funding portal to issuers and investors generally through the funding portal's platform or otherwise, including, but not limited to, notices addressing hours of funding portal operations (if any), funding portal malfunctions, changes to funding portal procedures, maintenance of hardware and software, instructions pertaining to access to the funding portal and denials of, or limitations on, access to the funding portal;

(7) All written agreements (or copies thereof) entered into by such funding portal relating to its business as such;

(8) All daily, monthly and quarterly summaries of transactions effected through the funding portal, including:

(i) Issuers for which the target offering amount has been reached and funds distributed; and

(ii) Transaction volume, expressed in:

(A) Number of transactions;

(B) Number of securities involved in a transaction;

(C) Total amounts raised by, and distributed to, issuers; and

(D) Total dollar amounts raised across all issuers, expressed in U.S. dollars; and

(9) A log reflecting the progress of each issuer who offers or sells securities through the funding portal toward meeting the target offering amount.

(b) *Organizational documents.* A funding portal shall make and preserve during the operation of the funding portal and of any successor funding portal, all organizational documents relating to the funding portal, including but not limited to, partnership agreements, articles of incorporation or charter, minute books and stock certificate books (or other similar type documents).

(c) *Format.* The records required to be maintained and preserved pursuant to paragraph (a) of this section must be produced, reproduced, and maintained in the original, non-alterable format in which they were created or as permitted under § 240.17a-4(f) of this chapter.

(d) *Third parties.* The records required to be made and preserved pursuant to this section may be prepared or maintained by a third party on behalf of a funding portal. An agreement with a third party shall not relieve a funding portal from the responsibility to prepare and maintain records as specified in this rule. A funding portal must file with the registered national securities association of which it is a member, a written undertaking in a form acceptable to the registered national securities association, signed by a duly authorized person of the third party, stating in effect that such records are the property of the funding portal and will be surrendered promptly on request of the funding portal. The undertaking shall include the following provision:

With respect to any books and records maintained or preserved on behalf of [name of funding portal], the undersigned hereby acknowledges that the books and records are the property of [name of funding portal], and hereby undertakes to permit examination of such books and records at any time, or from time to time, during business hours by representatives of the Securities and Exchange Commission and the registered national securities association of which the funding portal is a member, and to promptly furnish to the Commission, its representatives, and the registered national securities association of which the funding portal is a member, a true, correct, complete and current hard copy of any, all, or any part of, such books and records.

(e) **Review of records.** All records of a funding portal are subject at any time, or from time to time, to reasonable periodic, special, or other examination by the representatives of the Commission and the registered national securities association of which a funding portal is a member. Every funding portal shall furnish promptly to the Commission, its representatives, and the registered national securities association of which the funding portal is a member true, correct, complete and current copies of such records of the funding portal that are requested by the representatives of the Commission and the registered national securities association.

(f) **Financial recordkeeping and reporting of currency and foreign transactions.** A funding portal that is subject to the requirements of the Currency and Foreign Transactions Reporting Act of 1970 (15 U.S.C. 5311 *et seq.*) shall comply with the reporting, recordkeeping and record retention requirements of 31 CFR chapter X. Where 31 CFR chapter X and § 227.404(a) and (b) require the same records or reports to be preserved for different periods of time, such records or reports shall be preserved for the longer period of time.

## Subpart E—Miscellaneous Provisions

## § 227.501 Restrictions on resales.

(a) Securities issued in a transaction exempt from registration pursuant to section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) and in accordance with section 4A of the Securities Act (15 U.S.C. 77d-1) and this part may not be transferred by any purchaser of such securities during the one-year period beginning when the securities were issued in a transaction exempt from registration pursuant to section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)), unless such securities are transferred:

  (1) To the issuer of the securities;

  (2) To an accredited investor;

  (3) As part of an offering registered with the Commission; or

  (4) To a member of the family of the purchaser or the equivalent, to a trust controlled by the purchaser, to a trust created for the benefit of a member of the family of the purchaser or the equivalent, or in connection with the death or divorce of the purchaser or other similar circumstance.

(b) For purposes of this § 227.501, the term *accredited investor* shall mean any person who comes within any of the categories set forth in § 230.501(a) of this chapter, or who the seller reasonably believes comes within any of such categories, at the time of the sale of the securities to that person.

(c) For purposes of this section, the term *member of the family of the purchaser or the equivalent* includes a child, stepchild, grandchild, parent, stepparent, grandparent, spouse or spousal equivalent, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law of the purchaser, and shall include adoptive relationships. For purposes of this paragraph (c), the term *spousal equivalent* means a cohabitant occupying a relationship generally equivalent to that of a spouse.

## § 227.502 Insignificant deviations from a term, condition or requirement of this part (Regulation Crowdfunding).

(a) A failure to comply with a term, condition, or requirement of this part will not result in the loss of the exemption from the requirements of Section 5 of the Securities Act (15 U.S.C. 77e) for any offer or sale to a particular individual or entity, if the issuer relying on the exemption shows:

  (1) The failure to comply was insignificant with respect to the offering as a whole;

Add. 057

(2) The issuer made a good faith and reasonable attempt to comply with all applicable terms, conditions and requirements of this part; and

(3) The issuer did not know of such failure where the failure to comply with a term, condition or requirement of this part was the result of the failure of the intermediary to comply with the requirements of section 4A(a) of the Securities Act (15 U.S.C. 77d-1(a)) and the related rules, or such failure by the intermediary occurred solely in offerings other than the issuer's offering.

(b) Paragraph (a) of this section shall not preclude the Commission from bringing an enforcement action seeking any appropriate relief for an issuer's failure to comply with all applicable terms, conditions and requirements of this part.

## § 227.503 Disqualification provisions.

(a) *Disqualification events.* No exemption under section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) shall be available for a sale of securities if the issuer; any predecessor of the issuer; any affiliated issuer; any director, officer, general partner or managing member of the issuer; any beneficial owner of 20 percent or more of the issuer's outstanding voting equity securities, calculated on the basis of voting power; any promoter connected with the issuer in any capacity at the time of filing, any offer after filing, or such sale; any person that has been or will be paid (directly or indirectly) remuneration for solicitation of purchasers in connection with such sale of securities; or any general partner, director, officer or managing member of any such solicitor:

(1) Has been convicted, within 10 years before the filing of the offering statement or such sale (or five years, in the case of issuers, their predecessors and affiliated issuers), of any felony or misdemeanor:

(i) In connection with the purchase or sale of any security;

(ii) Involving the making of any false filing with the Commission; or

(iii) Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser, funding portal or paid solicitor of purchasers of securities;

(2) Is subject to any order, judgment or decree of any court of competent jurisdiction, entered within five years before the filing of the information required by section 4A(b) of the Securities Act (15 U.S.C. 77d-1(b)) or such sale that, at the time of such filing or sale, restrains or enjoins such person from engaging or continuing to engage in any conduct or practice:

(i) In connection with the purchase or sale of any security;

(ii) Involving the making of any false filing with the Commission; or

(iii) Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser, funding portal or paid solicitor of purchasers of securities;

(3) Is subject to a final order of a State securities commission (or an agency or officer of a State performing like functions); a State authority that supervises or examines banks, savings associations or credit unions; a State insurance commission (or an agency or officer of a state performing like functions); an appropriate Federal banking agency; the U.S. Commodity Futures Trading Commission; or the National Credit Union Administration that:

(i) At the time of the filing of the information required by section 4A(b) of the Securities Act (15 U.S.C. 77d-1(b)) or such sale, bars the person from:

(A) Association with an entity regulated by such commission, authority, agency or officer;

(B) Engaging in the business of securities, insurance or banking; or

(C) Engaging in savings association or credit union activities; or

(ii) Constitutes a final order based on a violation of any law or regulation that prohibits fraudulent, manipulative or deceptive conduct entered within ten years before such filing of the offering statement or such sale;

(iii) *Instruction to paragraph (a)(3). Final order* shall mean a written directive or declaratory statement issued by a Federal or State agency, described in this paragraph (a)(3), under applicable statutory authority that provides for notice and an opportunity for hearing, which constitutes a final disposition or action by that Federal or State agency.

(4) Is subject to an order of the Commission entered pursuant to section 15(b) or 15B(c) of the Exchange Act (15 U.S.C. 78o(b) or 78o-4(c)) or section 203(e) or (f) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-3(e) or (f)) that, at the time of the filing of the information required by section 4A(b) of the Securities Act (15 U.S.C. 77d-1(b)) or such sale:

(i) Suspends or revokes such person's registration as a broker, dealer, municipal securities dealer, investment adviser or funding portal;

(ii) Places limitations on the activities, functions or operations of such person; or

(iii) Bars such person from being associated with any entity or from participating in the offering of any penny stock;

(5) Is subject to any order of the Commission entered within five years before the filing of the information required by section 4A(b) of the Securities Act (15 U.S.C. 77d-1(b)) or such sale that, at the time of such filing or sale, orders the person to cease and desist from committing or causing a violation or future violation of:

(i) Any scienter-based anti-fraud provision of the Federal securities laws, including without limitation section 17(a)(1) of the Securities Act (15 U.S.C. 77q(a)(1)), section 10(b) of the Exchange Act (15 U.S.C. 78j(b)) and 17 CFR 240.10b-5, section 15(c)(1) of the Exchange Act (15 U.S.C. 78o(c)(1)) and section 206(1) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-6(1)) or any other rule or regulation thereunder; or

(ii) Section 5 of the Securities Act (15 U.S.C. 77e);

(6) Is suspended or expelled from membership in, or suspended or barred from association with a member of, a registered national securities exchange or a registered national or affiliated securities association for any act or omission to act constituting conduct inconsistent with just and equitable principles of trade;

(7) Has filed (as a registrant or issuer), or was or was named as an underwriter in, any registration statement or Regulation A (17 CFR 230.251 through 230.263) offering statement filed with the Commission that, within five years before the filing of the information required by section 4A(b) of the Securities Act (15 U.S.C. 77d-1(b)) or such sale, was the subject of a refusal order, stop order, or order suspending the Regulation A exemption, or is, at the time of such filing or sale, the subject of an investigation or proceeding to determine whether a stop order or suspension order should be issued; or

(8) Is subject to a United States Postal Service false representation order entered within five years before the filing of the information required by section 4A(b) of the Securities Act (15 U.S.C. 77d-1(b)) or such sale, or is, at the time of such filing or sale, subject to a temporary restraining order or preliminary injunction with respect to conduct alleged by the United States Postal Service to constitute a scheme or device for obtaining money or property through the mail by means of false representations.

*Instruction to paragraph (a):* With respect to any beneficial owner of 20 percent or more of the issuer's outstanding voting equity securities, calculated on the basis of voting power, the issuer is required to determine whether a disqualifying event has occurred only as of the time of filing of the offering statement and not from the time of such sale.

(b)  *Transition, waivers, reasonable care exception.* Paragraph (a) of this section shall not apply:

(1)  With respect to any conviction, order, judgment, decree, suspension, expulsion or bar that occurred or was issued before May 16, 2016;

(2)  Upon a showing of good cause and without prejudice to any other action by the Commission, if the Commission determines that it is not necessary under the circumstances that an exemption be denied;

(3)  If, before the filing of the information required by section 4A(b) of the Securities Act (15 U.S.C. 77d-1(b)) or such sale, the court or regulatory authority that entered the relevant order, judgment or decree advises in writing (whether contained in the relevant judgment, order or decree or separately to the Commission or its staff) that disqualification under paragraph (a) of this section should not arise as a consequence of such order, judgment or decree; or

(4)  If the issuer establishes that it did not know and, in the exercise of reasonable care, could not have known that a disqualification existed under paragraph (a) of this section.

*Instruction to paragraph (b)(4).* An issuer will not be able to establish that it has exercised reasonable care unless it has made, in light of the circumstances, factual inquiry into whether any disqualifications exist. The nature and scope of the factual inquiry will vary based on the facts and circumstances concerning, among other things, the issuer and the other offering participants.

(c)  *Affiliated issuers.* For purposes of paragraph (a) of this section, events relating to any affiliated issuer that occurred before the affiliation arose will be not considered disqualifying if the affiliated entity is not:

(1)  In control of the issuer; or

(2)  Under common control with the issuer by a third party that was in control of the affiliated entity at the time of such events.

(d)  *Intermediaries.* A person that is subject to a statutory disqualification as defined in section 3(a)(39) of the Exchange Act (15 U.S.C. 78c(a)(39)) may not act as, or be an associated person of, an intermediary in a transaction involving the offer or sale of securities in reliance on section 4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) unless so permitted pursuant to Commission rule or order.

*Instruction to paragraph (d).* § 240.17f-2 of this chapter generally requires the fingerprinting of every person who is a partner, director, officer or employee of a broker, subject to certain exceptions.

[80 FR 71537, Nov. 16, 2015, as amended at 86 FR 3592, Jan. 14, 2021]

## § 227.504 Definition of "qualified purchaser".

For purposes of section 18(b)(3) of the Securities Act [15 U.S.C. 77r(b)(3)], a "qualified purchaser" means any person to whom securities are offered or sold pursuant to an offering under §§ 227.100 through 227.504 (Regulation Crowdfunding).

*[86 FR 3593, Jan. 14, 2021]*

950 CMR:   OFFICE OF THE SECRETARY OF THE COMMONWEALTH

950 CMR 14.400:        GENERAL PROVISIONS

Section

14.401:   Definitions
14.402:   Exemptions
14.403:   Filing of Sales and Advertising Literature
14.404:   Misleading Filings
14.405:   Unlawful Representations Concerning Registration or Exemption
14.406:   Administration of Chapter
14.407:   Investigations and Subpoenas
14.407A:  Cease and Desist Orders
14.408:   Injunctions
14.409:   Criminal Penalties
14.410:   Civil Liabilities
14.411:   Judicial Review of Orders
14.412:   Rules, Forms, Orders and Hearings
14.413:   Nonpublic Records and Information

14.401:   Definitions

When used in M.G.L. c. 110A and 950 CMR 10.00 through 14.413, unless the context otherwise requires:

Act means M.G.L. c. 110A.

Agent includes every individual who represents or acts for a broker-dealer in effecting or attempting to effect transactions in securities, including any person who solicits transactions or new accounts, renders advice concerning the purchase or sale of securities to particular customers, executes trades for particular customers, or supervises any of the foregoing individuals.  Representation may be in the form of employment or independent contract and compensation may be in any form including hourly, salaried, transaction-based or based on assets under management.

Agent excludes:

(1)   an investment company employee who performs merely administrative duties in connection with the sale of that company's securities.

(2)   a lawyer, accountant, engineer or other professional adviser who engages in any activity set forth in M.G.L. c. 110A, § 401(b) incidental to the performance of professional services for his client and who receives no referral fee, finder's fee, commission or any part thereof, or similar transaction-based compensation either directly or indirectly.

(3)   An officer, director, partner, or limited liability company manager of an issuer who represents the issuer in effecting or attempting to effect purchases or sales of the issuer's securities, provided such person complies with the following conditions:

(a)   such person receives no commission or other compensation for or contingent upon the offering or sale of a security by such person;

(b)   such person is not subject to any disqualification set forth in 950 CMR 14.402(B)(9)(f) or Section 3(a)(39) of the Securities Exchange Act of 1934; and,

(c)   such person is in compliance with any applicable provisions of M.G.L. c. 110A and 950 CMR 10.00 through 14.413.

(4)   An individual who represents an issuer in effecting transactions in covered securities exempted by Section 18(b)(4)(D) of the Securities Act of 1933, as amended, provided the filing mandated by 950 CMR 14.402 with respect to the covered security has been timely made.

(5)   A person who represents a registered broker-dealer in effecting or attempting to effect transactions solely with or for a customer who is temporarily present in the Commonwealth, with whom the person had a *bona fide* business-customer relationship for at least 30 days before the customer entered the Commonwealth.

(6)   A person who represents an issuer in effecting transactions in any security, including a revenue obligation, issued or guaranteed by the Commonwealth or any political subdivision thereof or any agency or corporate or other instrumentality of one or more of the foregoing or any certificate of deposit for any of the foregoing.

950 CMR:   OFFICE OF THE SECRETARY OF THE COMMONWEALTH

14.401:  continued

Broker-dealer excludes:
(1)    private and institutional investors (including investment companies) effecting transactions as investors in their portfolio securities;
(2)  a lawyer, accountant, engineer, or other professional adviser who engages in any activity set forth in M.G.L. c. 110A, § 401(c) incidental to the performance of professional services for his client and who receives no referral fee, finder's fee, commission or any part thereof, or similar transaction-based compensation either directly or indirectly; and
(3)  an officer or employee of an issuer unless he receives remuneration directly or indirectly on account of purchases and sales of securities.
(4)   A person who has no office or other physical presence in the Commonwealth, and complies with the following conditions:
    (a)   Only effects or attempts to effect transactions in securities:
        1.  With or through the issuers of the securities involved in the transactions, broker-dealers, banks, saving institutions, trust companies, insurance companies, investment companies (as defined in the Investment Company Act of 1940), pension or profit-sharing trusts, or other financial institutions or institutional buyers, whether acting for themselves or as trustees;
        2.   During any period of 12 consecutive months, with or for fewer than five customers resident in the Commonwealth other than those listed in 950 CMR 14.401(C)(4)(a)1. and 4., each of whom had a *bona fide* business-customer relationship with the person for at least 30 days before the customer moved to the Commonwealth;
        3.  With or for a customer who is temporarily present in the Commonwealth, with whom the person had a *bona fide* business-customer relationship for at least 30 days before the customer entered the Commonwealth; or
        4.  With or for a person previously or currently resident in Canada who is present in the Commonwealth, whose transactions are solely in a self-directed tax advantaged retirement plan in Canada of which the person is the holder or contributor; and
    (b)   If the person is effecting transactions with customers described in 950 CMR 14.401(C)(4)(a)4., files a notice in the form of his current application required by the state, province or territory in which his head office is located and a consent to service of process;
    (c)  If the person is resident in Canada, is a member of a self-regulatory organization or stock exchange in his home jurisdiction;
    (d)   Maintains his registration in his home state, province or territory and his membership in a self-regulatory organization or stock exchange in good standing; and,
    (e)   Is not in violation of M.G.L. c. 110A, § 101 and all the rules promulgated thereunder.

Certified, when used in connection with financial statements, means certified by an independent public accountant in accordance with generally accepted accounting principles.

Commonwealth means The Commonwealth of Massachusetts.

Control, Controlling, Controlled By, and Under Common Control With means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

Corporation includes any corporation organized under the laws of the U.S., Canada, any state or territory of the U.S. and any Canadian province.  It shall also include any business entity registered as an investment company under the Investment Company Act of 1940, as amended, and any entity which has provisions in its chartering agreement which provide substantially similar protections to security holders with respect to the transactions at issue as provided by the state corporate laws of the jurisdiction where such entity is domiciled.

Director means the Director of the Securities Division.

Division means the Securities Division in the Office of the State Secretary.

**Add. 063**

950 CMR:   OFFICE OF THE SECRETARY OF THE COMMONWEALTH

14.401:  continued

Employee, as used in M.G.L. c. 110A, § 402(a)(11), includes an officer, director, trustee, independent contractors and consultants.

Federal Registration Statement means a registration statement filed under the Securities Act of 1933.

FINRA means the Financial Industry Regulatory Authority, Inc.

Institutional Buyer, as used in M.G.L. c. 110A, § 401(c) and M.G.L. c. 110A, § 402(b)(8), includes, but is not limited to, the following:
    (1)    a Small Business Investment Company licensed by the U.S. Small Business Administration under the Small Business Investment Act of 1958;
    (2)    a private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940;
    (3)    a Business Development Company as defined in Section 2(a)(48) of the Investment Company Act of 1940;
    (4)    an entity with total assets in excess of $5 million and which is either:
        (a)    a company (whether a corporation, a Massachusetts or similar business trust, partnership, limited liability company or limited liability partnership) not formed for the specific purpose of acquiring the securities offered; a substantial part of whose business activities consists of investing, purchasing, selling or trading in securities issued by others and whose investment decisions are made by persons who are reasonably believed by the seller to have such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of investment; or
        (b)    an organization described in Section 501(c)(3) of the Internal Revenue Code; and
    (5)    a Qualified Institutional Buyer as defined in 17 CFR 230.144A(a).

Investment Company Shares means securities issued by a face amount certificate company, or redeemable securities issued by an open-end management company or unit investment trust.

Investment Contract, as used in M.G.L. c. 110A, § 401(k), includes:
    (1)    any investment in a common enterprise with the expectation of profit to be derived through the essential managerial efforts of someone other than the investor.  As used in 950 CMR 14.401, a "common enterprise" means an enterprise in which the fortunes of the investor are interwoven with and dependent upon the efforts and successes of those seeking the investment or a third party; and
    (2)    any investment by which an offeree furnishes initial value to an offeror, and a portion of this initial value is subject to the risks of the enterprise, and the furnishing of the initial value is induced by the offeror's promises or representations which give rise to a reasonable understanding that a valuable benefit of some kind over and above the initial value will accrue to the offeree as a result of the operation of the enterprise, and the offeree does not receive the right to exercise practical and actual control over the management of the enterprise.

Merger includes:
    (1)  a transaction in which a subsidiary of the issuer is merged with another corporation; and
    (2)  the acquisition by a corporation of all or substantially all of the outstanding capital stock of another corporation pursuant to a plan of acquisition or similar procedure adopted and carried out in accordance with applicable state, federal or provincial law.

NASAA means North American Securities Administrators Association, Inc.

Officer means a president, vice-president, treasurer, secretary, clerk, managing member and any other person who performs for a broker-dealer or an issuer, whether incorporated or unincorporated, functions corresponding to those ordinarily performed by the foregoing.

14.401:   continued

Pension or Profit-sharing Trust, as used in M.G.L. c. 110A, § 401(c) and M.G.L. c. 110A, § 402(b)(8), includes the following:

(1)   any entity with total assets in excess of $5 million and which is:

(a)   an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA); or

(b)  a self-directed employee benefit plan within the meaning of ERISA, with investment decisions made by a person that is an accredited investor as defined in § 501(a) of SEC Regulation D (17 CFR 230.501(a)); or

(2)   any employee benefit plan within the meaning of ERISA with investment decisions made by a plan fiduciary, as defined in Section 2(21) of ERISA, which is either a bank, savings and loan association, insurance company or registered investment adviser; or

(3)     an employee benefit plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions.

Person includes a limited liability company and a limited liability partnership.

Principal means general or managing partner in the case of a partnership, officer in the case of a corporation, or trustee in the case of a business trust.

Registration Under Prior Law as used in St. 1972, c. 694, § 7, means filings of the Notice of Intention to Sell required by M.G.L. c. 110A, § 5 which St. 1972, c. 694, § 1 repealed.

Rule or Rules refers to 950 CMR 10.00 through 14.413.

SEC means the United States Securities and Exchange Commission.

Stockholders and Shareholders mean holders of shares, transferable certificates of participation, or other equity interests in any corporation.

14.402:   Exemptions

(A)(1)   For the purposes of M.G.L. c. 110A, § 402(a)(1) only, the term "other instrumentality" shall include any political subdivision of any state other than the Commonwealth.

(A)(2) through (7):  (Reserved)

(A)(8)   The Secretary specifies that a security listed or approved for listing upon notice of issuance on the following exchanges or markets qualifies for the exemption provided under M.G.L. c. 110A, § 402(a)(8): the New York Stock Exchange; the NYSE American LLC; National Market System of the Nasdaq Stock Market ("Nasdaq/NGM"); Tier I of the NYSE Arca, Inc.; Tier I of the NASDAQ PHLX LLC; the Chicago Board Options Exchange, Incorporated; the Nasdaq Capital Market; Tier I and Tier II of Bats BZX Exchange, Inc.; Investors Exchange LLC.; as well as options listed on Nasdaq ISE, LLC.

(A)(9):  (Reserved)

(A)(10)   To coordinate the interpretation and administration of M.G.L. c. 110A with related federal regulations, "commercial paper", a5s used in M.G.L. c. 110A, § 402(a)(10), includes prime quality negotiable commercial paper of a type not ordinarily purchased by the general public, that is, paper used to facilitate well recognized types of current operational business requirements and a type eligible for discounting by Federal Reserve Banks, as set forth in SEC Release No. 33-4412.

(A)(11)(a)  No notice pursuant to M.G.L. c. 110A, § 402(a)(11) need be given for the following:

14.402:   continued

      1.   an employees' benefit plan qualified under Section 401 of the Internal Revenue Code of 1986, as amended from time to time, or which does not permit voluntary contributions by participating employees;

      2.   Blue Cross, group life, wage continuation, medical reimbursement, or any other plan whose primary purpose is to insure employees against a specified risk or loss; or,

      3.   an investment contract otherwise exempt under M.G.L. c. 110A or 950 CMR 14.400.

  (b)   The notice that M.G.L. c. 110A, § 402(a)(11) requires is hereby waived.

  (Note: The Secretary has also adopted an exemption for employee compensatory arrangements under 950 CMR 14.402(B)(13)(a).)

((A)(12)   Reserved)

(B)    (1) (a)   Isolated, as used in M.G.L. c. 110A, § 402(b)(1), means not in the course of repeated and successive transactions of like character.  Two consecutive sales of securities made within such a period of time and in such circumstances as to indicate that they involve the same plan of financing or disposition are not isolated.

    (b)   Non-Issuer Transaction or Distribution, as used in M.G.L. c. 110A, § 402(b)(1) through (3), shall exclude:

      1.   a transaction or distribution by an officer, director or controlling person of the issuer if such transaction or distribution, when aggregated with others by such person during the preceding three months, exceeds the amount permitted to be sold under 17 CFR 230.144(e)(1); or

      2.   a transaction or distribution by a broker-dealer, acting either as principal or market-maker, in the security:

        (i)   for a period of six months following the issuer's initial public distribution of the security involved in the transaction or distribution; or

        (ii)   until the security becomes a federal covered security under section 18(b)(4)(A) of the Securities Act of 1933, as amended.

  (2) (a)   Recognized Securities Manual, as used in M.G.L. c. 110A, § 402(b)(2)(A), includes all manuals published by Standard & Poor's and Moody's, exclusively.

  The issuer must have at a minimum a profit and loss statement covering a full year of operations thus excluding start-up companies with less than 12 months of operations.  Anyone claiming an exemption under 950 CMR 14.402(B)(2)(a) shall bear the burden of showing that the financial statements meet the requirements of 950 CMR 14.402(B)(2)(a) and M.G.L. c. 110A.

    (b)   Registered under the Securities Exchange Act of 1934 shall exclude for purposes of M.G.L. c. 110A, § 402(b)(2)(C) any security made exempt from registration by 17 CFR 240.12g3-2(b)-(c).

  (3)   If the confirmation required by 950 CMR 14.402(B)(3) is conspicuously marked "Unsolicited Order," the customer need not acknowledge that the sale of a security exempt under M.G.L. c. 110A, § 402(b)(3) was unsolicited.  Otherwise, the customer purchasing such a security shall acknowledge in writing that the sale was unsolicited.  A broker-dealer shall preserve such acknowledgement in accordance with the record-keeping requirements of 950 CMR 12.200.  A registered broker-dealer will not be deemed to have solicited an order or offer to buy a security purchased by or through him, merely by reason of the publication of bid and offer quotations for that security in an inter-dealer quotation service or in the financial columns of newspapers.

((B)(4) through (8)   Reserved)

(B)    (9) (a)   In applying the exemption allowed under M.G.L. c. 110A, § 402(b)(9), only offers which are part of the same offering will be aggregated for purposes of calculating the limitations thereunder.  Offers which are exempt pursuant to 950 CMR 14.402(B)(13)(a) are deemed to be not part of the same offering for purposes of 950 CMR 14.402(B)(9)(a).  Note 1:  The following factors should be considered in determining if an offer is part of the same offering:

    1.   whether the offers are part of a single plan of financing;

    2.   whether the offers involve issuance of the same class of securities;

    3.   whether the offers have been made at or about the same time;

    4.   whether the same type of consideration is received; and

14.402:   continued

     5.   whether the offers are made for the same general purpose.

     Note 2:  Offers, other than those exempt under M.G.L. c. 110A, § 402(b)(8), which are part of the same offering, are aggregated to calculate the limitations contained in 950 CMR 14.402(B)(9)(a) even if such offers are exempt under other subsections of M.G.L. c. 110A, § 402(b).

(b)   If an offer is directed to more persons in The Commonwealth than permitted under M.G.L. c. 110A or 950 CMR 14.402(B)(9) during any period of twelve consecutive months, the exemption is not available as to all or any part of the offering or any transaction with respect thereto, unless the Director has before or after the offering is commenced, by order, increased the number of permitted offerees.

(c)   The exemption allowed under M.G.L. c. 110A, § 402(b)(9) shall not be available for any issuer transaction involving the following:

     1.   a security registered under the Securities Act of 1933, as amended; or

     2.   the public distribution of a security registered under the laws of another state.

(d)   A person offering or selling a security or effecting a transaction which is exempt from registration under M.G.L. c. 110A, § 402(a)(11), M.G.L. c. 110A, § 402(b)(9), or M.G.L. c. 110A, § 402(b)(11), shall preserve for three years following the completion of the offer and/or sale these records:

     1.   a copy of any required notice filed with the Secretary and all exhibits thereto;

     2.   a copy of all literature the issuer used to disclose the terms of the offer to offerees;

     3.   originals of all writings the issuer received and copies of all writings it sent relating to the offer, sale or transfer of the securities, including but not limited to purchase agreements and confirmations; and

     4.   a list of the names and addresses of persons to whom the securities were offered, setting forth next to each name the type and amount of such securities offered to each, the consideration paid or promised, the method of payment (cash, check, property, services, note, etc.), and the name of each person or persons representing the issuer in effecting the sale.   A registered broker-dealer who represented the person in the offer or sale of a security or in effecting a transaction which M.G.L. c. 110A, § 402(a)(11), M.G.L. c. 110A, § 402(b)(9), or M.G.L. c. 110A, § 402(b)(11) exempts may, in lieu of such person, preserve copies of the notice, as required hereby.

(e)   The exemption allowed under M.G.L. c. 110A, § 402(b)(9) shall not be available if the issuer or any person acting on its behalf offers or sells the securities by any form of general advertising, including, but not limited to, the following:

     1.   any advertisement, article, notice or other communication published in any newspaper, magazine, or similar media or broadcast over television or radio; and

     2.   any seminar or meeting whose attendees have been invited by any general advertising.

(f)   The exemption allowed under M.G.L. c. 110A, § 402(b)(9) shall not be available if the issuer or sponsor of the securities, any of its directors, executive officers, general partners or beneficial owners of ten percent or more of any class of its equity securities, any of its promoters currently connected with it in any capacity, any affiliates, or any person (other than a broker-dealer or agent currently registered under M.G.L. c. 110A, § 201) who has been or will be paid any commission, discount, fee or other remuneration, directly or indirectly, for soliciting any prospective purchaser of any security of the issuer or sponsor offered or sold to residents in The Commonwealth:

     1.   has filed a registration statement which is the subject of a currently effective registration stop order entered pursuant to any state's securities law within five years prior to the filing of the notice required under this exemption;

     2.   has been convicted within five years prior to the filing of the notice required under this exemption of any felony or misdemeanor in connection with the offer, purchase or sale of any security or any felony involving fraud or deceit, including but not limited to forgery, embezzlement, obtaining money under false pretenses, larceny or conspiracy to defraud;

14.402:   continued

3.   is currently subject to any state administrative enforcement order or judgment entered by that state's securities administrator within five years prior to the filing of the notice required under this exemption or is subject to any state's administrative enforcement order or judgment in which fraud or deceit, including but not limited to making untrue statements of material facts and omitting to state material facts, was found and the order or judgment was entered within five years prior to the filing of the notice required under this exemption;

4.   is subject to any state's administrative enforcement order or judgment which prohibits, denies or revokes the use of any exemption from registration in connection with the offer, purchase or sale of securities;

5.   is currently subject to any order, judgment, or decree of any court of competent jurisdiction temporarily or preliminarily restraining or enjoining, or is subject to any order, judgment or decree of any court of competent jurisdiction, permanently restraining or enjoining such party from engaging in or continuing any conduct or practice in connection with the purchase or sale of any security or involving the making of any false filing with the state entered within five years prior to the filing of the notice required under this exemption; or

6.   is disqualified from utilizing the exemption available under Regulation A of the SEC from registration under the Securities Act of 1933, as amended.

7.   The prohibition of 950 CMR 14.402(B)(9)(f)1., 2., 3., 4. and 5. shall not apply if the person subject to the disqualification is duly licensed or registered to conduct securities related business in the state in which the administrative order or judgment was entered against such person or if the broker-dealer employing such party is licensed or registered in the Commonwealth and the Form BD filed with the Commonwealth discloses the order, conviction, judgment or decree relating to such person. No person disqualified under 950 CMR 14.402(B)(9)(f) may act in a capacity other than that for which the person is licensed or registered.

8.   Any disqualification caused by 950 CMR 14.402(B)(9)(f) is automatically waived if the SEC, the state securities administrator or agency of the state which created the basis for disqualification, determines upon a showing of good cause that it is not necessary under the circumstances that the exemption be denied.

(g)   The notice required to be filed pursuant to M.G.L. c. 110A, § 402(b)(9)(B) shall contain the following information and documentation:

1.   the issuer's or sponsor's name, form of organization, address and telephone number;

2.   the identity of the person(s) who will be selling the securities in the Commonwealth (and in the case of such persons other than the issuer and its officers, partners and employees, describing their relationship with the issuer in connection with the transaction and the basis of their compliance with or exemption from the requirements of M.G.L. c. 110A, § 201) and describing any commissions, discounts, fees or other remuneration to be paid, directly or indirectly, to such person(s);

3.   a description of the securities to be sold;

4.   the anticipated aggregate dollar amount of the offering;

5.   the anticipated required minimum investment, if any, by each purchaser of the securities to be offered;

6.   a list of the states in which the securities are proposed to be sold;

7.   a statement by the offeror that, after reasonable inquiry, it believes that it is in compliance with 950 CMR 14.402(B)(9)(f);

8.   a copy of any written document or materials used or proposed to be used in connection with the offer and sale of the securities;

9.   if the issuer is not a corporation organized under the laws of the Commonwealth, a consent to service of process naming the Massachusetts Secretary of State as service agent using the Uniform Consent to Service of Process (Form U-2) signed by the issuer and acknowledged before a notary public or other similar officer and accompanied by a properly executed Corporate Resolution (Form U-2A), if applicable;

14.402:    continued

10.    a non-refundable filing fee in the following amount:

| Total Amount of Offering | Filing Fee |
| --- | --- |
| 0-$500,000 | $150 |
| Over $500,000-$2,000,000 | $250 |
| Over $2,000,000-$7,500,000 | $500 |
| Over $7,500,000 | $750 |

11.    additional information or documents which the Director may request.

Any notice which is in compliance with 950 CMR 14.402(B)(9)(g)1. through 11. for which a Form D has been filed will also be deemed to be a notice in compliance with 950 CMR 14.402(B)(13)(i)3. and will be deemed filed as of the date filed under 950 CMR 14.402(B)(9), if so requested by the offeror.  A notice on SEC Form D may be substituted for 950 CMR 14.402(B)(9)(g)1. through 7. if so requested by the offeror.

(h)    It shall be grounds for the Director to enter an order denying or revoking the exemption provided under 950 CMR 14.402(B)(13)(i) for a particular offering if a non-corporate issuer purports to exculpate, exonerate or indemnify against loss, its general partner(s), trustee(s) or other persons performing similar functions, any affiliate of the foregoing, or any broker-dealer selling the securities of such issuer, for violations of federal or state securities laws, or any other intentional or criminal wrongdoing.

(i)    For purposes of M.G.L. c. 110A, § 402(b)(9), if the number of offerees in Massachusetts in an offering exceeds 25, the number of offerees (other than those designated in M.G.L. c. 110A, § 402(b)(8)) permitted is hereby increased to the number to whom the offering is actually made by the offeror, provided the following conditions are met:

1.    the number of persons within the Commonwealth (other than those designated in M.G.L. c. 110A, § 402(b)(8)) to whom the securities are sold does not exceed ten;

2.    no commission, discount fee or other remuneration is paid directly or indirectly to any person for soliciting any purchaser in the Commonwealth (other than those designated in M.G.L. c. 110A, § 402(b)(8)) unless the person receiving such payment is appropriately registered as a broker-dealer or an agent; and

3.    neither the issuer nor any person acting on its behalf offers or sells the securities by any form of general solicitation.

(j)    For purposes of M.G.L. c. 110A, § 402(b)(9) and M.G.L. c. 110A, § 402(b)(11), Commission or Other Remuneration includes, but is not limited to, the following:

1.    any consideration received by any person other than a director, officer or employee, including any fee, discount, or commission, the total amount of which is based directly or indirectly on the number or size of transactions effected;

2.    any promotional interest (which is defined as any equity interest with a purchase price of less than 75% of the purchase price of the security being offered) in excess of 10% of the total of all securities of the issuer received either at the time of the sale of the interest being offered or in the preceding six month period; provided, however, that any such promotional interest which is subordinated to the return of the offeree's investment does not constitute a commission or other remuneration;

3.    any payment for goods or services (other than compensation paid for performing the duties of an officer, director or employee) anticipated to be received within the following 12 months which would exceed 10% of the total amount of the offering;

4.    any anticipated fee for goods or services which materially exceeds the expected fair market value of such goods or services when rendered;

5.    any salary or other compensation paid to a director, officer or employee who has as a principal part of his duties the solicitation of purchasers for the issuer's securities; provided, however, that any salary or other compensation paid to a director, officer or employee of the issuer for solicitation which is only an incidental function of such person's regular duties and for which such person receives no additional compensation, does not constitute a commission or other remuneration; and

6.    any fee paid to a person for finding or referring a prospective offeree.

14.402:   continued

       7.  Nothing contained herein shall preclude the offeror claiming this exemption from establishing that the remuneration listed above was wholly unrelated to soliciting sales within the Commonwealth.

    (k)  The requirement that the notice be filed at least five full business days before the initial offer in the Commonwealth as set forth in subsection (B) of M.G.L. c.110A, § 402(b)(9), is hereby waived for all types of securities.  The exemption allowed by M.G.L. c. 110A, § 402(b)(9) for offers in which payment of a commission or other remuneration is made, is not available unless a notice (as set forth in 950 CMR 14.402(B)(9)(g)) is filed with the Division no later than ten calendar days prior to the receipt of any consideration from, or the delivery of a subscription agreement by any purchaser which results from such offers.

    (l)  Any offer or sale of a security which is part of an offering or plan of financing which is in compliance with M.G.L. c. 110A, § 402(b)(9) and 950 CMR 14.402(B)(9) as in effect immediately prior to the date on which this Section takes effect, is exempt hereunder, provided that any such offer or sale is made within one year of such effective date.

    (m)  Any condition of M.G.L. c. 110A, § 402(b)(9) or any provision or condition in 950 CMR 14.402(B)(9) with respect to such Section may be waived by the Director upon a showing of cause.

  (B)    (10)  (Reserved)

  (B)    (11)  (a)  The notice required to be filed pursuant to M.G.L. c. 110A, § 402(b)(11) shall contain the following information and documentation:

       1.  the issuer's or sponsor's name, form of organization, address and telephone number;

       2.  the identity of the person(s) who will be selling the securities in this state (and in the case of such person(s) other than the issuer and its officers, partners and employees, describing their relationship with the issuer in connection with the transaction and the basis of their compliance with or exemption from the requirements of M.G.L. c. 110A, § 201) and describing any commissions, discounts, fees, or other remuneration to be paid, directly or indirectly, to such person(s);

       3.  a description of the securities to be sold;

       4.  the anticipated aggregate dollar amount of the offering;

       5.  the anticipated required minimum investment, if any, by each purchaser of the securities to be offered;

       6.  a list of the states in which the securities are proposed to be sold;

       7.  a copy of any written document or materials used or proposed to be used in connection with the offer and sale of the securities;

       8.  a consent to service of process naming the Massachusetts Secretary of State as service agent using the Uniform Consent to Service of Process (Form U-2) signed by the issuer and acknowledged before a notary public or other similar officer and accompanied by a properly executed Corporate Resolution (Form U-2A), if applicable; and

       9.  a non-refundable filing fee in the amount of $100, payable to the Commonwealth of Massachusetts.

    (b)  <u>Transferable warrants exercisable within not more than 90 days of their issuance</u> refers solely to such warrants which become exercisable and expire during such 90-day period.

    (c)  A copy of a registration statement designated by the U.S. Securities and Exchange Commission as Form F-7 and accompanied by the items listed under 950 CMR 14.402(B)(11)(a)8. and 9. may be substituted for the notice required under 950 CMR 14.402(B)(11)(a).

  (B)    (12)  (Reserved)

**Add. 070**

14.402:  continued

(B) (13)  Pursuant to M.G.L. c. 110A, § 402(b)(13), the Secretary finds that registration of the following is not necessary or appropriate in the public interest or for the protection of investors:

(a)  <u>Compensatory Arrangements.</u>  An offer or sale of a security issued in connection with a stock purchase, savings, option, profit-sharing, pension or similar employee benefit plan, provided the offeror is in compliance with the following conditions:

1.  The issuer, parent corporation or any of its majority-owned subsidiaries offers or sells the security pursuant to a written benefit plan and/or written agreement relating to the compensation of the buyer; and

2.  The offer or sale is in compliance with any applicable federal securities law.

For purposes of 950 CMR 14.402(B)(13)(a) the term "employee" shall include an officer, director, trustee, independent contractors and consultants.

(Note: There is also an exemption for the issuance of securities in connection with an employee benefit plan under M.G.L. c. 110A, § 402(a)(11).)

(b)  <u>Put or Call Contracts.</u>  An offer or sale of a put or call contract, provided that the put or call contract is:

1.  endorsed and its performance guaranteed by a broker-dealer registered with the SEC; or

issued by the Options Clearing Corporation (OCC) pursuant to a registration statement filed by the OCC with the SEC; and

2.  the put or call contract is listed or quoted on the NASDAQ Global Market; or the underlying security to which it relates is exempt under M.G.L. c. 110A, § 402(a)(8); or the underlying security to which it relates is registered under Section 12(g) of the Securities Exchange Act of 1934.

(c)  <u>Cooperative Associations.</u>  An offer or sale of a security, including a patronage refund certificate, issued by EITHER:

1.  a cooperative association as defined in the Agricultural Marketing Act (1929), 12  USC § 114j (1982); or

a federation of such cooperative associations that possesses no greater powers or purposes than cooperative associations as defined in the Agricultural Marketing Act (1929), 12 U.S.C. § 113j (1982), if:

a. the security qualifies its holder for membership in the cooperative association or federation (or in the case of a patronage refund certificate is issuable only to members); and

b. the security is transferable only to the issuer, or a successor in interest of the transferor that qualifies for membership in the cooperative association or federation; or

2.  a mutual or cooperative organization that deals in commodities, or supplies related services in transactions primarily with and for the benefit of its members, if:

a. the security is part of a class issuable only to persons who deal in commodities with, or obtain services from, the issuers; and

b. the security is transferable only to the issuer or a successor in interest of the transferor; and

c. no dividends, other than patronage refunds are payable to holders of the security, except on a complete or partial liquidation; or

3.  a cooperative housing corporation described in Section 216(b)(1) of the Internal Revenue Code of 1986, if its activities are limited to the ownership, leasing, management or construction of residential properties of its members and activities incidental thereto.

((d)  Reserved)

(e)  <u>Bankruptcy.</u>  An offer or sale of a security specifically exempt from state securities laws under USC Title 11.

950 CMR:   OFFICE OF THE SECRETARY OF THE COMMONWEALTH

14.402:   continued

(f)  <u>Pooled Income Funds</u>.  An offer or sale of an interest in a trust that Section 642(c)(5) of the Internal Revenue Code of 1986, defines as a "pooled income fund."  The issuer of such an interest includes the fund itself and the public charity which establishes and maintains it.

(g)  <u>Commodity Contracts</u>.  An offer or sale of commodity contracts, provided this exemption does not include an offer or sale of options to buy or sell commodity contracts which confer on the purchaser, in return for a cash payment, the right, within a stated period of time, to purchase or sell a stated contract in a particular commodity, except to the extent that Section 2(a)(1) of the Commodity Exchange Act grants to the Commodity Futures Trading Commission exclusive jurisdiction with respect to such options.

(h)  <u>NASDAQ Global Market</u>.  An offer or sale of a security designated or approved for designation upon notice of issuance on the NASDAQ Global Market, or any other security of the same issuer which is of senior or substantially equal rank, any security called for by subscription rights or warrants so designated or approved, or any warrant or right to purchase or subscribe to any of the foregoing.

(i)  <u>Massachusetts Uniform Limited Offering Exemption</u>.  (<u>Reserved</u>)

950 CMR:   OFFICE OF THE SECRETARY OF THE COMMONWEALTH

NON-TEXT PAGE

950 CMR:   OFFICE OF THE SECRETARY OF THE COMMONWEALTH

14.402:   continued

(j) <u>MJDS</u>. Any non-issuer transaction, whether or not effected through a broker-dealer, involving any class of an issuer's security where the issuer has filed a registration statement with the U.S. Securities and Exchange Commission (SEC) on Form F-8, F-9 or F-10 which has been declared effective by the SEC.

(k) <u>Solicitations of Interest Prior to the Filing of the Registration Statement</u>.

1.   An offer, but not a sale, of a security made by or on behalf of an issuer for the sole purpose of soliciting an indication of interest in receiving a prospectus (or its equivalent) for such security is exempt from M.G.L. c. 110A, § 301 if all of the following conditions are satisfied:

14.402:   continued

a.   The issuer is or will be a business entity organized under the laws of one of the states or possessions of the United States or one of the provinces or territories of Canada, is engaged in or proposes to engage in a business other than petroleum exploration or production or mining or other extractive industries and is not a "blind pool" offering or other offering for which the specific business or properties cannot now be described.

b.   The offerer intends to register the security in the Commonwealth, or offer the security pursuant to the exemption from registration available under M.G.L. c. 110A, § 402(a)(8).

c.   Ten business days prior to the initial solicitation of interest under 950 CMR 14.402(B)(13)(k), the offerer files with the Director a Solicitation of Interest Form along with any other materials to be used to conduct solicitations of interest, including, but not limited to, the script of any broadcast to be made and a copy of any notice to be published.

d.   Five business days prior to usage, the offerer files with the Director any amendments to the foregoing materials or additional materials to be used to conduct solicitations of interest, except for materials provided to a particular offeree pursuant to a request by that offeree.

e.   No Solicitation of Interest Form, script, advertisement or other material which the offerer has been notified by the Director not to distribute is used to solicit indications of interest.

f.   Except for scripted broadcasts and published notices, the offerer does not communicate with any offeree about the contemplated offering unless the offeree is provided with the most current Solicitation of Interest Form at or before the time of the communication or within five days from the communication.

g.   During the solicitation of interest period, the offerer does not solicit or accept money or a commitment to purchase securities.

h.   No sale is made until seven days after delivery to the purchaser of a final prospectus, or in those instances in which delivery of a preliminary prospectus is allowed hereunder, a preliminary prospectus.

i.   The offerer does not know, and in the exercise of reasonable care, could not know that the issuer or any of the issuer's officers, directors, 10% shareholders or promoters:

i.   Has filed a registration statement which is the subject of a currently effective registration stop order entered pursuant to any federal or state securities law within five years prior to the filing of the Solicitation of Interest Form.

ii.   Has been convicted within five years prior to the filing of the Solicitation of Interest Form of any felony or misdemeanor in connection with the offer, purchase or sale of any security or any felony involving fraud or deceit, including, but not limited to, forgery, embezzlement, obtaining money under false pretenses, larceny, or conspiracy to defraud.

iii.   Is currently subject to any federal or state administrative enforcement order or judgment entered by any state securities administrator or the Securities and Exchange Commission within five years prior to the filing of the Solicitation of Interest Form or is subject to any federal or state administrative enforcement order or judgment entered within five years prior to the filing of the Solicitation of Interest Form in which fraud or deceit, including, but not limited to, making untrue statements of material facts and omitting to state material facts, was found.

iv.   Is subject to any federal or state administrative enforcement order or judgment which prohibits, denies, or revokes the use of any exemption from registration in connection with the offer, purchase or sale of securities.

14.402:   continued

v.   Is currently subject to any order, judgment, or decree of any court of competent jurisdiction temporarily or preliminarily restraining or enjoining, or is subject to any order, judgment or decree of any court of competent jurisdiction, permanently restraining or enjoining, such party from engaging in or continuing any conduct or practice in connection with the purchase or sale of any security or involving the making of any false filing with the state entered within five years prior to the filing of the Solicitation of Interest Form.

The prohibitions listed above shall not apply if the person subject to the disqualification is duly licensed or registered to conduct securities related business in the state in which the administrative order or judgment was entered against such person or if the broker/dealer employing such party is licensed or registered in this state and the Form B-D filed with this state discloses the order, conviction, judgment or decree relating to such person.  No person disqualified under this subsection may act in a capacity other than that for which the person is licensed or registered.  Any disqualification caused by this section is automatically waived if the agency which created the basis for disqualification determines upon a showing of good cause that it is not necessary under the circumstances that the exemption be denied.

2.   A failure to comply with any condition of 950 CMR 14.402(B)(13)(k)1. will not result in the loss of the exemption from the requirements of M.G.L. c. 110A, § 301 for any offer to a particular individual or entity if the offerer shows:

a.  the failure to comply did not pertain to a condition directly intended to protect that particular individual or entity; and

b.  the failure to comply was insignificant with respect to the offering as a whole; and

c.  a good faith and reasonable attempt was made to comply with all applicable conditions of 950 CMR 14.402(B)(13)(k)1..

Where an exemption is established only through reliance upon 950 CMR 14.402(B)(13)(k)2., the failure to comply shall nonetheless be a violation of M.G.L. c. 110A by the Secretary under M.G.L. c. 110A, §§ 407A and 408 and constitute grounds for denying or revoking the exemption as to a specific security or transaction.

3.   The offerer shall comply with the requirements set forth in 950 CMR 14.402(B)(13)(k)3..  Failure to comply will not result in the loss of the exemption from the requirements of M.G.L. c. 110A, § 301, but shall be a violation of M.G.L. c. 110A, be actionable by the Secretary under M.G.L. c. 110A, §§ 407A and 408, and constitute grounds for denying or revoking the exemption as to a specific security or transaction.

a.  Any published notice or script for broadcast  must contain at least the identity of the chief executive officer of the issuer, a brief and general description of its business and products, and the following legends:

i.  NO MONEY OR OTHER CONSIDERATION IS BEING SOLICITED AND NONE WILL BE ACCEPTED;

ii.   NO SALES OF THE SECURITIES WILL BE MADE OR COMMITMENT TO PURCHASE ACCEPTED UNTIL DELIVERY OF AN OFFERING CIRCULAR THAT INCLUDES COMPLETE INFORMATION ABOUT THE ISSUER AND THE OFFERING;

iii.   AN INDICATION OF INTEREST MADE BY A PROSPECTIVE INVESTOR INVOLVES NO OBLIGATION OR COMMITMENT OF ANY KIND; and

iv.   THIS OFFER IS BEING MADE PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE FEDERAL AND STATE SECURITIES LAWS. NO SALE MAY BE MADE UNTIL THE OFFERING STATEMENT IS QUALIFIED BY THE SEC AND IS REGISTERED IN THIS STATE.

14.402:   continued

> b. All communications with prospective investors made in reliance on 950 CMR 14.402(B)(13)(k) must cease after a registration statement is filed in this state, and no sale may be made   until at least 20 calendar days after the last communication made in reliance on 950 CMR 14.402(B)(13)(k).
>
> c. A preliminary prospectus (or its equivalent) may only be used in connection with an offering for which indications of interest have been solicited under 950 CMR 14.402(B)(13)(k) if the offering is conducted by a registered broker-dealer.
>
> 4.   The Director may waive any condition of the exemption in 950 CMR 14.402(B)(13)(k) in writing, upon application by the offerer and cause having been shown.   Neither compliance nor attempted compliance with 950 CMR 14.402(B)(13)(k), nor the absence of any objection or order by the Director with respect to any offer of securities undertaken pursuant to 950 CMR 14.402(B)(13)(k), shall be deemed to be a waiver of any condition of the rule or deemed to be a confirmation by the Director of the availability of 950 CMR 14.402(B)(13)(k).
>
> 5.   Offers made in reliance on 950 CMR 14.402(B)(13)(k) will not result in a violation of M.G.L. c. 110A, § 301 by virtue of being integrated with subsequent offers or sales of securities unless such subsequent offers and sales would be integrated under federal securities laws.
>
> 6.   Issuers on whose behalf indications of interest are solicited under 950 CMR 14.402(B)(13)(k) may not make offers or sales in reliance on M.G.L. c. 110A, § 402(b)(9) or 950 CMR 14.402(B)(13)(i) until six months after the last communication with a prospective investor made pursuant to 950 CMR 14.402(B)(13)(k).

COMMENTS:

1.   All communications made in reliance on 950 CMR 14.402(B)(13)(k) are subject to the anti-fraud provisions of M.G.L. c. 110A.

2.   The Division may or may not review the materials filed pursuant to 950 CMR 14.402(B)(13)(k).   Materials filed, if reviewed, will be judged under anti-fraud principles.   Any discussion in the offering documents of the potential rewards of the investment must be balanced by a discussion of possible risks.

3.   Any offer effected in violation of 950 CMR 14.402(B)(13)(k) may constitute an unlawful offer of an unregistered security for which civil liability attaches under M.G.L. c. 110A, § 410.   Likewise any misrepresentation or omission may give rise to civil liability.   Under M.G.L. c. 110A, the Uniform Securities Act, a subsequent registration of the security for the sale of the security does not "cure" the previous unlawful offer.   Only a rescission offer made in accordance with the provisions of M.G.L. c. 110A can accomplish such a "cure".   *See* commentary under M.G.L. c. 410, § 410.

-------------------------------------------------------

Form to be used when using the exemption found in 950 CMR 14.402(B)(13)(k):

NOTE TO USERS:  The following form sets forth the minimum informational requirement for soliciting indications of interest under federal and state securities laws.  You may include additional information if you think it necessary or desirable.  Remember that any discussion in this document is subject to the anti-fraud provisions of the federal and state securities laws and must thereby be complete.  Also, any discussion of potential rewards of the proposed investment must be balanced by a discussion of possible risks.  You may alter the graphic presentation of the form in any way as long as the minimum information is clearly presented.

950 CMR:   OFFICE OF THE SECRETARY OF THE COMMONWEALTH

14.402:   continued

SOLICITATION OF INTEREST FORM

_____
NAME OF COMPANY

Street Address of Principal Office:

Company Telephone Number:

Date of Organization:

Amount of the Proposed Offering: _____

Name of Chief Executive Officer: _____

THIS IS A SOLICITATION OF INTEREST ONLY.   NO MONEY OR OTHER CONSIDERATION IS BEING SOLICITED AND NONE WILL BE ACCEPTED.

NO SALES OF THE SECURITIES WILL BE MADE OR COMMITMENT TO PURCHASE ACCEPTED UNTIL THE DELIVERY OF A FINAL OFFERING CIRCULAR THAT INCLUDES COMPLETE INFORMATION ABOUT THE ISSUER AND THE OFFERING.

AN INDICATION OF INTEREST MADE BY A PROSPECTIVE INVESTOR INVOLVES NO OBLIGATION OR COMMITMENT OF ANY KIND.

THIS OFFER IS BEING MADE PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE FEDERAL AND STATE SECURITIES LAWS.  NO SALE MAY BE MADE UNTIL THE OFFERING STATEMENT IS QUALIFIED BY THE SEC AND IS REGISTERED IN THIS STATE.

This Company:
    ( )     Has never conducted business operations.
    ( )     Is in the development stage.
    ( )     Is currently conducting operations.
    ( )     Has shown a profit for the last fiscal year.
    ( )     Other (specify) _____.

BUSINESS:
1.    Describe in general what business the company does or proposes to do, including what products or goods are or will be produced or services that are or will be rendered.
2.    Describe in general how these products or services are to be produced or rendered and how and when the company intends to carry out its activities.

OFFERING PROCEEDS:

3.    Describe in general how the company intends to use the proceeds of the proposed offering.

KEY PERSONNEL OF THE COMPANY:
4.    Provide the following information for all officers and directors or persons occupying similar positions:

    Name, Title, Office Street Address, Telephone Number, Employment History (Employers, titles and dates of positions held during the past five years), and Education (degrees, schools and dates).

(end of form)

**Add. 078**

14.402:   continued

(l)  <u>Transactions Under Rule 506 - Filing Requirements.</u> Any offer or sale of a security offered or sold in compliance with the Securities Act of 1933, Regulation D, Rule 506 (17 CFR 230.506), and that satisfies the following further conditions:

1.  Within 15-calendar days after the first sale in the Commonwealth, a notice on SEC Form D (17 CFR 239.500) is filed with the Division, together with;

2.  A consent to service of process on Form U-2 (with Form U-2A, if applicable) naming the Secretary; and

3.  A non-refundable filing fee, payable to The Commonwealth of Massachusetts, in the amount as follows:

| Total Amount of Offering | Filing Fee |
|---|---|
| 0 - $2,000,000 | $250 |
| Over $2,000,000 - $7,500,000 | $500 |
| Over $7,500,000 | $750. |

(m)  <u>Internet Offers.</u>  An offer, but not a sale, of a security communicated through proprietary or "common carrier" electronic delivery systems, Internet and the World Wide Web or a similar medium; provided that such offers are not directed specifically toward any investor or group of investors in the Commonwealth and no sales are made in the Commonwealth unless the securities are registered or exempt from registration under M.G.L. c. 110A and 950 CMR 14.400.  If an offer made hereunder contains indications that the offer is not being made in jurisdictions where it is not registered or appropriately exempted, then it will be presumed that this offer is not being specifically directed to prospective investors in the Commonwealth.

(n)  <u>Certain Canadian Securities.</u>  An offer or sale of a security in a transaction effected by a person located in Canada who is excluded from the definition of broker-dealer under 950 CMR 14.401(C)(4).

(o)  <u>Massachusetts Crowdfunding Exemption.</u>  An offer or sale of a security meeting the following requirements:

1.  The issuer is a business entity:

   a.  Formed under the laws of the Commonwealth;

   b.  Having its principal place of business in the Commonwealth; and

   c.  Authorized to do business in the Commonwealth.

2.  The offering is sold only to residents of the Commonwealth in compliance with the requirements of § 3(a)(11) of the Securities Act of 1933 (15 U.S.C. § 77c(a)(11)) or SEC Rule 147 or 147A (17 C.F.R. 230.147 or 230.147A);

3.  The securities offered and sold pursuant to 950 CMR 14.402(B)(13)(o) are equity or debt securities of the issuer.

4.  The sum of all cash and other consideration to be received for all securities sold in reliance upon the exemption provided under 950 CMR 14.402(B)(13)(o) shall not exceed:

   a.  $1,000,000, if the issuer has not undergone and made available to each prospective investor and the Secretary the documentation resulting from a financial audit with respect to its most recently completed fiscal year and meeting generally accepted accounting principles; or

   b.  $2,000,000, if the issuer has undergone and made available to each prospective investor and the Secretary the documentation resulting from a financial audit with respect to its most recently completed fiscal year and meeting generally accepted accounting principles.

An offer or sale to an officer, director, partner, trustee, person owning 10% or more of outstanding shares of the issuer or a person occupying similar status with respect to the issuer shall not be subject to the limitation in 950 CMR 14.402(B)(13)(o)4.

5.  The aggregate amount of securities sold to any investor by an issuer in reliance on 950 CMR 14.402(B)(13)(o) shall not exceed the greater of:

   a.  $2,000 or 5% of annual income or net worth of the investor, whichever is greater, if both the annual income and net worth are less than $100,000; and

14.402:   continued

    b.  10% of annual income or net worth of the investor, whichever is greater (not to exceed an amount sold of $100,000) if either the annual income or net worth of the investor is equal to or more than $100,000;

    <u>Note</u>: To determine the investment limit for a natural person, the person's annual income and net worth shall be calculated as those values are calculated for purposes of determining accredited investor status in accordance with Rule 501 of SEC Regulation D, 17 CFR 230.501.  The person's annual income or net worth shall come within the levels described in 950 CMR 14.402(B)(13)(o)5. or the issuer shall reasonably believe that such person's annual income or net worth comes within such levels; the issuer shall take reasonable steps to verify such information.  The person's annual income and net worth may be calculated jointly with the annual income and net worth of the person's spouse.

6.  The issuer shall not, before or as a result of the offering, be:

    a.  An investment company as defined by 15 U.S.C. § 80a-3;

    b.  A hedge fund, commodity pool, or similar investment vehicle;

    c.  Subject to the reporting requirements of the Securities Exchange Act of 1934;  d.  A development stage company without a specific business plan or purpose, or which has indicated that its business is to engage in a merger or acquisition with an unidentified company or companies, or other unidentified entities or persons, or without an allocation of proceeds to sufficiently identifiable properties or objectives (*i.e*., "blind pool" or "blank check" offerings); or

    e.  A business involving petroleum exploration or production, mining, or other extractive industries.

7.  No commission, fee, or other remuneration shall be paid or given, directly or indirectly, to any person for soliciting any prospective purchaser for a transaction in reliance upon the exemption provided by 950 CMR 14.402(B)(13)(o) unless such person is registered as a broker-dealer or agent under Securities Exchange Act of 1934.

8.  The issuer shall establish a minimum offering amount, which shall be set at a level that the issuer's board or other governing body reasonably believes is sufficient to implement the plan of business disclosed in the offering materials.  Such minimum offering amount shall be no less than 30% of the maximum offering amount set by the issuer and disclosed in the offering materials.

9.  The issuer shall place all funds received from investors in an escrow account at an insured bank or depository institution authorized to do business in the Commonwealth.  Such funds shall be released from escrow when the minimum offering amount is met.   If the minimum offering amount is not met within one year of the earlier of the commencement of the offering or the first posting of the offering on the internet, the issuer shall return all funds to investors.

10. a.  The exemption under 950 CMR 14.402(B)(13)(o) shall not be available if the issuer; any predecessor of the issuer; any affiliated issuer; any director, executive officer, other officer participating in the offering, general partner, or managing member of the issuer; any beneficial owner of 20% or more of the issuer's outstanding voting equity securities, calculated on the basis of voting power; any promoter connected with the issuer in any capacity at the time of making an exemption filing under 950 CMR 14.402(B)(13)(o); any person that has been or will be paid (directly or indirectly) remuneration for solicitation of purchasers in connection with the offering of securities; or any director, executive officer or other officer participating in the offering of any such solicitor, general partner, or managing member of such solicitor:

    i.  Has been convicted, within ten years before making an exemption filing under 950 CMR 14.402(B)(13)(o) or five years, in the case of issuers, their predecessors, and affiliated issuers, of any felony or misdemeanor:

    (i)  In connection with the purchase or sale of any security;

    (ii)  Involving the making of any false filing with the Securities and Exchange Commission or a state securities commission (or an agency or officer of a state performing like functions); or

    (iii)  Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser, or paid solicitor of purchasers of securities;

14.402:    continued

b.    Is subject to any order, judgment or decree of any court of competent jurisdiction, entered within five years before making an exemption filing under 950 CMR 14.402(B)(13)(o), that, at the time of filing, restrains or enjoins such person from engaging or continuing to engage in any conduct or practice:

    i.    In connection with the purchase or sale of any security;

    ii.    Involving the making of any false filing with the Securities and Exchange Commission or a state securities commission (or an agency or officer of a state performing like functions); or

    iii.    Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser, or paid solicitor of purchasers of securities;

c.    Is subject to a final order of a state securities commission (or an agency or officer of a state performing like functions); a state authority that supervises or examines banks, savings associations, or credit unions; a state insurance commission (or an agency or officer of a state performing like functions); an appropriate federal banking agency; the U.S. Commodity Futures Trading Commission; or the National Credit Union Administration that:

    i.    At the time of making an exemption filing under 950 CMR 14.402(B)(13)(o), bars the person from:

      (i)    Association with an entity regulated by such commission, authority, agency, or officer;

      (ii)    Engaging in the business of securities, insurance or banking; or

      (iii)    Engaging in savings association or credit union activities; or

    ii.    Constitutes a final order based on a violation of any law or regulation that prohibits fraudulent, manipulative, or deceptive conduct entered within ten years before making an exemption filing under 950 CMR 14.402(B)(13)(o);

d.    Has filed a registration statement which is the subject of a currently effective registration stop order entered pursuant to the Massachusetts Uniform Securities Act, M.G.L. c.110A, or any other state's securities law, within five years prior to making an exemption filing for an offering under 950 CMR 14.402(B)(13)(o);

e.    Is currently subject to any state administrative enforcement order or judgment entered by the Secretary or any other state's securities administrator within five years prior to making an exemption filing for an offering under 950 CMR 14.402(B)(13)(o) or is subject to any state's administrative enforcement order or judgment in which fraud or deceit including, but not limited to, making untrue statements of material facts and omitting to state material facts, was found and the order or judgment was entered within five years prior to making an exemption filing for an offering under 950 CMR 14.402(B)(13)(o);

f.    Is subject to an order of the Securities and Exchange Commission entered pursuant to § 15(b) or 15B(c) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(b) or 78o-4(c)) or § 203(e) or (f) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-3 (e) or (f)) that, at the time of making an exemption filing under 950 CMR 14.402(B)(13)(o):

    i.    Suspends or revokes such person's registration as a broker, dealer, municipal securities dealer or investment adviser;

    ii.    Places limitations on the activities, functions or operations of such person; or

    iii.    Bars such person from being associated with any entity or from participating in the offering of any penny stock;

g.    Is subject to any order of the Securities and Exchange Commission entered within five years before making an exemption filing under 950 CMR 14.402(B)(13)(o) that, at the time of filing, orders the person to cease and desist from committing or causing a violation or future violation of:

    i.    Any scienter-based anti-fraud provision of the federal securities laws, including without limitation § 17(a)(1) of the Securities Act of 1933 (15 U.S.C. 77q(a)(1)), § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) and 17 C.F.R. 240.10b-5, § 15(c)(1) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(c)(1)) and § 206(1) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-6(1)), or any other rule or regulation thereunder; or

14.402:   continued

  ii. § 5 of the Securities Act of 1933 (15 U.S.C. 77e).

h. Is suspended or expelled from membership in, or suspended or barred from association with a member of, a registered national securities exchange or a registered national or affiliated securities association for any act or omission to act constituting conduct inconsistent with just and equitable principles of trade;

i. Has filed (as a registrant or issuer), or was named as an underwriter in, any registration statement or Regulation A offering statement filed with the Securities and Exchange Commission that, within five years before such sale, was the subject of a refusal order, stop order, or order suspending the Regulation A exemption, or is, at the time of such sale, the subject of an investigation or proceeding to determine whether a stop order or suspension order should be issued; or

j. Is subject to a United States Postal Service false representation order entered within five years before the making of an exemption filing under 950 CMR 14.402(B)(13)(o), or is, at the time of such filing, subject to a temporary restraining order or preliminary injunction with respect to conduct alleged by the United States Postal Service to constitute a scheme or device for obtaining money or property through the mail by means of false representations.

k. For purposes of 950 CMR 14.402(B)(13)(o)10.a., "final order" shall mean a written directive or declaratory statement issued by a federal or state agency described in 950 CMR 14.402(B)(13)(o)10.c. under applicable statutory authority that provides for notice and an opportunity for hearing, which constitutes a final disposition or action by that federal or state agency.

l. 950 CMR 14.402(B)(13)(o)10.a. shall not apply:

  i. Upon a showing of good cause and without prejudice to any other action by the Secretary, if the Secretary determines that it is not necessary under the circumstances that an exemption be denied;

  ii. If, before the relevant filing, the court or regulatory authority that entered the relevant order, judgment or decree advises in writing (whether contained in the relevant judgment, order or decree or separately to the Secretary or his staff) that disqualification under 950 CMR 14.402(B)(13)(o)10.a. should not arise as a consequence of such order, judgment, or decree; or

  iii. If the issuer establishes that it did not know and, in the exercise of reasonable care, could not have known that a disqualification existed under 950 CMR 14.402(B)(13)(o)10.a. An issuer will not be able to establish that it has exercised reasonable care unless it has made, in light of the circumstances, factual inquiry into whether any disqualifications exist. The nature and scope of the factual inquiry will vary based on the facts and circumstances concerning, among other things, the issuer and the other offering participants.

m. For purposes of 950 CMR 14.402(B)(13)(o)10.a., events relating to any affiliated issuer that occurred before the affiliation arose will be not considered disqualifying if the affiliated entity is not:

  i. In control of the issuer; or

  ii. Under common control with the issuer by a third party that was in control of the affiliated entity at the time of such event.

11. The issuer shall disclose to each prospective purchaser all of the following:

a. A description of the issuer and its business, and the address, telephone number, and website address of its principal office;

b. A description of the intended use of the offering proceeds;

c. A description of any current or pending litigation, legal proceedings, or pending regulatory action involving the issuer or its management;

d. The identity of all persons owning 10% or more of the ownership interests of any class of securities of the issuer;

e. The identity of the executive officers, directors, managing members, and other persons occupying a similar status or performing functions in the name of and on behalf of the issuer;

14.402:    continued

f.    The identity of any person who has been or will be retained by the issuer to assist the issuer in conducting the offer and sale of securities, including any Internet web site operator but excluding persons acting solely as accountants or attorneys, and employees whose primary responsibilities involve the operating business of the issuer rather than assisting the issuer in raising capital;

g.    The names and addresses of each Internet web site that will be used by the issuer to offer or sell securities under 950 CMR 14.402(B)(13)(o); and

h.    Any additional information material to the offering, including, if appropriate, a discussion of significant factors that make the offering speculative or of high risk.

Note: The issuer is required to provide full and fair disclosure to offerees and investors of all material facts relating to the issuer and the securities being offered, in accordance with M.G.L. c.110A, § 101.

12.    Among other risk disclosures, the issuer must provide the substance of the following disclosures to all prospective purchasers and investors:

a.    There is no ready market for the sale of the securities acquired in this offering; it may be difficult or impossible for an investor to sell or otherwise dispose of this investment. An investor may be required to hold and bear the financial risks of this investment indefinitely.

b.    The securities have not been registered under federal or state securities laws and, therefore, cannot be resold unless the securities are registered or qualify for an exemption from registration under federal and state law.

c.    In making an investment decision, investors must rely on their own examination of the issuer and the terms of the offering, including the merits and risks involved.

d.    No federal or state securities commission or regulatory authority has confirmed the accuracy or determined the adequacy of the disclosures provided.

Note: Since 950 CMR 14.402(B)(13)(o) requires that the offering be in compliance with SEC Rule 147 or 147A, the issuer must also provide written disclosures concerning the limitations on resale of the securities contained in SEC Rule 147(e) and (f) or 147A(e) and (f), (17 CFR § 230.147 or 230.147A). Additionally, an issuer must place a required legend disclosing such limitations on resale on the securities certificate or other document evidencing the securities issued in the offering.

13.    The exemption provided under 950 CMR 14.402(B)(13)(o) shall be effective for up to 12 months, subject to annual renewal.

14.    Upon the first to occur of:

a.    the completion of the offering;

b.    the termination of the offering; or

c.    12 months from the commencement of the offering, the issuer shall file with the Secretary a sales report indicating the number and value of securities sold in the offering, and the number of purchasers in the offering.

15.    The issuer shall file with the Secretary no later than 15 days after the first sale made in reliance upon the exemption provided under 950 CMR 14.402(B)(13)(o):

a.    a notice specifying that the issuer is conducting an offering in reliance on the exemption provided under 950 CMR 14,402(B)(13)(o) and providing the names and addresses of:

i.    officers, directors and control persons of the issuer;

ii.    all persons who will be involved in the offer or sale of securities on behalf of the issuer;

iii.    the bank or depository institution in which the issuer will deposit investment funds;

b.    a copy of all materials used in connection with the solicitation, offer, or sale of the issuer's securities, including the disclosure required in 950 CMR 14.402(B)(13)(o)11. and 12.; and

c.    a consent to service of process on Form U-2.

14.402:   continued

(p)   <u>Notice Filing Requirement for Federal Crowdfunding Offerings</u>.   The following provisions apply to offerings made under federal Regulation Crowdfunding 17 CFR § 227 and Sections 4(a)(6) and 18(b)(4)(C) of the Securities Act of 1933:

    1.   <u>Initial Filing</u>.

      a.   An issuer that offers and sells securities in the Commonwealth in an offering exempt under federal Regulation Crowdfunding shall file the following with the Director, subject to the conditions in 950 CMR 14.402(B)(13)(p)(1)(b):

        i.   A Uniform Notice of Federal Crowdfunding Offering (Form U-CF);

        ii.   A consent to service of process on Form U2  (with Form U-2A, if applicable).

      b.   If the issuer has its principal place of business in the Commonwealth, the filing required under 950 CMR 14.402(B)(13)(p)1.a. shall be filed with the Director when the issuer makes its initial Form C filing concerning the offering with the Securities and Exchange Commission.  If the issuer does not have its principal place of business in the Commonwealth but residents of the Commonwealth have purchased 50% or greater of the aggregate amount of the offering, the filing required under 950 CMR 14.402(B)(13)(p)1.a.  shall be filed when the issuer becomes aware that such purchases have met this threshold, and in no event later than 15 days from the date of completion of the offering.

      c.   The initial notice filing is effective for 12 months from the date of the filing with the Director.

    2.   <u>Renewal Filing</u>.   For each additional 12-month period in which the same offering is continued, an issuer conducting an offering under federal Regulation Crowdfunding may renew its notice filing by filing the following with the Director on or before the expiration of the notice filing.  A Uniform Notice of Federal Crowdfunding Offering (Form U-CF) designated as "renewal" filing and/or a cover letter or other document requesting renewal of the initial notice filing pursuant to 950 CMR 14.402(B)(13)(p)1.

    3.   <u>Time of Enforcement</u>.   950 CMR 14.402(B)(13)(p) shall be enforced as of June 1, 2019.

(q)   <u>Notice Filing Requirement for Regulation A - Tier 2 Offerings</u>.   The following provisions apply to offerings made under Tier 2 of federal Regulation A and Section 3(b) of the Securities Act of 1933 and subject to Section 18(b)(4) of the Securities Act of 1933:

    1.   <u>Initial Filing</u>.   An issuer proposing to offer and sell securities in the Commonwealth in an offering exempt under Tier 2 of federal Regulation A shall file the following with the Director at least 21 calendar days prior to the initial sale in the Commonwealth:

      a.   A completed Uniform Notice of Regulation A - Tier 2 Offering form or copies of all documents filed with the Securities and Exchange Commission;

      b.   A consent to service of process on Form U-2 if not filing on the Uniform Notice of Regulation A - Tier 2 Offering form;

      c.   Form U-2A (if applicable); and

      d.   A filing fee of $^1/_{20}$ of 1% of the aggregate amount of the offering with a minimum of $300 and a maximum of $1500 annually.

    The initial notice filing is effective for 12 months from the date of the filing with the Director.

    2.   <u>Renewal</u>.   For each additional 12-month period in which the same offering is continued, an issuer conducting a Tier 2 offering under federal Regulation A may renew its notice filing by filing with the Director the following on or before the expiration of the notice filing:

      a.   The Uniform Notice of Regulation A - Tier 2 Offering form marked "renewal" and/or a cover letter or other document requesting renewal; and

      b.   A renewal fee of $^1/_{20}$ of 1% of the aggregate amount of the offering with a minimum of $300 and a maximum of $1500 annually.

    3.   <u>Amendment</u>.   An issuer may increase the amount of securities offered in the Commonwealth by filing a Uniform Notice of Regulation A - Tier 2 Offering form marked "amendment" or other document describing the transaction.  If the amount of securities subject to the notice filing is being increased, the issuer shall submit an additional increment of funds under the formula set out in 950 CMR 14.402(B)(13)(q) 1.d. or 950 CMR 14.402(B)(13)(q)2.b., to cover the increase in the amount of securities to be offered.

    4.   <u>Time of Enforcement</u>.   950 CMR 14.402(B)(13)(q) shall be enforced as of June 1, 2019.

14.403:  Filing of Sales and Advertising Literature

(A)  Any person, including a broker-dealer, its agent or an issuer's agent, other than an issuer of a security, must file any sales literature used in connection with the offer or sale of a security in the Commonwealth unless such security is exempt from registration under M.G.L. c. 110A, § 402.

(B)  No sales literature used in connection with the offer or sale of a federal covered security or of a security which is a revenue or general obligation security issued or guaranteed by The Commonwealth or any political subdivision thereof or any agency or corporate or other instrumentality of one or more of the foregoing need be filed with the Director.

(C)  The term "sales literature" includes any prospectus, pamphlet, circular, form letter, advertisement or other literature or advertising communication addressed or intended for distribution to prospective investors.  The term also includes all materials, including materials for internal use, distributed to agents of a broker-dealer during the period when such broker-dealer is obligated to deliver a prospectus under state or federal law, if the contents of such materials may be used in any way in connection with the offer of a particular security.

(D)  One copy of each item of sales literature shall be filed with the Director either before or simultaneously with its first use.

14.404:  Misleading Filings:  (Reserved)

14.405:  Unlawful Representations Concerning Registration or Exemptions:  (Reserved)

14.406:  Administration of Chapter

(A)    (1)    There is hereby established in the Office of the State Secretary the Securities Division.  The Division shall, under the supervision of the Secretary and the Deputy Secretary of the Commonwealth for the Commercial Bureau, administer and enforce the M.G.L. c. 110A and 950 CMR 10.00 through 14.413, and, without limiting the foregoing, may issue written interpretations of M.G.L. c. 110A and 950 CMR 10.00 through 14.413.  The head of the Securities Division shall have the title "Director".  He shall, subject to the approval of the Secretary and the Deputy Secretary of State for the Commercial Bureau, make, amend and rescind such rules, forms, and orders as are necessary to carry out the statutory policy of M.G.L. c. 110A.  The Director is empowered to hear, examine, and investigate matters in accordance with M.G.L. c. 110A.  In the absence of the Director, the Deputy Secretary of the Commonwealth for the Commercial Bureau is empowered to take any action allowed to the Director under 950 CMR 10.00 through 14.413.

(A)    (2)    All writings shall be addressed or delivered to:
Director, Securities Division
Office of the Secretary of the Commonwealth
John W. McCormack Building, 17th Floor
One Ashburton Place
Boston, MA 02108
All writings are deemed "filed" with the Secretary when received in the office of the Director.

(A)    (3)    Unless otherwise specifically provided by law or 950 CMR 10.00 through 14.413, computation of any time period referred to in M.G.L. c. 110A or 950 CMR 10.00 through 14.413 shall begin with the first day following the act which initiates the running of the time period.  The last day of the time period so computed is to be included unless it is a Saturday, Sunday or legal holiday, or another day on which the Division is closed, in which event the period shall run until the end of the next business day.  When a time period is less than seven days, intervening days when the Division is closed shall be excluded from the computation.

14.406:   continued

(B)    (1)   950 CMR 14.406 applies to all transactions effected by or on behalf of an employee of the Division, including transactions for the accounts of other persons effected by the employee, directly or indirectly, under a power of attorney or otherwise. An employee is considered to have sufficient interest in the securities transactions of his or her spouse or minor child so that such transactions must be reported and are subject to all the terms of 950 CMR 14.406.

(B)    (2)   No employee shall effect or cause to be effected any transaction in a security except for *bona fide* investment purposes. 950 CMR 14.406(B)(2) does not apply to securities purchased by an employee prior to the commencement of his or her employment with the Division. Any employee who believes the application of 950 CMR 14.406(B)(2) will result in undue hardship in a particular case may make written application to the Secretary (through his Deputy) setting out, in detail, the reasons for his belief and requesting a waiver.

(B)    (3)   No employee shall carry securities on margin. Also, no employee shall borrow funds or securities, with or without collateral, for the purpose of purchasing or carrying securities with the proceeds unless prior approval of the Secretary has been secured.

(B)    (4)   No employee shall sell a security which he does not own, or the sale of which is consummated by the delivery of a security borrowed by or for such employee's account.

(B)    (5)   No employee shall purchase any security which is the subject of a registration statement filed under M.G.L. c. 110A, § 301 or any security which is exempted from such registration requirement under M.G.L. c. 110A, § 402 and for which the Division receives communication regarding the exemption, for the period from the filing with the Division of such registration statement or claim of exemption to 60 days after the effective date of the registration statement or, in the case of claim of exemption, 60 days after the date of filing.

(B)    (6)   No employee shall purchase any security in an offeror or target company after the first communication with the Division regarding the pendency of a takeover bid or during the pendency of a takeover bid subject to the provisions of M.G.L. c.110C. These provisions shall apply for a period of 60 days after said bid is completed, withdrawn, otherwise terminated or reasonably believed not to have been undertaken.

(B)    (7)    No employee shall have a beneficial interest in any broker or dealer through ownership of securities or otherwise.

(B)    (8)   No employee shall purchase any security which to his knowledge is involved in any pending investigation by the Division or in any proceeding before the Division. Nor shall any employee conduct any business with any respondent (broker, dealer, agent or otherwise) who to his knowledge is involved in any pending investigation by the Division or in any proceeding before the Division.

(B)    (9)   No employee shall purchase any securities of any company which is in receivership or for which a petition has been filed under Chapter 10 or Chapter 11 of the Bankruptcy Act.

(B)    (10)   Employees shall report every transaction in any security within five business days to the Secretary through the Director of the Securities Division. Other changes in holdings resulting from inheritance or from reclassification, gifts, stock dividends or split ups, for example, shall be reported promptly. In addition, every employee owning securities shall, on or before May 1st of each year, furnish a complete list of all securities held by him, his spouse or minor child, as well as all securities held in a trust or estate of which he is a fiduciary or beneficiary. New employees shall make the foregoing disclosure prior to the commencement of employment with the Division.

950 CMR:   OFFICE OF THE SECRETARY OF THE COMMONWEALTH

14.406:   continued

(B)    (11)   950 CMR 14.406(B)(2) and (10) do not apply to personal notes, individual real estate mortgages, U. S. Government Securities and securities issued by building and loan association or cooperatives.

(B)    (12)  The Secretary or his designee is authorized to require the disposition of securities acquired as a result of the unintentional violation of the provisions of 950 CMR 14.406(B).  Any intentional violation of 950 CMR 14.406(B) shall be reported to the Secretary for appropriate disciplinary action.

14.407:   Investigations and Subpoenas

The Director and the Associate Director of the Securities Division are designated as officers who may subpoena witnesses, compel their attendance, take evidence and require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records which are deemed relevant or material to the inquiry.

14.407A:   Cease and Desist Orders

The Director may afford persons an opportunity to enter into voluntary agreements to cease and desist from certain acts and practices when it appears that such procedure fully safeguards the public interest.  All such agreements and orders shall be matters of public record.

14.408:   Injunctions  (Reserved)

14.409:   Criminal Penalties  (Reserved)

14.410:   Civil Liabilities  (Reserved)

14.411:   Judicial Review of Orders  (Reserved)

14.412:   Rules, Forms, Orders, and Hearings

(A)    (1)   The forms prescribed for use under M.G.L. c. 110A and 950 CMR 10.00 through 14.413, which are identified and described in 950 CMR 14.412, are hereby incorporated by reference and made a part of 950 CMR 14.000:
          (a)   Uniform Application to Register Securities (Form U-1) (used for registration by coordination and for registration by qualification);
          (b)   Uniform Consent to Service of Process (Form U-2) (used with registration of securities);
          (c)   Uniform Form of Corporate Resolution (Form U-2A) (used with Form U-2);
          (d)   Application for Registration as a Broker-Dealer (SEC Form BD) (used to register as broker-dealer);
          (e)   Uniform Application for Securities and Commodities Industry Representative and/or Agent (Form U-4) (Used to register or transfer agents of Broker-Dealers and representatives of Investment Advisers);
          (f)   Application for Registration or Transfer of Agent of Issuers (Form U-4)) (used to register or transfer issuer-agents);
          (g)   Uniform Termination Notice for Securities Industry Representative and/or Agent (Form U-5) (used to terminate employment of agents and representatives);
          (h)   Termination Notice for Issuer-Agent (Form U-5) (used to terminate employment of issuer-agents);
          (i)   Renewal Form (Form RF) (used to renew broker-dealer, agent, and issuer-agent registration);
          (j)   Notice of Withdrawal from Registration as Broker-Dealer (SEC Form BDW) (used to withdraw or terminate registration as broker-dealer);
          (k)   Small Corporate Offering Registration Form (NASAA Form U-7) (used to register corporate offerings of $1,000,000 or less);
          (l)   Application for Registration as an Investment Advisor (SEC Form ADV) (used to register as an investment adviser)

14.412:   continued

  (m)   Notice of Withdrawal from Registration as an Investment Advisor (SEC Form ADV-W) (used to withdraw or terminate registration as an investment advisor);
  (n)   Uniform Investment Company Notice Form (Form NF);
  (o)   Uniform Disciplinary Action Reporting Form (Form U-6);
  (p)   Uniform Notice of Federal G
  (p)   Uniform Notice of Federal Crowdfunding Offering (Form U-CF);
  (q)   Uniform Notice of Regulation A - Tier 2 Offering.
  (Note: Copies of the NASAA multi-state forms may be obtained from the Internet site www.nasaa.org.  Users should click the buttons for "Blue Sky Practitioners" and then "Uniform Forms".)

(A)(2)   The forms prescribed in 950 CMR 10.00 through 14.413, except SEC Forms BD, BDW, and Forms U-4 and U-5 may, be obtained on a request addressed to the Division.  However, accurate reproductions may be used. SEC Forms BD and BDW may be obtained from the SEC; and Forms U-4 and U-5 from any national securities exchange or from the FINRA. The Division reserves the right to and may issue from time to time revisions or amendments of the forms.

(A)(3)   Only an executed copy of any form should be filed.

(A)(4)   All forms and documents shall be printed, lithographed, mimeographed, typewritten, or prepared by a photocopying process which, in the opinion of the Director, produces copies suitable for a permanent record.  All forms and documents shall be clear, easily readable, and suitable for repeated photocopying.  Exhibits may be attached to additional sheets or filed separately.  A document filed as an exhibit to a prior application may be incorporated by reference into a subsequent application.

(A)(5)   All applications and other documents received and filed with the Division become a part of its permanent record and will not be returned to the applicant or correspondent.

(A)(6)   The Director may by order exempt a person, security or transaction from a specific provision of 950 CMR 10.00 through 14.413.  950 CMR 10.00 through 14.413 supersedes any administrative orders, rules, and regulations issued pursuant to M.G.L. c. 110A.

(A)(7)   Any Rule requiring compliance with a federal statute, rule or interpretive opinion of the SEC or other administrative agency, incorporates said statute, rule, or interpretive opinion, by reference and makes it a part of 950 CMR 10.00 through 14.413.

(A)(8)   Filing fees are not refundable.  Fees  shall be remitted by check, draft, or money order (but not by personal checks or by cash) payable to the Commonwealth of Massachusetts.

(B)   (Reserved)

(C)   Unless 950 CMR 10.00 through 14.413 provides otherwise, all financial statements M.G.L. c. 110A and/or 950 CMR 10.00 through 14.413 requires shall be certified and prepared in accordance with generally accepted accounting principles applied on a consistent basis.  The Director may, upon the request of the applicant, permit the omission of one or more of the financial statements herein required or the filing in substitution therefor of appropriate financial statements of comparable character.  The Director may also require the filing of other financial statements in addition to, or in substitution for, the financial statements herein required in any case where such statements are necessary or appropriate for an adequate presentation of the financial condition of any entity or person whose financial statements are required, or whose financial statements are otherwise necessary for the protection of investors.

14.413:   Nonpublic Records and Information

  Certain records are nonpublic, but any reasonably segregable portion of a record shall be provided to any person requesting such records after deletion of the portions which are considered nonpublic under 950 CMR 14.413. Except for such reasonably segregable portions of records, the Division will generally not publish or make available to any person matters that are listed below:

14.413:  continued

(A)   Investigatory materials necessarily received or compiled out of the public view by employees of the Division, the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest. 950 CMR 14.413(A) restricts the production of such materials which would:

(1)   interfere with enforcement activities undertaken or likely to be undertaken by the Division or any federal, state, local or foreign governmental authority, any professional association, or any securities industry self-regulatory organization;

(2)   deprive a person of a right to a fair trial or an impartial adjudication;

(3)   constitute an unwarranted invasion of personal privacy;

(4)   disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, confidential information furnished only by the confidential source;

(5)   disclose investigative techniques and procedures; or

(6)   endanger the life or physical safety of law enforcement personnel.

(B)   The term "investigatory materials" as used in 950 CMR 14.413(A) includes, but is not limited to, all documents, records, transcripts, evidentiary materials of any nature, correspondence, related memoranda, or work product concerning any examination, any investigation (whether formal or informal), or any related litigation, which pertains to or may disclose, the possible violation by any person of any provision of any statute, rule, or regulation administered by the Division, by any other federal, state, local or foreign governmental authority, by any professional association, or by any securities industry self-regulatory organization.  The term "investigatory materials" also includes all written communications from, or to, any person complaining or otherwise furnishing information respecting such possible violations, as well as all correspondence or memoranda in connection with such complaints or information.

(C)   Supplemental materials, filed at the request of the Division, which are deemed to have been filed in confidence or to be confidential at the request of the registrant or person who has filed such materials, including, but not limited to, trade secrets, contracts, commercial information and financial information provided to the Division.

(D)   Materials, including, but not limited to, forms, business plans, private placement memoranda, notices and filings made in connection with securities offerings which by the provisions of M.G.L. c. 110A or 950 CMR 14.400 are not permitted for public offering.  Such materials shall be nonpublic only so long as the security is being offered in connection with such materials.

REGULATORY AUTHORITY

950 CMR 14.400:  M.G.L. c. 110A, § 412(a).

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| THOMAS A. MOURIER, | ) |
| Plaintiff, | ) |
| v. | )  Civil No. 1:23-cv-11280 |
| WILLIAM F. GALVIN, SECRETARY OF | )  **Jury Trial Demanded** |
| THE COMMONWEALTH, in his official | ) |
| capacity, MASSACHUSETTS | ) |
| SECURITIES DIVISION, AND | ) |
| MASSACHUSETTS OFFICE OF | ) |
| CONSUMER AFFAIRS AND BUSINESS | ) |
| REGULATION, | ) |
| Defendants. | ) |

——————————————————— )

## AMENDED COMPLAINT

For his Complaint, plaintiff Thomas A. Mourier ("Mr. Mourier") alleges against the

defendants William F. Galvin, Secretary of the Commonwealth, in his official capacity,

Massachusetts Securities Division, and Massachusetts Office of Consumer Affairs and Business

Regulation (collectively, "Defendants") as follows:

## INTRODUCTION

1.  Mr. Mourier, appearing pro se, brings this action against the Defendants to challenge the constitutionality and legality of certain regulations imposed by William F. Galvin during his office and executed by the Massachusetts Securities Division and the Massachusetts Office of Consumer Affairs and Business Regulation.

2.  On January 15, 2014, defendant William F. Galvin, in his official role, enacted new statewide regulations concerning crowdfunding within Massachusetts in response to the JOBS Act.

3.  Citing 950 CMR 14.402(B)(13)(o), regarded as "General provisions of regulations under the Uniform Securities Act," these new regulations prohibit certain industries from raising capital via Regulation Crowdfunding. The affected companies include:

    a.  "An investment company as defined by 15 U.S.C. § 80a-3"

    b.  "A hedge fund, commodity pool, or similar investment vehicle"

    c.  "Subject to the reporting requirements of the Securities Exchange Act of 1934"

    d.  "A development stage company without a specific business plan or purpose, or which has indicated that its business is to engage in a merger or acquisition with an unidentified company or companies, or other unidentified entities or persons, or without an allocation of proceeds to sufficiently identifiable properties or objectives (i.e., "blind pool" or "blank check" offerings)"

    e.  "A business involving petroleum exploration or production, mining, or other extractive industries"

4.  In the same set of regulations, defendant William F. Galvin capped the maximum annual aggregate amount that a company may raise under the exemptions that 950 CMR

**Add. 092**

14.402(B)(13)(o) offers. There are two possible limits for issuers (companies raising

funding via Regulation Crowdfunding) as follows:

    a.    "$1,000,000, if the issuer has not undergone and made available to each

        prospective investor and the Secretary the documentation resulting from a

        financial audit with respect to its most recently completed fiscal year and meeting

        generally accepted accounting principles"

    b.    "$2,000,000, if the issuer has undergone and made available to each

        prospective investor and the Secretary the documentation resulting from a

        financial audit with respect to its most recently completed fiscal year and meeting

        generally accepted accounting principles."

5.    While being highly vague in describing exactly what constitutes an issuer structured as

an "investment vehicle" and what accounting principles may be considered "generally

accepted," these provisions of 950 CMR 14 directly conflict with the federal law of the

United States.

6.    U.S. Code Title 15 Chapter 2A Subchapter I Section 77d (Exempted transactions)

clearly outlines what type of issuers are barred from utilizing Regulation Crowdfunding

at the federal level. Any issuer is allowed to raise capital so long as it "is not a blank

check, blind pool, or shell company that has no specific business plan or purpose or has

indicated that the issuer's primary business plan is to engage in a merger or combination

of the business with, or an acquisition of, an unidentified person."

7.    A discrepancy exists between 3 and 6 above where Massachusetts prohibits certain

investment companies, public companies, and petroleum explorative companies from

raising capital using the crowdfunding exemption. At the same time, they are still
allowed to raise capital under federal law.

8.    In response to the novel Coronavirus pandemic, the SEC passed amendments to a wide
range of their regulations to streamline fundraising for companies hit the hardest with
small to medium-sized companies standing to benefit the most. One of those amendments
was to 17 CFR § 227.100 (Crowdfunding exemption and requirements). Before
November 2, 2020, the maximum yearly aggregate amount that could be raised using
Regulation Crowdfunding was $1.07 million, closely resembling that of the
Commonwealth. After the amendment was enacted, Rule 100(a)(1) now reads "The
aggregate amount of securities sold to all investors by the issuer in reliance on section
4(a)(6) of the Securities Act (15 U.S.C. 77d(a)(6)) during the 12-month period preceding
the date of such offer or sale, including the securities offered in such transaction, shall not
exceed $5,000,000."

9.    There exists a discrepancy between 4 and 8 above where the federal limit for the total
amount an issuer may raise utilizing Regulation Crowdfunding can be as high as five
times more than limits imposed by defendant William F. Galvin.

10.   The Massachusetts Securities Division is the enforcement arm of the state that upholds
defendant William F. Galvin's regulations. Per the defendant Massachusetts Securities
Divison's webpage
(https://www.sec.state.ma.us/divisions/securities/securities-overview.htm), "The
Secretary of the Commonwealth, William Francis Galvin, is the constitutional officer
who, through the Massachusetts Securities Division (also referred to as the "Securities
Division" in this document), is entrusted with the task of administering and enforcing

Massachusetts General Law, Chapter 110A, the Uniform Securities Act (also referred to as the "Act"), and the regulations promulgated thereunder (the "Regulations"). The Securities Division adopts and periodically updates the Regulations to ensure that investors are adequately protected. The Secretary appoints a Securities Director who supervises the day-to-day activities of the staff. The Securities Division includes the Corporate Finance Section, the Registration, Inspections, Compliance and Examinations (RICE) Section the Enforcement Section and the Investor Education Section." Thus, being directed by defendant William F. Galvin, the inclusion of this party is vital to this complaint.

11.    Defendant Massachusetts Office of Consumer Affairs and Business Regulation (hereinafter "OCABR") also upholds defendant William F. Galvin's regulations through administrative actions, investigations, and potentially legal proceedings. It is the predominant agency of the Commonwealth that deals with business regulation. OCABR is relevant to the current case since it must "implement consumer protection policies" under MGL Part 1 Title II Chapter 24A Section 2(f).

12.    The Defendants collectively by passing and enforcing 950 CMR 14.402(B)(13)(o) contribute to an inequitable fundraising environment by limiting the content funding portals and broker-dealers with similar functions and break from federal law due to their blaring inconsistencies with the supreme law of the United States. Mr. Mourier brings this action to challenge the constitutionality and legality of these regulations so that the Defendants cease interfering with his business practices.

### PARTIES

13.    Plaintiff Thomas A. Mourier is an undergraduate student in Massachusetts starting a

business in the crowdfunding industry. On August 4, 2022, Mr. Mourier filed for and was

approved for incorporating a C Corporation in Delaware with assigned filing number

6950848. The legal business name was originally StartFund Finances Inc., but due to

certain actions by the Defendants, it is in the process of being amended to SeedFunder

Inc. (hereinafter "SeedFunder").

14.    Defendant William F. Galvin is the current Secretary of the Commonwealth of

Massachusetts. Defendant Galvin is heavily active within the Massachusetts Securities

Division, directing investigations into potential breaches of the law and liberally

expressing his opinion regarding current events related to securities trading. One such

opinion is his negative view of the JOBS Act, a vital tool that many small businesses use

to establish their ideas to compete with fierce competition. On August 8, 2012, defendant

William F. Galvin published his official comments in a Massachusetts Securities Divison

memo almost 4 whole months after the JOBS Act had become law. In his memo, he

speculated that crowdfunding will become full of "Unscrupulous penny stock promoters

[using] misrepresentations to market obscure and low-value stocks to individuals, often

through pump and dump schemes." He goes on to add unrealistic suggestions for the SEC

to regulate investors such as requiring "intermediaries to share information about who has

invested in these offerings and the amounts of their investments," clearly disrespecting

the privacy of retail investors. More importantly, defendant William F. Galvin states that

"state rules for portals may not be any greater than federal rules for portals, so it is

important that the federal rules can be effectively enforced by both the S.E.C. and the

states." This conflicts with his actions in passing additional crowdfunding regulations a

few years later where his additional rules are completely out of line with the S.E.C.'s

rules. In his official capacity as head of the Massachusetts Securities Division, defendant

William F. Galvin is considered a state government employee since he is acting under

"under color of state law" (42 U.S.C. § 1983). Thus, Mr. Mourier has standing to bring

this action for the civil rights violation he claims to have suffered through the

Defendants' actions.

15.    Defendant Massachusetts Securities Division ("MSD") is a regulatory agency

operating under the Office of the Secretary of the Commonwealth of Massachusetts.

MSD is responsible for overseeing and enforcing securities laws and regulations within

the state. The division has the authority to investigate potential violations of securities

laws, issue regulations, and take administrative actions against individuals and entities

believed to be in breach of these regulations. This authority is given by the Massachusetts

Uniform Securities Act to regulate:

    a.    the offers, sales, and purchases of securities

    b.    those individuals offering and/or selling securities

    c.    those individuals and entities transacting business as investment advisers within
       the Commonwealth

16.    Being a natural person who plans on soliciting at least fifty percent of SeedFunder's

offers of securities within the Commonwealth of Massachusets, Mr. Mourier is subject to

regulation by the MSD which shows that state crowdfunding laws apply to him in their

entirety.

17.    In their official capacity, MSD, under the guidance of Defendant William F. Galvin, is

considered a state government entity acting under "color of state law" (42 U.S.C. § 1983).

As such, the actions of MSD and its officials are subject to scrutiny under federal law. The impact of MSD's regulatory decisions and policies on Plaintiff Thomas A. Mourier's ability to engage in legitimate business activities forms the basis for this action.

18.    Defendant Massachusetts Office of Consumer Affairs and Business Regulation ("OCABR") is a state government agency responsible for regulating and overseeing various aspects of consumer affairs and business activities within the Commonwealth of Massachusetts. OCABR's mission includes protecting consumers, promoting fair and transparent business practices, and ensuring compliance with relevant state laws and regulations.

19.    OCABR's authority extends to a wide range of sectors, including financial services and securities. The agency is tasked with establishing and enforcing rules and regulations that govern the conduct of businesses and individuals operating within Massachusetts.

20.    In the present case, OCABR's involvement is crucial due to its oversight of the Massachusetts crowdfunding regulations that Plaintiff Thomas A. Mourier challenges in his complaint. OCABR is responsible for formulating, implementing, and interpreting these regulations. Its decisions and actions have a direct impact on how crowdfunding activities are conducted within the state.

21.    Defendant William F. Galvin, as the Secretary of the Commonwealth, also oversees OCABR's functions and activities. His role in directing the agency's policies and decisions, particularly those related to securities regulations, establishes a connection between his office, OCABR, and the issues raised in this case.

22.    In their official capacity, OCABR, guided by the direction of Defendant William F. Galvin, operates as a state government entity acting "under color of state law" (42 U.S.C.

§ 1983). This places the agency's actions and regulations within the purview of federal law and opens the door for legal challenges, such as the civil rights claims asserted by Mr. Mourier.

## JURISDICTION AND VENUE

23.   Subject Matter Jurisdiction of the United States District Court for the District of Massachusetts ("USDC MA") is established in the present case based on federal question jurisdiction as conferred by 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

24.   Plaintiff Thomas A. Mourier asserts claims that arise under federal law, particularly the First Amendment of the United States Constitution, as well as provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934. The case revolves around the constitutionality and preemption of state crowdfunding regulations and their potential interference with federal securities laws. These federal issues are at the core of Plaintiff's complaint and serve as the foundation of his claims. As such, the USDC MA has subject matter jurisdiction under 28 U.S.C. § 1331 to adjudicate claims involving federal questions.

25.   In addition to the federal claims, Plaintiff also brings state law claims that arise out of the same nucleus of operative facts as the federal claims. These state law claims are closely related to federal claims and share common issues of fact and law. As a result, the USDC MA has supplemental jurisdiction over the state law claims as provided by 28 U.S.C. § 1367, allowing the court to exercise jurisdiction over claims that are part of the same case or controversy as the federal claims.

26.    Defendant William F. Galvin, in his official capacity as the Secretary of the

Commonwealth of Massachusetts, maintains a significant and pervasive presence within

the state of Massachusetts. As the head of the Massachusetts Securities Division, he is

actively engaged in directing investigations and issuing official statements regarding

securities trading within the state. This involvement establishes a substantial nexus

between Defendant Galvin and the jurisdiction of the United States District Court for the

District of Massachusetts.

27.    Furthermore, Defendant Galvin's role in overseeing securities regulations and

expressing opinions on securities matters within the state demonstrates his purposeful

availment of Massachusetts laws and regulations. This conduct aligns with the "minimum

contacts" requirement for establishing personal jurisdiction, as he has deliberately

interacted with and impacted the state's regulatory framework.

28.    Defendants MSD and OCABR are both agencies of the Commonwealth of

Massachusetts. While not natural people, both actively engage in directing investigations

and enforcing regulations within the state. These activities establish a substantial nexus

between defendants MSD and OCABR together and the jurisdiction of the United States

District Court for the District of Massachusetts.

29.    The venue is proper in this district under 28 U.S.C. § 1391.

## FACTS

30.    Mr. Mourier initially started his company as StartFund Finances Inc. to organize large

capital raises primarily in the Commonwealth of Massachusetts spanning multiple

industries, including investment companies as permissible by federal law.

**Add. 100**

31.    As Massachusetts is one of the most expensive states to live in within the United

States, the real estate market has boomed in the state, making new development

investment often ludicrous. Real estate has slowly grown in the crowdfunding industry to

now hold the title of being the 4th most invested in the industry across all equity

crowdfunding offerings. StartFund Finances Inc.'s original business plan revolved around

connecting builders within Massachusetts seeking to build residential projects to

Massachusetts investors seeking to capitalize on this boom in their home state's housing

industry.

**Defendant William F. Galvin Enacted Regulations for Censoring What Content Mr.**

**Mourier is Allowed to Display on his Platform.**

32.    The Jumpstart Our Business Startups (JOBS) Act, enacted in 2012, was a landmark

legislative effort aimed at stimulating economic growth by facilitating access to capital

for small businesses and startups. One of the critical provisions of the JOBS Act was the

introduction of crowdfunding as a legitimate means of raising capital for businesses.

Crowdfunding allows businesses, particularly those in their nascent stages, to secure

funding from a broad base of investors, often through online platforms.

33.    In this context, crowdfunding platforms emerged as crucial intermediary connecting

entrepreneurs with potential investors. These platforms provide a space for innovative

ideas to flourish and for entrepreneurs to showcase their business plans to a diverse group

of investors, including retail investors.

34.    The advent of the JOBS Act and the rise of crowdfunding platforms heralded a new era

for small businesses, offering them a streamlined and efficient route to secure funding.

These platforms acted as bridges between businesses seeking investment and investors seeking promising opportunities.

35.    Given the digital and borderless nature of crowdfunding, many entrepreneurs and businesses anticipated an environment conducive to interstate commerce. The ease of online transactions and the widespread accessibility of information suggested that geographical boundaries would become less relevant in the realm of crowdfunding. It was this spirit of innovation and entrepreneurial collaboration that underpinned the aspirations of many small businesses seeking to harness the potential of crowdfunding platforms.

36.    However, despite the promise of a borderless crowdfunding landscape, the Massachusetts Securities Division introduced additional regulations that potentially undermined the expansive vision of the JOBS Act. The intent behind these regulations appeared to be aimed at protecting investors and ensuring the integrity of the financial system. Nevertheless, the consequences of these regulations gave rise to unforeseen challenges for businesses operating within the framework of the JOBS Act.

37.    The imposition of certain limitations, including restrictions on crowdfunding amounts and content-based constraints, effectively constrained the scope and effectiveness of crowdfunding platforms. While the Massachusetts Securities Division's intentions may have been laudable, the practical outcome was a regulatory environment that deviated from the intent of the federal legislation.

**Defendant William F. Galvin's Actions Hurt Plaintiff's Business**

38.    The original business plan of StartFund Finances Inc. was meticulously designed to bridge the gap between builders within Massachusetts seeking to initiate residential

projects and Massachusetts investors aiming to capitalize on the flourishing housing industry in their home state. The platform's framework was meticulously aligned with federal regulations, and the Plaintiff's business model fostered a symbiotic relationship between local builders and investors, driving growth within Massachusetts and enabling citizens to actively participate in the state's economic prosperity.

39.    However, the regulations passed and enforced by the Defendants (specifically 950 CMR 14.402(B)(13)(o)) have significantly disrupted Plaintiff's business model. Defendant Massachusetts Securities Division's imposition of limitations on the annual amount of crowdfunding raises and the implementation of content-based restrictions on offerings has hindered Plaintiff's ability to continue operations in his original capacity.

40.    As a direct consequence of these regulations, Plaintiff has been compelled to reassess and alter his business model. Mr. Mourier has been forced to diversify his plans and look to create a platform for use mainly in states with more favorable crowdfunding regulations. This strategic shift has necessitated a departure from the original mission of fostering economic growth within Massachusetts.

41.    Moreover, the restrictive regulations have dissuaded many local builders from participating in crowdfunding campaigns, as the limitations inhibit their ability to seek the necessary funding for their projects. This has not only disrupted the balance between builders and investors within the state but has also hampered the growth of real estate ventures that were previously thriving within the Massachusetts economy.

42.    As a result of these unforeseen consequences, Plaintiff has experienced a tangible loss of business opportunities. The regulatory changes have compelled Plaintiff to expand his horizons to states with more favorable regulatory environments, thereby detracting from

the initial goal of nurturing economic growth and innovation within the Commonwealth of Massachusetts.

43.    In light of these significant and detrimental impacts on the Plaintiff's business, it is evident that the Massachusetts Securities Division's regulations have not only impeded the Plaintiff's operational scope but have also hindered the economic potential and entrepreneurial opportunities that the Plaintiff's platform initially sought to cultivate within the state of Massachusetts.

**Defendants Collectively Have Violated the Plaintiff's Constitutional Rights and 950 CMR 14.402(B)(13)(o) is Preempted by Federal Law**

44.    The Commerce Clause of the United States Constitution grants Congress the authority to regulate interstate commerce, ensuring a consistent and coherent legal framework across states. In contrast, the Tenth Amendment preserves the powers not delegated to the federal government to the states.

45.    The Massachusetts Securities Division's regulations imposing limitations on crowdfunding raises and content-based restrictions, as applied to the Plaintiff's operations, have engendered a situation where state law has exceeded its permissible boundaries. By imposing more stringent crowdfunding limitations compared to other states, Massachusetts hampers the Plaintiff's ability to engage in interstate commerce on an equal footing, thereby encroaching upon the Commerce Clause's intended purpose.

46.    Furthermore, the additional regulations are seemingly in conflict with the National Securities Markets Improvement Act (NSMIA) of 1996. The NSMIA aims to harmonize state and federal regulations concerning securities offerings and transactions, preempting certain state laws that could impede the operation of national securities markets. The

Massachusetts Securities Division's regulations, which impose disproportionate and onerous restrictions on crowdfunding, potentially contradict the spirit of NSMIA by undermining its goal of facilitating a uniform regulatory environment across states.

47.    Plaintiff's business plan, which by design engages in interstate transactions, becomes subject to a patchwork of disparate regulations under Massachusetts' approach. This disarray can undermine investor confidence and impede the development of crowdfunding markets by impinging on efficient and uniform cross-border transactions.

48.    By instituting regulations that create hurdles for businesses operating within Massachusetts, the Defendants have not only disregarded the fundamental principle of uniformity enshrined in the Constitution but have also potentially violated federal preemption as encapsulated in the NSMIA.

49.    Plaintiff contends that the Massachusetts Securities Division's regulations, as described above, infringe upon his constitutional rights, including the Commerce Clause and the principle of federal preemption. These actions not only hinder the Plaintiff's business operations but also disrupt the integrity of a national securities market. In this light, Plaintiff seeks remedies to redress these violations and uphold the fundamental constitutional principles that underpin our legal system.

## COUNT ONE

## (ArtI.S8.C3 U.S. Constitution)

## (Against Defendant William F. Galvin in His Official Capacity)

50.    Mr. Mourier incorporates by reference the averments contained in all preceding paragraphs.

51.    The Commerce Clause of the United States Constitution, Article I, Section 8, Clause 3, empowers Congress to regulate commerce among the several states.

52.    Plaintiff operates within the state of Massachusetts and his business plan engages in crowdfunding activities that involve securities offerings.

53.    Defendants, by imposing excessively restrictive crowdfunding regulations that hinder and limit the plaintiff's ability to conduct securities offerings across state lines, have violated the Commerce Clause's fundamental principle of promoting interstate commerce and economic activity.

54.    The Commerce Clause grants Congress exclusive authority to regulate interstate commerce, ensuring that states do not erect barriers that impede the flow of goods, services, and economic transactions across state lines.

55.    The defendants' implementation of crowdfunding regulations that are significantly more stringent than those of other states creates a disparate regulatory environment that hampers the plaintiff's ability to conduct securities offerings beyond the borders of Massachusetts.

56.    By subjecting the plaintiff's crowdfunding activities to additional rules and limitations solely due to their interstate nature, the defendants have unlawfully interfered with and burdened interstate commerce.

57.    Defendants' regulations, with their impact on the plaintiff's cross-border securities offerings, contravene the principles of the Dormant Commerce Clause. This constitutional doctrine prohibits states from enacting laws that unjustifiably discriminate against or excessively burden interstate commerce.

58.     Plaintiff's ability to engage in crowdfunding transactions with individuals outside of Massachusetts is directly impeded by the defendants' regulations, preventing full and free participation in the broader securities market.

59.     The National Securities Markets Improvement Act (NSMIA) preempts state regulation in areas where it conflicts with federal securities law. Defendants' regulations, imposing restrictions beyond those set forth by federal law, could be argued to be preempted under NSMIA.

60.     Plaintiff respectfully seeks a declaratory judgment that the defendants' regulations violate the Commerce Clause of the U.S. Constitution, as well as any applicable federal laws. Plaintiff also seeks injunctive relief enjoining defendants from enforcing these regulations to the extent that they discriminate against or unduly burden interstate commerce.

**COUNT TWO**

**(15 U.S.C. §§ 77r and 15 U.S.C. §§ 78bb)**

**(Against Defendant William F. Galvin in His Official Capacity)**

61.     Mr. Mourier incorporates by reference the averments contained in all proceeding paragraphs.

62.     The Massachusetts Securities Division, under the direction of Defendant William F. Galvin, promulgated and implemented regulations that impose restrictions on crowdfunding offerings, including but not limited to limiting annual crowdfunding raises to $2 million and imposing content-based restrictions on offerings.

63.     The National Securities Markets Improvement Act (NSMIA), codified at 15 U.S.C. §§ 77r and 78bb, establishes the principle of federal preemption over certain state securities

**Add. 107**

laws and regulations. NSMIA ensures that offerings made under Rule 506 of Regulation D under the Securities Act of 1933 are exempt from state registration requirements.

64.    The regulations imposed by the Massachusetts Securities Division, under the direction of Defendant William F. Galvin, conflict with the principles of federal preemption established by NSMIA. The limitations on crowdfunding raises and content-based restrictions interfere with the uniform regulatory framework intended by NSMIA for offerings made under Rule 506.

65.    By imposing regulations that conflict with the federal framework established by NSMIA, the Massachusetts Securities Division, acting through Defendant William F. Galvin, has violated the federal preemption provided by NSMIA. These actions obstruct the objectives of NSMIA, which aims to streamline securities regulation and facilitate capital-raising activities across state lines.

66.    The regulations imposed by Defendants have directly harmed Plaintiff's ability to conduct crowdfunding offerings in compliance with federal regulations. Plaintiff's business model has been negatively impacted, requiring costly adjustments and limiting access to capital from investors who are interested in participating in larger crowdfunding campaigns.

67.    Plaintiff seeks a declaratory judgment affirming the violation of federal preemption under NSMIA by the Massachusetts Securities Division, acting through Defendant William F. Galvin. Plaintiff further requests that the regulations imposed by Defendants be declared invalid insofar as they conflict with the principles of federal preemption established by NSMIA.

## COUNT THREE

### (42 U.S.C. § 1983)

### (Against Defendant William F. Galvin in His Official Capacity)

68.    Mr. Mourier incorporates by reference the averments contained in all preceding paragraphs.

69.    The First Amendment of the United States Constitution protects the right to engage in commercial speech, which includes the ability to communicate information about goods, services, and economic activities.

70.    Defendant William F. Galvin, acting in his official capacity as Secretary of the Commonwealth, has engaged in actions that violate Plaintiff's First Amendment rights to engage in commercial speech.

71.    The regulations imposed by the Massachusetts Securities Division, under the direction of Defendant Galvin, impose content-based restrictions on crowdfunding offerings. These restrictions have the effect of limiting Plaintiff's ability to communicate effectively about its crowdfunding activities and investment opportunities.

72.    Defendant Galvin's actions, through the Massachusetts Securities Division's regulations, impose burdensome and unnecessary requirements on Plaintiff's communication with potential investors, thus stifling Plaintiff's ability to engage in meaningful and informative commercial speech.

73.    The regulations enforced by Defendant Galvin disproportionately impact Plaintiff's ability to convey information about crowdfunding offerings, including potential returns, risks, and investment opportunities. These regulations create an environment where the Plaintiff's ability to communicate with investors and provide accurate information is hindered, thereby violating the Plaintiff's First Amendment rights.

74.    Defendant Galvin's enforcement of regulations that limit the Plaintiff's ability to

engage in commercial speech is not narrowly tailored to achieve any compelling state

interest, and thus, constitutes an unconstitutional restriction of the Plaintiff's First

Amendment rights.

## COUNT FOUR

## (42 U.S.C. § 1983)

## (Against Defendant William F. Galvin in His Official Capacity)

75.    Mr. Mourier incorporates by reference the averments contained in all preceding

paragraphs.

76.    The Fourteenth Amendment to the United States Constitution provides that no state

shall deny to any person within its jurisdiction the equal protection of the laws.

77.    Defendant William F. Galvin, in his official capacity as Secretary of the

Commonwealth of Massachusetts, has imposed crowdfunding regulations that subject

Plaintiff to disparate treatment compared to other financial intermediaries, including

traditional brokerage firms and investment advisers.

78.    Traditional brokerage firms and investment advisers, unlike Plaintiff as a funding

portal operating in the primary market, are allowed to facilitate transactions in the

secondary market with less stringent regulatory requirements.

79.    The State's differential treatment of the Plaintiff, imposing more onerous regulatory

burdens on primary market funding portals compared to other similarly situated financial

intermediaries in the secondary market, lacks a rational basis and contravenes the

principles of equal protection.

80. Defendant William F. Galvin's actions in enforcing and imposing the challenged crowdfunding regulations result in Plaintiff's unequal treatment and substantial harm, as they hinder Plaintiff's ability to facilitate primary market transactions and compete fairly in the securities industry.

81. This unequal treatment creates an arbitrary and unjustifiable distinction between different types of financial intermediaries operating within the securities industry, infringing upon the Plaintiff's right to equal protection under the law.

82. Plaintiff seeks declaratory relief and an injunction against Defendant William F. Galvin's enforcement of the disparate crowdfunding regulations to ensure equal treatment for Plaintiff in line with other similarly situated financial intermediaries.

## COUNT FIVE

## (42 U.S.C. § 1983)

## (Against Defendant William F. Galvin in His Official Capacity)

83. Mr. Mourier incorporates by reference the averments contained in all preceding paragraphs.

84. Defendant William F. Galvin, acting under color of state law as the Secretary of the Commonwealth of Massachusetts, engaged in actions that violate the substantive due process rights of the Plaintiff.

85. Substantive due process, as guaranteed by the Fourteenth Amendment to the United States Constitution, protects individuals from arbitrary or irrational governmental actions that infringe upon their fundamental rights.

**Add. 111**

86.     Defendant Galvin's actions in imposing excessively restrictive crowdfunding regulations, specifically targeting primary market funding portals like Plaintiff, were arbitrary, irrational, and not reasonably related to any legitimate state interest.

87.     These regulations have imposed unwarranted burdens on the Plaintiff's ability to engage in lawful and legitimate business activities, significantly hampering its capacity to facilitate crowdfunding transactions and hindering its growth potential.

88.     Defendant Galvin's regulations have created a disparate impact on primary market funding portals as compared to other financial intermediaries, such as traditional brokerage firms.

89.     Traditional brokerage firms, which also facilitate investment transactions, are subject to less stringent regulations and are permitted to engage in secondary market transactions without the same level of scrutiny that primary market funding portals face.

90.     Defendant's discriminatory treatment of primary market funding portals, including Plaintiff, infringes upon their right to equal protection under the law.

91.     Such unequal treatment without a rational basis violates the fundamental principles of substantive due process, infringing upon Plaintiff's rights to conduct lawful business operations free from arbitrary and discriminatory government action.

92.     Mr. Mourier, and others in the primary market funding portal industry, had legitimate expectations that they would be treated fairly and that regulations would be reasonably related to their objectives and consistent with constitutional standards.

93.     Defendant Galvin's imposition of regulations that disproportionately burden primary market funding portals, while allowing more lenient treatment for other financial intermediaries, violated Plaintiff's legitimate expectations and its right to due process.

94.     Plaintiff seeks declaratory and injunctive relief, as well as any other appropriate
        remedies, to redress the violation of its substantive due process rights by Defendant
        William F. Galvin.

## COUNT SIX

## (Fifth Amendment's Due Process Clause)

## (Against Defendant William F. Galvin in His Official Capacity)

95.     Mr. Mourier incorporates by reference the averments contained in all preceding
        paragraphs.

96.     Plaintiff, Thomas A. Mourier, asserts this count to challenge the unconstitutional
        vagueness of specific provisions within the regulations enforced by the Defendants. The
        indeterminate nature of these provisions undermines Plaintiff's ability to understand and
        comply with the regulatory requirements.

97.     Under the Fifth Amendment's Due Process Clause, regulations and laws must provide
        clear notice and establish discernible standards to avoid vagueness that could lead to
        arbitrary enforcement and violations of due process rights. A provision is
        unconstitutionally vague when it fails to provide individuals with adequate guidance
        about what conduct is prohibited or required.

98.     Plaintiff points to several provisions within the regulations that lack clarity and precise
        definitions, rendering them constitutionally vague. These include, but are not limited to,
        the following:

        a.     **"Generally Accepted Accounting Principles":** Section 14.402(B)(13)(o) of
               the regulations establishes different crowdfunding raise limits based on whether
               the issuer has undergone a financial audit meeting "generally accepted accounting

principles." However, the term "generally accepted accounting principles" remains undefined, leaving issuers uncertain about the specific criteria for meeting this requirement.

b.    **"Reasonable Steps":** Section 14.402(B)(13)(o)5b of the regulations requires funding portals to take "reasonable steps" to ensure that the issuer has complied with relevant requirements. However, the regulations do not define what constitutes "reasonable steps," creating uncertainty and confusion for funding portals seeking to meet their obligations.

c.    **"Voting Rights":** The exemption under 950 CMR 14.402(B)(13)(o) shall not be available if certain individuals or entities are involved in the offering. This includes persons holding a certain percentage of the issuer's outstanding voting equity securities. However, the regulations do not clarify the parameters or extent of these voting rights, leaving issuers unsure about the conditions that trigger loss of exemption.

99.    The lack of well-defined terms and clear standards within these provisions makes it challenging for Plaintiff to determine the specific actions required for compliance. This ambiguity has a direct and negative impact on Plaintiff's crowdfunding platform, impeding his ability to provide accurate guidance to issuers and to structure his business operations effectively.

100.    The vagueness of these provisions creates a chilling effect on Plaintiff's commercial speech rights and his ability to operate his crowdfunding platform with confidence. The lack of clear definitions forces Plaintiff to navigate a regulatory

THOMAS A. MOURIER

By Plaintiff proceeding pro se,

/s/ *Thomas Mourier*

---

Thomas Mourier

3 Indian Hill Rd

Winchester, Massachusetts 01890-3427

Tel:  781-602-0385

thomas.mourier@yahoo.com

Dated: August 20, 2023