# CASE NO. 24-1798

---

## IN THE

## UNITED STATES COURT OF APPEALS

## FOR THE FIRST CIRCUIT

---

THOMAS A. MOURIER,

*Plaintiff - Appellant*,

v.

WILLIAM F. GALVIN, *Secretary of the Commonwealth, in his official capacity*; MASSACHUSETTS SECURITIES DIVISION; MASSACHUSETTS OFFICE OF CONSUMER AFFAIRS AND BUSINESS REGULATION,

*Defendants - Appellees*.

---

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MASSACHUSETTS, EASTERN DIVISION
NO. 1:23-CV-11280-IT
THE HONORABLE INDIRA TALWANI, JUDGE

# REPLY BRIEF OF APPELLANT

SUBMITTED BY:
Thomas Mourier
3 Indian Hill Rd.
Winchester, MA 01890
781/602-0385
thomas.mourier@yahoo.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

ARGUMENT ................................................................................1

  I.    Standing Analysis. ................................................................1

    A.    Legal Standard for Standing. ..............................................1

    B.    Concrete Harm to SeedFunder ...........................................3

    C.    Traceability and Redressability. .........................................7

  II.    The MCE is Preempted by the JOBS Act Under the Supremacy Clause. .10

    A.    Federal Preemption by the JOBS Act. ...................................10

    B.    The MCE Undermines Federal Crowdfunding Objectives. .................13

  III.    The MCE's Burdens on Interstate Commerce Outweigh Any Local

Benefits. ..............................................................................16

    A.    The Burdens on Interstate Commerce. ...................................17

    B.    The MCE's Broader Economic Impact. ...................................20

  IV.    The District Court Misapplied Standing Principles. .................................23

    A.    Narrow Interpretation of Injury-in-Fact. .................................24

B.    The District Court Failed to Evaluate the Merits of SeedFunder's

Claims.............................................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Barrows v. Jackson*, 346 U.S. 249 (1953) ................................................................ 5

*Bennett v. Spear*, 520 U.S. 154, 168 (1997) ........................................... 2, 5, 24

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ........................ 2, 3, 24

*Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000) ............10, 11, 15, 28

*Davis v. FEC*, 554 U.S. 724, 734 (2008) ............................................. 8, 25

*Ex parte Young*, 209 U.S. 123, 155-56 (1908) .................................... 27, 30

*Gonzales v. Raich*, 545 U.S. 1, 22 (2005) .................................12, 14, 20, 22

*Granholm v. Heald*, 544 U.S. 460, 472 (2005) ..................................... 11, 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ........................... 1

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 154 (2010) ..................... 3

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) ...................... 16, 20, 29

*SEC v. National Securities, Inc.*, 393 U.S. 453 (1969) .................................. 13

*Southern Pacific Co. v. Arizona*, 325 U.S. 761, 773 (1945) ................. 7, 18, 25

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ...................... 24, 27

**Statutes**

15 U.S.C. § 77d(a)(6) ................................................................ 10

15 U.S.C. § 77d-1 ..................................................................... 10

950 C.M.R. § 14.402(B)(13)(o)(2) ................................................. 6

# ARGUMENT

## I.     Standing Analysis.

SeedFunder has established standing under Article III and has demonstrated that it has standing to sue the provisions of the Massachusetts Crowdfunding Exemption. Opening Br. 12-13.

### A. Legal Standard for Standing.

To establish standing under Article III, a plaintiff must demonstrate: (1) an injury-in-fact that is concrete, particularized, and actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury is likely to be redressed by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). This standard ensures that plaintiffs have a legitimate personal stake in the outcome of a case and that the court is addressing a genuine controversy.

SeedFunder satisfies all three elements. First, the Massachusetts Crowdfunding Exemption (MCE) has caused SeedFunder concrete and particularized economic harm by deterring Massachusetts-based issuers from engaging with its platform, as detailed below. Second, this harm is directly traceable to the MCE's restrictive provisions, which limit the client base and business opportunities available to SeedFunder. Third, invalidating the MCE

would alleviate these harms, expanding SeedFunder's ability to operate freely and equitably in the Massachusetts market.

The district court misapplied this standard by focusing on whether SeedFunder is directly regulated by the MCE, thereby ignoring the broader impacts of the regulation on its business operations. Opening Br. 14-15. The Supreme Court has clarified that standing is not limited to entities directly regulated by a statute but also extends to those indirectly harmed by its implementation. *Bennett v. Spear*, 520 U.S. 154, 168 (1997). By neglecting to consider this precedent, the district court erroneously excluded SeedFunder from the standing analysis.

The MCE's provisions create a chilling effect on potential clients, discouraging Massachusetts-based issuers from utilizing SeedFunder's platform. As a result, SeedFunder's revenue and market share are diminished, meeting the requirement of a concrete injury. Opening Br. 15. This harm is directly tied to the MCE's in-state restrictions and fundraising caps, which conflict with federal objectives under the JOBS Act and impose disproportionate burdens on platforms like SeedFunder. As in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013), where the Court recognized economic harm as a sufficient injury-in-fact, SeedFunder's diminished client base constitutes a clear and actionable harm under Article III.

2

The district court's analysis was therefore overly narrow and failed to account for the broader regulatory and economic impacts of the MCE on SeedFunder. Opening Br. 14-15. By meeting the requirements for injury-in-fact, causation, and redressability, SeedFunder has established standing, and the district court's dismissal on jurisdictional grounds should be reversed.

**B. Concrete Harm to SeedFunder.**

The Massachusetts Crowdfunding Exemption imposes restrictive provisions that cause concrete harm to SeedFunder by reducing its client base and limiting its revenue opportunities. Opening Br. 5-6. This harm satisfies the injury-in-fact requirement under Article III. Economic harm, recognized by the Supreme Court as sufficient to confer standing, is compounded by the indirect effects of the MCE's regulatory framework on SeedFunder's operations.

Economic harm is a well-established basis for standing. The Supreme Court has held that financial loss or reduced business opportunities constitute injury-in-fact. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). In *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 154 (2010), the Court recognized standing where a regulatory action posed a probable risk of economic harm. Similarly, SeedFunder has suffered direct financial harm due to the MCE's provisions. Opening Br. 6.

3

The MCE imposes caps on annual fundraising—$1 million for issuers without a financial audit and $2 million for those with an audit—that are significantly lower than the $5 million permitted under federal law through the JOBS Act. Opening Br. 4. This cap reduces the attractiveness of intrastate crowdfunding for Massachusetts-based issuers and limits the pool of businesses willing to engage with platforms like SeedFunder. The MCE further requires that issuers restrict offerings to in-state investors, fragmenting the national market and creating operational inefficiencies. These restrictions diminish SeedFunder's ability to compete effectively and generate revenue, resulting in direct economic harm that is neither speculative nor hypothetical.

The Appellees argue that the MCE has "no application" to interstate offerings and therefore does not harm Mr. Mourier's business. Appellees Br. 2. However, this argument fails to account for the MCE's deterrent effect on Massachusetts issuers. By imposing a $2 million limit on intrastate offerings and requiring strict compliance with Massachusetts-specific regulations, the MCE creates a competitive disadvantage for Massachusetts-based issuers relative to their counterparts in other states, who face fewer regulatory hurdles.

The Supreme Court has also recognized that indirect harm caused by government regulation can confer standing. In *Bennett v. Spear*, 520 U.S. 154, 168 (1997), the Court held that plaintiffs suffering indirect economic injury due to regulatory actions met the standing requirement. Likewise, in *Barrows v. Jackson*, 346 U.S. 249 (1953), the Court allowed a third party to challenge a regulation that adversely impacted their ability to conduct business.

SeedFunder operates as an intermediary, connecting issuers with investors, and its success is tied to the regulatory environment affecting its clients. Opening Br. 5-6. The MCE's restrictive provisions discourage Massachusetts-based issuers from engaging in intrastate crowdfunding, shrinking the pool of businesses that could use SeedFunder's platform. This deterrent effect harms SeedFunder's operations by reducing its client base and revenue opportunities.

The Appellees' assertion that the MCE "does not restrict" Mr. Mourier or his company overlooks the practical realities of the crowdfunding market. Appellees Br. 14. While it is true that the MCE applies directly to issuers and not intermediaries, its restrictive framework limits the pool of potential Massachusetts-based clients who would otherwise engage with intermediaries like SeedFunder. As such, the MCE

indirectly but materially injures Mr. Mourier by constraining the market in which his business operates.

For example, the MCE's requirement that offerings be conducted solely within Massachusetts severely limits the ability of Massachusetts issuers to raise capital from a broader pool of investors. (950 C.M.R. § 14.402(B)(13)(o)(2).) This, in turn, discourages issuers from pursuing crowdfunding altogether, effectively reducing opportunities for intermediaries like SeedFunder to facilitate offerings.

The harm to SeedFunder is further exacerbated by reputational and operational burdens created by the MCE. Platforms subject to restrictive regulatory environments may appear less attractive to potential clients, further deterring engagement and compounding SeedFunder's financial harm. Opening Br. 9.

The MCE has caused both direct economic harm and indirect harm to SeedFunder's business operations. By limiting potential clients and creating barriers to entry, the MCE has directly impacted SeedFunder's revenue and competitive standing in the crowdfunding market. As the Supreme Court held in *Clapper* and *Monsanto*, financial harm and reduced business opportunities constitute concrete injuries sufficient to confer standing.

6

Furthermore, the indirect harm described in *Bennett* and *Barrows* underscores SeedFunder's actionable injury as a business intermediary. These harms demonstrate SeedFunder's standing to challenge the MCE, warranting reversal of the district court's dismissal.

### C. Traceability and Redressability.

SeedFunder's injuries are directly traceable to the restrictive provisions of the Massachusetts Crowdfunding Exemption and can be redressed by invalidating or modifying the regulation. The causal link between the MCE and SeedFunder's harm satisfies the traceability requirement under Article III, and judicial relief would remove the barriers that currently hinder SeedFunder's ability to operate effectively. Opening Br. 20-21.

To establish traceability, a plaintiff must show that the alleged harm is "fairly traceable" to the challenged action. *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 773 (1945). Here, SeedFunder's harm is directly linked to the MCE's provisions that limit the scope and profitability of intrastate crowdfunding. Opening Br. 18-20.

The MCE imposes caps on fundraising amounts and restricts issuers to in-state investors. These provisions discourage Massachusetts-based

issuers from pursuing intrastate crowdfunding and make SeedFunder's platform less attractive to potential clients. Opening Br. 21-22. As a result, SeedFunder experiences a diminished client base and reduced revenue opportunities. The causal relationship between the MCE and these injuries is clear: the regulation creates the barriers that deter participation in the Massachusetts crowdfunding market, directly impacting SeedFunder's operations.

Moreover, the MCE fragments the national crowdfunding market by isolating Massachusetts issuers from interstate platforms like SeedFunder. Opening Br. 20-21. This market fragmentation creates operational inefficiencies and competitive disadvantages for SeedFunder, further underscoring the direct link between the MCE's restrictions and SeedFunder's harm.

A plaintiff satisfies the redressability requirement by demonstrating that a favorable court decision would alleviate the harm caused by the challenged action. *Davis v. FEC*, 554 U.S. 724, 734 (2008). In this case, invalidating the MCE would remove the regulatory barriers that currently hinder SeedFunder's ability to operate in Massachusetts.

If the MCE's restrictions were lifted, Massachusetts-based issuers could participate more freely in crowdfunding, expanding SeedFunder's client base and increasing its revenue opportunities. Opening Br. 13. This outcome would restore SeedFunder's ability to compete on equal footing with platforms in states that impose fewer restrictions on intrastate crowdfunding. Furthermore, removing the MCE's caps on fundraising and in-state investor requirements would align Massachusetts regulations with the broader objectives of the federal JOBS Act, creating a more cohesive and accessible national crowdfunding market.

The relief SeedFunder seeks—invalidating the MCE's restrictive provisions—is directly tailored to address the harms it has suffered. By removing these barriers, judicial intervention would provide meaningful redress for SeedFunder's injuries, satisfying the third prong of Article III standing analysis. Opening Br. 12.

SeedFunder's injuries are directly traceable to the MCE's restrictive provisions, and a favorable ruling would redress these harms by removing the barriers to its operations. The regulation's caps on fundraising and in-state investor requirements create clear, actionable harm that judicial relief can remedy. As the Supreme Court held in *Southern Pacific* and *Davis*, plaintiffs may challenge laws that create significant barriers to their business

9

operations when those barriers are directly linked to the alleged harm. The district court's failure to recognize the traceability and redressability of SeedFunder's injuries was a legal error warranting reversal.

## II.     The MCE is Preempted by the JOBS Act Under the Supremacy Clause.

The Massachusetts Crowdfunding Exemption conflicts with the federal Jumpstart Our Business Startups (JOBS) Act, which was enacted to promote a cohesive national framework for crowdfunding. Under the Supremacy Clause, federal law preempts state laws when there is a conflict. *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000). The MCE's restrictive provisions, including its caps on fundraising and in-state investor requirements, directly undermine the objectives of the JOBS Act, creating a clear conflict that warrants preemption.

### A. Federal Preemption by the JOBS Act.

The JOBS Act, codified at 15 U.S.C. §§ 77d(a)(6) and 77d-1, was designed to promote small business capital formation by creating a streamlined regulatory framework for crowdfunding. Opening Br. 10. It allows small businesses to raise up to $5 million annually through federally regulated crowdfunding platforms, fostering economic growth and innovation across state lines. The Act's purpose is to create a unified,

10

accessible crowdfunding market that reduces barriers for issuers and investors alike.

By contrast, the MCE imposes much stricter limits on intrastate crowdfunding, capping annual fundraising at $1 million for issuers without a financial audit and $2 million for those with an audit. These caps are far below the $5 million ceiling established by the JOBS Act, discouraging Massachusetts-based issuers from fully participating in the crowdfunding market. Opening Br. 18-21. The Supreme Court has held that state laws imposing additional restrictions that undermine federal objectives are preempted. *Crosby*, 530 U.S. at 373.

The MCE further conflicts with the JOBS Act by requiring that offerings be limited to in-state investors, fragmenting the national crowdfunding market. Opening Br. 15. This requirement prevents Massachusetts-based issuers from accessing the broader pool of interstate investors facilitated by federal crowdfunding platforms. As the Supreme Court explained in *Granholm v. Heald*, 544 U.S. 460, 472 (2005), state laws that isolate businesses from participating in interstate markets violate the principles of federalism and are subject to preemption.

11

Additionally, the MCE disqualifies certain issuers based on past regulatory infractions, imposing stricter eligibility requirements than those outlined in the JOBS Act. These additional restrictions create an uneven playing field for Massachusetts issuers and undermine the JOBS Act's intent to provide uniform and accessible crowdfunding opportunities across all states. Opening Br. 15.

The Supreme Court has emphasized the importance of uniform federal regulations in fostering efficient national markets. In *Gonzales v. Raich*, 545 U.S. 1, 22 (2005), the Court held that local regulations must yield when they substantially affect interstate commerce in ways that conflict with federal objectives. The MCE's restrictive provisions disrupt the crowdfunding ecosystem by isolating Massachusetts-based issuers and deterring them from leveraging federally regulated platforms like SeedFunder. Opening Br. 17. This disruption creates inefficiencies and barriers that are incompatible with the JOBS Act's purpose of fostering a unified national market for small business capital formation.

The MCE's restrictive provisions conflict with the objectives of the JOBS Act and are therefore preempted under the Supremacy Clause. By imposing additional fundraising caps, in-state investor requirements, and stricter eligibility standards, the MCE undermines the uniformity and

12

accessibility that federal law seeks to achieve. As held in *Crosby*, *Granholm*, *SEC v. National Securities, Inc.*, 393 U.S. 453 (1969), and *Raich*, state laws that obstruct federal objectives are invalid. The district court's failure to recognize this conflict was a legal error, warranting reversal and a remand for further consideration of the MCE's preemption under federal law.

### B. The MCE Undermines Federal Crowdfunding Objectives.

The Massachusetts Crowdfunding Exemption conflicts with the goals of the federal Jumpstart Our Business Startups Act by undermining the national framework for crowdfunding and isolating Massachusetts-based issuers from participating in broader markets. Opening Br. 18-20. The JOBS Act was designed to foster a unified crowdfunding ecosystem that facilitates small business capital formation on a national scale. By imposing restrictive provisions, the MCE impedes these federal objectives and imposes burdens on interstate commerce that violates the principles of federalism.

The JOBS Act was enacted to remove barriers to capital formation, allowing small businesses to access larger pools of investors and raising the annual fundraising limit to $5 million. The MCE, however, restricts Massachusetts-based issuers to offerings capped at $1 million (or $2 million with a financial audit) and limits those offerings to in-state investors. These provisions isolate Massachusetts issuers from the broader crowdfunding

market and deter them from leveraging interstate platforms like SeedFunder. Opening Br. 5-6.

As the Supreme Court held in *Granholm v. Heald*, 544 U.S. 460, 472 (2005), state laws that create protectionist barriers or isolate businesses from interstate commerce are unconstitutional. The MCE's in-state investor requirement and restrictive caps fragment the crowdfunding market, placing Massachusetts issuers at a competitive disadvantage compared to their counterparts in states with less restrictive regulations. Opening Br. 19-20.

The MCE's limitations not only harm Massachusetts-based issuers but also impose burdens on interstate platforms like SeedFunder. By deterring issuers from participating in intrastate crowdfunding, the MCE reduces the pool of potential clients for platforms operating across state lines. This market fragmentation disrupts the seamless operation of the national crowdfunding ecosystem envisioned by the JOBS Act.

In *Gonzales v. Raich*, 545 U.S. 1, 22 (2005), the Court held that even local regulations must yield when they substantially affect interstate commerce. The MCE's provisions deter interstate platforms from fully integrating Massachusetts-based issuers into their operations, creating

inefficiencies and competitive imbalances in the national market. Opening Br. 19-20.

The JOBS Act's crowdfunding provisions were specifically designed to create a streamlined, accessible framework for small businesses to raise capital. The MCE's outdated and restrictive provisions undermine this intent by creating unnecessary barriers for issuers and platforms alike. Opening Br. 21-22.

For example, while the JOBS Act allows issuers to leverage both intrastate and interstate crowdfunding opportunities, the MCE discourages issuers from participating in federal crowdfunding once they reach the state's fundraising cap. This dynamic inhibits Massachusetts issuers from scaling their capital-raising efforts and creates a chilling effect on innovation and entrepreneurship in the state.

Furthermore, the MCE's misalignment with federal objectives disincentivizes investment and growth in the Massachusetts market, harming not only issuers and platforms but also the broader economy. Opening Br. 13. The Supreme Court has consistently struck down state laws that conflict with federal efforts to create uniformity in commerce, as seen in *Granholm* and *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000).

15

The MCE undermines the federal crowdfunding objectives of the JOBS Act by isolating Massachusetts-based issuers, deterring participation in interstate crowdfunding, and disrupting the national market for small business capital formation. The regulation's restrictive provisions impose burdens on both issuers and platforms, violating the principles of federalism and interstate commerce. The principles of federalism ensure that states retain significant autonomy, but this autonomy cannot extend to creating barriers that disrupt federally regulated markets or national economic integration. As in *Granholm*, *Raich*, and *Crosby*, state laws that obstruct the seamless operation of federal frameworks must yield. The district court's failure to address the MCE's conflict with federal objectives was a legal error that warrants reversal.

## III.    The MCE's Burdens on Interstate Commerce Outweigh Any Local Benefits.

The Massachusetts Crowdfunding Exemption imposes significant burdens on interstate commerce that far outweigh any purported local benefits. Under the balancing test established in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), a state law that regulates evenhandedly to further a legitimate local interest will be invalid if the burden imposed on interstate commerce is clearly excessive in relation to the local benefits. The MCE

16

fails this test by hindering the seamless operation of the national crowdfunding market while providing minimal, if any, benefit to Massachusetts investors or issuers.

### A. The Burdens on Interstate Commerce.

The MCE's restrictive provisions create significant barriers to interstate crowdfunding activity by isolating Massachusetts-based issuers and preventing them from accessing broader markets. Specifically:

- The annual fundraising cap of $1 million (or $2 million with an audit) discourages issuers from participating in intrastate crowdfunding platforms like SeedFunder, thereby limiting opportunities for both issuers and interstate platforms. Opening Br. 19-20.

- The in-state investor requirement fragments the national crowdfunding market, excluding Massachusetts issuers from leveraging interstate investment pools. Opening Br. 20-21.

- Platforms like SeedFunder face operational inefficiencies and competitive disadvantages because of these restrictions, further disrupting the crowdfunding ecosystem. Opening Br. 18-19.

These burdens significantly interfere with the JOBS Act's objective of creating a unified and efficient national crowdfunding framework. As the

17

Supreme Court held in *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 773 (1945), state laws that impose excessive burdens on interstate commerce must be struck down to maintain uniformity and efficiency in national markets.

The purported local benefits of the MCE are negligible and insufficient to justify the substantial burdens it imposes on interstate commerce. The MCE ostensibly aims to protect Massachusetts investors and ensure compliance with local regulations. However:

- The JOBS Act already provides robust protections for investors, including limits on individual investment amounts and mandatory disclosure requirements. Opening Br. 10. The MCE's additional restrictions offer little added value beyond these federal safeguards.

- The MCE's in-state investor requirement does not enhance investor protection but instead isolates Massachusetts issuers, restricting their ability to raise sufficient capital to scale their businesses. Opening Br. 19-20.

The Supreme Court has invalidated state laws that provide limited local benefits while imposing disproportionate burdens on interstate

commerce. In *Pike*, the Court struck down an Arizona law requiring cantaloupes to be packaged in-state, finding the burdens on interstate commerce excessive in relation to the law's minimal local benefits. Similarly, the MCE's restrictions fail to justify the disruptions they cause to the crowdfunding market.

Applying the *Pike* balancing test, the MCE's burdens on interstate commerce clearly outweigh its local benefits:

- The MCE isolates Massachusetts issuers, deters interstate platforms like SeedFunder from integrating Massachusetts-based clients, and fragments the national market, undermining the JOBS Act's objectives. Opening Br. 15.
- The MCE's added investor protections and regulatory framework are redundant considering the comprehensive safeguards already provided by federal law. Opening Br. 10.

The lack of meaningful local benefits, combined with the significant disruption to interstate crowdfunding activity, renders the MCE invalid under the *Pike* test.

The MCE imposes excessive burdens on interstate commerce while providing minimal local benefits, failing the balancing test articulated in

19

*Pike v. Bruce Church, Inc.*. The regulation disrupts the national crowdfunding ecosystem, isolates Massachusetts issuers, and hinders interstate platforms like SeedFunder, all without delivering tangible advantages to local stakeholders. The district court's failure to evaluate the MCE under the *Pike* framework was a legal error that necessitates reversal.

### B. The MCE's Broader Economic Impact.

The Massachusetts Crowdfunding Exemption disrupts the crowdfunding ecosystem and imposes broader economic harm that extends beyond its immediate regulatory scope. By discouraging Massachusetts-based issuers from participating in crowdfunding and creating barriers for interstate platforms like SeedFunder, the MCE undermines the efficient operation of national markets and stifles economic innovation. Under principles established in *Gonzales v. Raich*, 545 U.S. 1 (2005), even local regulations must yield when their broader effects disrupt interstate commerce. The MCE's economic impact exemplifies such disruption and demands judicial intervention.

The MCE's restrictive provisions reduce the participation of Massachusetts-based issuers in both intrastate and interstate crowdfunding markets:

- The **fundraising caps** ($1 million for unaudited issuers and $2 million for audited issuers) discourage participation in crowdfunding by limiting the capital that businesses can raise. These caps fall significantly below the $5 million permitted under federal law, making Massachusetts issuers less competitive in the national marketplace. Opening Br. 20.

- The **in-state investor requirement** isolates Massachusetts issuers from accessing broader investor pools, significantly curbing their ability to scale operations and to attract diverse sources of capital. Opening Br. 13.

For platforms like SeedFunder, these restrictions result in a diminished pool of viable clients, reducing revenue opportunities and hindering growth. Platforms that cannot efficiently integrate Massachusetts-based issuers face operational inefficiencies, weakening their ability to compete in the national market.

The MCE's burdens extend beyond individual businesses, affecting the broader Massachusetts economy and national crowdfunding ecosystem:

- By restricting the capital available to Massachusetts businesses, the MCE stifles entrepreneurship, innovation, and job creation

21

within the state. Small businesses, which rely heavily on crowdfunding to secure early-stage funding, are disproportionately impacted. Opening Br. 21-22.

- The fragmentation caused by the MCE disrupts the seamless operation of the national crowdfunding market envisioned under the JOBS Act. Opening Br. 15. Isolated state regulations create inefficiencies and inconsistencies that deter investment and limit the scalability of crowdfunding platforms.

These economic harms are exacerbated by the MCE's failure to adapt to evolving federal frameworks. As other states align their regulations with the JOBS Act to attract issuers and investors, Massachusetts falls behind, further isolating its market and reducing its competitiveness.

The Supreme Court has consistently emphasized the importance of uniformity in federal regulations to prevent economic disruption. In *Gonzales v. Raich*, 545 U.S. at 22, the Court held that state regulations must yield when they substantially affect interstate commerce. The MCE's restrictions undermine the efficiency and accessibility of the crowdfunding market, creating barriers that federal law was specifically designed to remove.

22

By imposing stricter requirements than the JOBS Act, the MCE undermines the intended uniformity of the federal framework and disrupts the broader crowdfunding ecosystem. These impacts not only harm individual businesses like SeedFunder but also hinder the economic benefits that crowdfunding provides to entrepreneurs, investors, and the national economy.

The MCE's restrictive provisions impose broader economic harms that disrupt both the Massachusetts economy and the national crowdfunding market. By discouraging participation, stifling innovation, and creating inefficiencies, the MCE undermines the objectives of the JOBS Act and violates the principles of interstate commerce established in *Gonzales v. Raich*. These broader impacts demonstrate the MCE's incompatibility with federal law and further justify its invalidation.

## IV.    The District Court Misapplied Standing Principles.

The district court erred in dismissing SeedFunder's claims by narrowly construing the principles of standing and failing to consider the full scope of harm caused by the Massachusetts Crowdfunding Exemption. Under Article III, standing is conferred when a plaintiff demonstrates (1) an injury-in-fact, (2) causation, and (3) redressability. Opening Br. 12-13. The Supreme Court has emphasized that courts must adjudicate all claims within

23

their jurisdiction when these elements are satisfied. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). The district court's dismissal improperly disregarded established precedent and the broader regulatory and economic impacts of the MCE on SeedFunder's business.

### A. Narrow Interpretation of Injury-in-Fact.

The district court's analysis improperly focused on whether SeedFunder was directly regulated by the MCE, ignoring the substantial indirect harm imposed by its restrictive provisions. Opening Br. 7. The Supreme Court has consistently recognized that indirect harm, including economic injury, satisfies the injury-in-fact requirement. In *Bennett v. Spear*, 520 U.S. 154, 168 (1997), the Court held that plaintiffs suffering indirect economic injury caused by a regulatory framework met the standard for standing. Similarly, in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013), the Court affirmed that economic harm constitutes a concrete injury.

SeedFunder's diminished client base and lost revenue opportunities are the direct consequences of the MCE's restrictive fundraising caps and in-state investor requirements. These harms are concrete, particularized, and directly tied to the MCE's implementation, meeting the standard for injury-in-fact under Article III. Opening Br. 12-13.

24

The district court also failed to adequately consider the causal connection between the MCE and SeedFunder's harm. Opening Br. 13. The Supreme Court has held that plaintiffs need only show that the harm is "fairly traceable" to the challenged action. *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 773 (1945).

Here, SeedFunder's injuries are directly traceable to the MCE's provisions, which deter Massachusetts-based issuers from participating in crowdfunding. By capping fundraising amounts and restricting issuers to in-state investors, the MCE creates barriers that directly reduce SeedFunder's client pool and revenue opportunities. Opening Br. 5-6. This clear causal link satisfies the second prong of the standing analysis.

The district court further erred by failing to recognize that judicial intervention would redress SeedFunder's injuries. Add. 31. The Supreme Court has held that plaintiffs demonstrate redressability when a favorable ruling would alleviate their harm. *Davis v. FEC*, 554 U.S. 724, 734 (2008).

Invalidating the MCE would remove the barriers imposed by its restrictive provisions, allowing Massachusetts-based issuers to access broader markets and increasing SeedFunder's ability to attract and retain clients. Opening Br. 20-21. This relief would directly address the harm

caused by the MCE, satisfying the redressability requirement under Article III.

The district court's failure to properly apply standing principles undermines the broader objective of ensuring judicial accountability for unconstitutional state regulations. As the Supreme Court explained in *Steel Co.*, 523 U.S. at 94, courts have a duty to adjudicate all claims within their jurisdiction, particularly when significant constitutional questions are raised. By dismissing SeedFunder's claims on jurisdictional grounds, the district court failed to address the MCE's broader impacts on interstate commerce, federal preemption, and economic innovation. Opening Br. 18-19.

The district court misapplied standing principles by narrowly interpreting the requirements for injury-in-fact, causation, and redressability, and by failing to consider the full scope of SeedFunder's harm. As established in *Bennett*, *Clapper*, and *Southern Pacific*, indirect and economic harm caused by regulatory action are sufficient to confer standing. Judicial relief would redress these harms and ensure accountability for the MCE's unconstitutional impacts. The district court's dismissal was a legal error that must be reversed.

## B. The District Court Failed to Evaluate the Merits of SeedFunder's Claims.

The district court improperly dismissed SeedFunder's complaint without addressing the substantive merits of its constitutional and statutory claims. Federal courts have a duty to adjudicate all claims within their jurisdiction, especially those raising significant questions of constitutional law. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). By focusing solely on standing, the district court neglected to evaluate SeedFunder's claims that the Massachusetts Crowdfunding Exemption conflicts with federal law and imposes unconstitutional burdens on interstate commerce. Opening Br. 14-15.

SeedFunder's constitutional claims raise significant issues regarding the balance of state and federal regulatory authority and the protection of interstate commerce. Opening Br. 14-15. The Supreme Court has long recognized that federal courts have the authority to review state actions for constitutional violations, even in the face of sovereign immunity defenses. *Ex parte Young*, 209 U.S. 123, 155-56 (1908).

SeedFunder alleges that the MCE conflicts with the federal JOBS Act and imposes excessive burdens on interstate commerce in violation of the Commerce Clause. These claims challenge the validity of state regulations

that hinder national economic frameworks and impede the seamless
operation of interstate markets. By dismissing SeedFunder's case on
jurisdictional grounds, the district court failed to fulfill its obligation to
evaluate these critical constitutional issues. Opening Br. 16-17.

SeedFunder's preemption claim under the Supremacy Clause argues
that the MCE is inconsistent with the federal Jumpstart Our Business
Startups Act. The Supreme Court has consistently held that state laws
conflicting with federal objectives are preempted. *Crosby v. National
Foreign Trade Council*, 530 U.S. 363, 372 (2000).

The MCE's restrictions on intrastate crowdfunding—including lower
fundraising caps and in-state investor requirements—directly undermine the
JOBS Act's goal of creating a cohesive national framework for small
business capital formation. This conflict between state and federal law is
precisely the type of claim that warrants judicial review. The district court's
failure to address the merits of SeedFunder's preemption argument deprives
the judiciary of an opportunity to resolve an important question of federal
law. Opening Br. 17-18.

SeedFunder also alleges that the MCE violates the Commerce Clause
by isolating Massachusetts-based issuers and fragmenting the national

crowdfunding market. Opening Br. 18-19. The Supreme Court has invalidated state laws that impose excessive burdens on interstate commerce under the *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) balancing test.

The MCE's provisions create significant barriers for Massachusetts-based issuers and interstate crowdfunding platforms, disrupting the seamless operation of national markets. By failing to evaluate SeedFunder's Commerce Clause claims, the district court neglected to address the broader economic and constitutional implications of the MCE. Opening Br. 17.

The Supreme Court has emphasized the importance of resolving claims properly before the court. In *Steel Co.*, 523 U.S. at 94, the Court explained that jurisdictional dismissals should not prevent courts from adjudicating claims raising substantial constitutional and statutory questions. Here, the district court's decision to dismiss SeedFunder's complaint without evaluating its substantive claims undermines the judiciary's role in providing accountability for unconstitutional state actions. Opening Br. 16-17.

The district court's dismissal of SeedFunder's case on jurisdictional grounds failed to account for the significant constitutional and statutory

29

claims raised in the complaint. As established in *Ex parte Young*, *Crosby*, and *Pike*, courts have a duty to address claims involving federal preemption and interstate commerce. The district court's failure to consider the merits of these claims warrants reversal and a remand for further proceedings.

SUBMITTED BY:

Thomas Mourier
3 Indian Hill Rd.
Winchester, MA 01890
781/602-0385
thomas.mourier@yahoo.com

31

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,100 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Times New Roman.

Dated: December 23, 2024

<u>s/ Thomas A. Mourier</u>
Thomas A. Mourier

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

<u>s/ Thomas A. Mourier</u>
Thomas A. Mourier

*Appellant*